Patricia Lynn Jacks
Attorney at Law
CA State Bar No. 226300
5790 Friars Road F8
San Diego, CA 92110
Tel. (619) 574-1625
Attorney for Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DMITRI VALLERVEICH TATARINOV,

      Petitioner,

                    .PETITION FOR WRIT OF HABEAS
                    CORPUS UNDER 28 U.S.C. §2241

      v.

SUPERIOR COURT OF THE STATE OF

CALIFORNIA, COUNTY OF SAN DIEGO,

      Respondent.

**EXCERPTS OF RECORD**
**PETITIONER DMITRI VALLERVEICH TATARINOV**

Patricia Lynn Jacks
Attorney at Law
CA State Bar No. 226300
5790 Friars Road F8
San Diego, CA  92110
Tel. (619) 574-1625
Attorney for Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DMITRI VALLERVEICH TATARINOV,

      Petitioner,

                          PETITION FOR WRIT OF HABEAS
                          CORPUS UNDER 28 U.S.C. §2241

    v.

SUPERIOR COURT OF THE STATE OF

CALIFORNIA, COUNTY OF SAN DIEGO,

      Respondent.

**EXCERPTS  OF RECORD**
**PETITIONER DMITRI VALLERVEICH TATARINOV**

# INDEX

<u>FROM DISTRICT COURT DOCUMENT 1</u>

DECLARATION OF PATRCIA JACK-TATARINOV.................................... 1

   (Appendix A in the Petition for Writ of Habeas Corpus)

DECLARATION OF PETITIONER DIMITRI VALLERVEICH TATARINOV........... 5

   (Appendix B in the Petition for Writ of Habeas Corpus)

DOCKET ENTRIES FROM CALIFORNIA APPEAL, CASE D027293...................... 8

   (Appendix C in the Petition for Writ of Habeas Corpus)

MOTION TO SET ASIDE DISMISSAL, FILED BY ATTORNEY
    VERHOVSKOY...............................................................13

   (Appendix D in the Petition for Writ of Habeas Corpus)

COURT OF APPEAL ORDER DATED SEPTEMBER 24, 1999.................................23

   (Appendix E in the Petition for Writ of Habeas Corpus)

CALIFORNIA SUPERIOR COURT MINUTE ORDERS ............................................25

   (Appendix F in the Petition for Writ of Habeas Corpus)

LETTER DATED DECEMBER 12, 2000, FROM ATTORNEY VERHOVSKOY.......29

   (Appendix G in the Petition for Writ of Habeas Corpus)

SUBPEONA ISSUED BY THE STATE BAR OF CALIFORNIA FOR FILE
    IN SUPERIOR COURT CASE SCD119330........................................................31

   (Appendix H in the Petition for Writ of Habeas Corpus)

COPY OF ORDER DENYING MOTION TO RECALL REMITTITUR, VACATE
    DISMISSAL AND REINSTATE APPEAL, FILED SEPT. 20, 2001...................33

   (Appendix "I" in the Petition for Writ of Habeas Corpus)

COPY OF ORDER DENYING PETITION FOR REVIEW OF MOTION TO
    RECALL REMITTITUR , VACATE DISMISSAL AND REINSTATE
    APPEAL, FILED DECEMBER 12, 2001............................................................35

   (Appendix J in the Petition for Writ of Habeas Corpus)

COPY OF ORDER OF CALIFORNIA COURT OF APPEAL DENYING
    PETITION FOR WRIT OF HABEAS CORPUS FILED JUNE 25, 2002 ............37

   (Appendix K in the Petition for Writ of Habeas Corpus)

COPY OF ORDER OF CALIFORNIA SUPREME COURT DENYING
    PETITION FOR REVIEW OF WRIT OF HABEAS CORPUS,
    FILED AUGUST 28, 2002 ................................................................................39

   (Appendix L in the Petition for Writ of Habeas Corpus)

COPY OF ARGUMENT FROM THE FEDERAL PETITION FOR WRIT OF
    HABEAS CORPUS EXPLAINING TOLLING PURSUANT TO
    28 U.S.C. § 2244(d)(1) ................................................................................41

   (Consisting of pages 18 through 20 in the petition)

# INDEX

COPY OF ARGUMENT FROM THE FEDERAL PETITION FOR WRIT OF
   HABEAS CORPUS EXPLAINING HOW PETITIONER WAS
   PREJUDICED BY TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE......................45

(Includes pages 24 through 35 of the federal habeas petition)

FROM DISTRICT COURT DOCUMENT 11

REPORT AND RECOMMENDATION OF MAGISTRATE ROGER T. BENITEZ
   RE: GRANTING MOTION TO DISMISS HABEAS PETITION..................................58

FROM DISTRICT COURT DOCUMENT 13

ORDER OF UNITED STATES DISTRICT JUDGE THOMAS J. WHELAN
   ADOPTING REPORT AND RECOMMENDATION.................................................75

FROM DISTRICT COURT DOCUMENT 14

JUDGMENT OF THE UNITED STATES DISTRICT COURT DISMISSING
   THE HABEAS PETITION, FILED JUNE 16, 2003........................................................87

FROM DISTRICT COURT DOCUMENT 16

NOTICE OF APPEAL, FILED JULY 11, 2003..................................................................89

DISTRICT COURT CIVIL DOCKET FOR CASE 02-CV-2029....................................91

FROM COURT OF APPEALS

GRANTING CERTIFICATE OF APPEALABILITY, FILED OCT 32, 2003..........95

FROM COURT OF APPEALS

APPEAL OF DISTRICT COURT'S DENIAL OF FEDERAL HABEAS

PETITION.......................................................................................................................96

FROM COURT OF APPEALS

APPELLANT'S PETITION FOR REHEARING,  FILED AUG 25, 2004...............99

FROM COURT OF APPEALS

DENIAL OF APPELLANT'S PETITION FOR REHEARING, FILED
   SEPTEMBER 28, 2004.................................................................................................106

FROM SUPERIOR COURT OF THE STATE OF CALIFORNIA

NONSTATUTORY MOTION TO VACATE A PLEA ENTERED ON GROUNDS OF
   INEFFECTIVE ASSISTANCE OF COUNSEL, FILED SEPT 25, 2006...................107

FROM SUPERIOR COURT OF THE STATE OF CALIFORNIA

MEMORANDUM IN SUPPORT OF NONSTATUTORY MOTION TO VACATE
A PLEA ENTERED ON GROUNDS OF INEFFECTIVE ASSISTANCE OF
COUNSEL.................................................................................................111
(Includes Exhibits not found in trial record)

FROM COURT OF APPEALS

NOTICE OF APPEAL, FILED NOVEMBER 2, 2006.......................................127

FROM COURT OF APPEALS

DISMISSAL OF APPELLANT'S APPEAL.................................................…..136

FROM SUPREME COURT OF CALIFORNIA

DENIAL OF APPELLANT'S PETITION FOR REVIEW....................................137

FROM THE STATE BAR OF CALIFORNIA

COMPLAINT FORM.......................................................................................128

DISCIPLINARY RESPONSE...........................................................................131

FROM DISTRICT COURT DOCUMENT 1

<u>Declaration of Patricia JacksTatarinov</u>

Exhibit A to the Federal Habeas Petition

Consisting of page A-1 through A-3 of Doc 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DIMITRI VALERYEVICH TATARINOV,

Petitioner,

v.

SUPERIOR COURT OF THE STATE OF
CALIFORNIA,

DECLARATION OF
PATRICIA LYNN
JACKS-TATARINOV
IN SUPPORT OF
PETITION FOR WRIT
OF HABEAS CORPUS

I, Patricia Lynn Jacks-Tatarinov, am the wife of the defendant Dimitri Valeryevich Tatatrinov. We have been married since February 9, 1994. My husband is Russian. He immigrated to the United States in 1992. Russian is his first language. He has learned English since coming to this country. I do not speak Russian. We communicate only in English.

In 1996 we retained attorney Vladimir Verhovsky to represent my husband on a robbery charge brought against him as the result of an incident at a Nordstrom store on March 6, 1996. Mr. Verhovsky speaks fluent Russian and often communicated with my husband in the Russian language. He represented my husband at trial. My husband used a Russian interpreter at trial.

After a jury convicted my husband of robbery, we paid Attorney Verhovsky $2,500 as a retainer to represent my husband to appeal the conviction. We have paid Mr. Verhovsky a total of more than $20,000 to represent my husband on various matters, including but not limited to immigration pro-

EXHIBIT A
page 1

EXCERPTS OF RECORD p. 2

1    ceedings that were instituted after the robbery conviction. The last payment

2    was made in late November or early December 2000.

3        From late fall of 1996 through the summer of 1998, I continually

4    asked Mr. Verhovsky how the robbery appeal was going. He gave responses

5    such as, "appeals take several months," "appeals can take years," "the appeals

6    court must believe we have some merit to the case as they have not re-

7    sponded," "I will call and check the status," and "the court is still looking into

8    the matter." Having no legal background, I believed what Mr. Verhovsky told

9    me. During the summer of 1998, however, I felt something was wrong. I

10   called the superior court and spoke with someone in the records department. I

11   was told the appeal was not active. I immediately called Mr. Verhovsky. He

12   admitted he had not filed the appeal. I told him to tell my husband. Prior to that

13   time, I had found myself "in the middle" between Mr. Verhovsky and my hus-

14   band on a number of occasions. I did not understand the legal process and felt

15   it was Mr. Verhovsky's job to explain how the problem happened and how it

16   could be solved.

17       It took Mr. Verhovsky several months to tell my husband he had

18   not filed the appeal. I repeatedly asked Mr. Verhovsky to do something to get

19   the appeal started again. He gave a series of excuses, telling me it takes time,

20   that he was working on it, and the like. I suggested to my husband on several

21   occasions that he retain another attorney, as it appeared Mr. Verhovsky was not

22   doing his job. My husband told me he wanted to stay with Mr. Verhovsky. My

23   husband seemed loyal to Mr. Verhovsky because they are both Russian, and

24   both speak Russian. Finally, in September 1999 Mr. Verhovsky filed a motion

25   to reinstate the appeal. In less than a month he said the court denied the mo-
tion.

    After that happened, Mr. Verhovsky led us to believe that nothing

further could be done to revive the appeal. I do not recall what he said about

EXHIBIT A
Page 2

EXCERPTS OF RECORD p. 3

1   that, but do recall he proposed an alternate strategy.  He suggested we ask the
2   superior court to terminate my husband's probation and expunge the convic-
3   tion.    He filed a motion in April 2000 and asked the superior court to do that.
4   The court heard and denied the motion on April 13, 2000.  He made a second,
5   similar motion that was denied by the superior court on November 3, 2000.

6             At that time, Mr. Verhovsky continued to represent my husband
7   on an immigration matter.  On November 28, 2000, he requested a payment of
8   $500.  We paid him promptly.   On December 24, we received a letter from Mr.
9   Verhovsky stating he had resigned from all of my husband's cases.  The letter
10  did not explain why.  On January 19, 2001, we received a copy of the State Bar
11  of California's *Stipulation Form – Actual Suspension* indicating Mr. Verhovsky
12  was "suspended from the practice of law in the State of California for a period
13  of sixty (60) days."  We have since retained attorney James R. Patterson to rep-
    resent my husband in the immigration case.

14            I took a course in criminal procedure during the summer of 2001.
15  During the course it occurred to me that perhaps something could be done to
16  revive my husband's appeal from the robbery conviction.  I talked to my in-
17  structor about it and obtained a referral that led me to Attorney Wallingford.
18  We retained him to take action to reinstate the appeal, and have recently asked
    him to prepare a petition for writ of habeas corpus.

19            I declare under penalty of perjury that the foregoing is true and
20  correct.

21

22  DATED: _10/7/2002_                        *Patricia Lynn Jacks-Tatarinov*
                                              Patricia Lynn Jacks-Tatarinov
23

24

25


                                EXHIBIT A
                                 Page 3

                        EXCERPTS OF RECORD p. 4

FROM DISTRICT COURT DOCUMENT 1

<u>Declaration of Petitioner Dmitri VallerveichTatarinov</u>

Exhibit B to the Federal Habeas Petition

Consisting of page B-1 through B-2 of Doc 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DIMITRI VALERYEVICH TATARINOV,

Petitioner,

v.

SUPERIOR COURT OF THE STATE OF
CALIFORNIA,

DECLARATION OF
DMITRI VALLERVEICH
TATARINOV IN SUP-
PORT OF PETITION
FOR WRIT OF HABEAS
CORPUS

      I, Dmitri Vallerveich Tatarinov, am the petitioner in the captioned case. I am married to Patricia Lynn Jacks-Tatarinov. I immigrated from Russia to the United States in 1992. My first language is Russian. I have learned English since coming to this country and communicate with my wife in English. However, when I appear in court I use a Russian interpreter.

      In 1996 I retained attorney Vladimir Verhovsky to represent me on a robbery charge involving an incident at a Nordstrom store on March 6, 1996. Mr. Verhovsky speaks fluent Russian. We often communicated in the Russian language. He represented me at trial.

      After a jury convicted me of robbery, my wife and I paid Attorney Verhovsky to represent me in the appeal. After that, I sometimes asked him how the appeal was going. He always told me the appeal was in progress. In 1998, Mr. Verhovsky admitted that he had not filed the appeal. I asked him several times to do something about it. Each time he said he would. Finally, in September 1999 Mr. Verhovsky filed a motion to reinstate the appeal. Later he told me the motion was denied. I believed the appeal was over and nothing more could be done about it.

EXHIBIT B
Page 1

1   Many times my wife told me I should hire a new attorney.  I told

2   her no, I wanted Mr. Verhovsky to represent me.  I felt comfortable with Mr.

3   Verhovsky because he could explain things to me in Russian.  Also, because he

4   is Russian, I felt he understood me and was trying to help me.

5   Many of the details of my dealings with Mr. Verhovsky are ex-

6   plained in my wife's declaration, exhibit A.  I have read her declaration and it

7   has been explained to me.  Her declaration appears to be completely accurate.

8   I declare under penalty of perjury that the foregoing is true and

9   correct.

10   DATED: _10/07/2002_          _Dmitri TATARINOV_
                                   Dmitri Vallerveich Tatarinov

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT B
Page 2

FROM DISTRICT COURT DOCUMENT 1

Docket Entries, California Court of Appeal Case Number D027293

Exhibit C to the Federal Habeas Petition

Consisting of page C-1 through C-4 of Doc 1

EXCERPTS OF RECORD p. 8

COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOR THE FOURTH APPELLATE DISTRICT
DIVISION 1

PEOPLE OF THE STATE OF CALIFORNIA
□          Plaintiff-Respondent
v.
TATARINOV, DIMITRI VALERYEVICH
□          Defendant-Appellant

CASE NUMBER:    D027293
NOA/PET DATE:   10/25/96
STATUS:         Complete
PRIORITY:       High priority
CAUSE:          Appeal
CASE TYPE:      Criminal
DISP DATE:      04/28/97
FINAL DISP:     17a
ORIGIN:         Received from superior court
CATEGORY:       crdt   Jury trial conviction

TRIAL COURT INFORMATION

Case No.:   SCD119330
County:     San Diego
Court:      San Diego County Superior Court
Judge:      Ehrenfreund
Jud. Date:  09/10/96

ATTORNEY - PARTY

Office Of The State Attorney General          Bar No. SAGSDG-01
P O Box 85266
San Diego, CA  92186-5266

    Plaintiff-respondent
    People Of The State Of Calif.

Vladimir Verhovskoy                           Bar No. 00094039
10388 Viacha Dr.
San Diego, CA  92124

    Defendant-appellant
    Dimitri Valeryev Tatarinov
    Richard J. Donovan Correctional Facility
    P.O. Box 73200
    San Ysidro, CA  92073

EXHIBIT C page 1
EXCERPTS OF RECORD p. 9   D027293 as of 8/9/01

Appellate Defenders Inc.                                    Bar No. ADFI-001
233 A Street, 12th Floor
San Diego, CA  92101-4010

     Unknown
     Unknown


     DOCKET ENTRIES

11/14/96
Notice of appeal lodged/received (criminal).
Filed October 25, 1996 By Tatarinov

11/14/96
Telephone conversation with:
Atty. Verhovskoy - Has Been Retained On Appeal By
Appellant.

01/23/97
Order filed.
Record Returned To Superior Court For Compliance
With Rule 9.  Due Back In 15 Days.  P J

02/03/97
RECORD ON APPEAL FILED.***********
C-1, R-9, Includes Preliminary Hearing; One
Conf. Envelope = Probation Report; Master Index

03/20/97
Appellant notified pursuant to rule 17(a).

04/28/97
Dismissal order filed.
Dismissed For Appellant'S Failure To File A Brief
After 17a Notice. Kremer, P. J.

07/01/97
Remittitur issued.

09/10/97
Mail returned, unable to forward.
Dismissal Order To Appellant Returned

08/29/98
Case complete.

03/25/99
Record in storage with Cor-O-Van.


                         Exhibit C   page 2

09/10/99
Motion filed.
Motion to Set Aside Dismissal and Reinstate Appeal
oppo due 9-20

09/10/99
Record Received from Storage.

09/24/99
Order filed.
Appellant's Motion to Set Aside Dismissal and to Reinstate Appeal
filed on September 9, 1999 is DENIED.  Haller, APJ

09/29/99
Record Returned to Storage.

08/08/01
Record Received from Storage.


CASE DISPOSITION / JUDGES PANEL INFORMATION

Disposition:   17a
Date:          04/28/97
Status:        Final Disposition
Opinion Type:
Citation:
Notes:         KREMER, P J

Authoring Judge:                          VOTE

       Judge 1:
       Judge 2:
       Judge 3:


COURT REPORTER INFORMATION

Name:                   J.    (A-2) Castro
CSR No.:                90607
Trial Court Case No.:   SCD119330
Estimated Compl. Date:  01/13/97
Filed Date:             01/14/97
Number of Extensions:   0



EXHIBIT C   page 3

Name:                      O. (1) Correa
CSR No.:                   90686
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                01/14/97
Number of Extensions:      0

Name:                      John Ross Avery
CSR No.:                   8605
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                12/27/96
Number of Extensions:      0

Name:                      Lois Elaine Mason
CSR No.:                   3685
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                12/16/96
Number of Extensions:      0

Name:                      Cynthia H Becker
CSR No.:                   3998
Trial Court Case No.:      SCD119330
Estimated Compl. Date:     01/13/97
Filed Date:                01/15/97
Number of Extensions:      0

<u>END OF DOCKET SHEET</u>

EXHIBIT C   page 4

EXCERPTS OF RECORD p. 12   D027293 as of 8/9/01

FROM DISTRICT COURT DOCUMENT 1

<u>Motion to Set Aside Dismissal Filed by AttorneyVerhovskoy</u>

Exhibit D to the Federal Habeas Petition

Consisting of page D-1 through D-9 of Doc 1

EXCERPTS OF RECORD p. 13

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ) | NO.  D 027293 |
| Plaintiff and Respondent, ) | SUPER CT NO.  119330 |
| v. ) | |
| DIMITRI VALERYEVICH TATARINOV, ) | |
| Defendant and Appellant. ) | |

---

### MOTION TO SET ASIDE DISMISSAL AND TO REINSTATE APPEAL, SUPPORTING DECLARATION AND POINTS AND AUTHORITIES

---

On Appeal From the Judgment of the Superior Court

of the State of California, San Diego County,

Honorable Norbert Ehrenfreund, Judge

Vladimir Verhovskoy, Esq. (97039)
VERHOVSKOY & ASSOCIATES
PO Box 620129
San Diego, CA 92162-0129
(619) 702-5852

Attorney for Defendant and
Appellant DIMITRI VALERYEVICH
TATARINOV

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )   NO.  D 027293
                                    )
        Plaintiff and Respondent,   )   SUPER CT NO.  SCD 119330
                                    )
v.                                  )
                                    )
DIMITRI VALERYEVICH TATARINOV,      )
                                    )
        Defendant and Appellant.    )
_____ )


MOTION TO SET ASIDE DISMISSAL AND TO
REINSTATE APPEAL [CAL RULES OF CT, RULE 45(e)]


TO THE HONORABLE PRESIDING JUSTICE AND ASSOCIATE JUSTICES OF
THE COURT OF APPEAL OF THE STATE OF CALIFORNIA, FOURTH APPELLATE
DISTRICT, DIVISION ONE:

Appellant moves this court for an order setting aside the dismissal of this appeal
entered on April 28, 1997, and for permission to file appellant's opening brief.

The motion is made on the grounds that good cause exists for relieving appellant
from his default under rule 45(e) of the California Rules of Court in that said default was
solely the result of counsel's inadvertence, surprise, and/or neglect, and said dismissal was
entered through no fault of appellant.

EXHIBIT D page 2

EXCERPTS OF RECORD p. 15

The motion is based on the declaration of Vladimir Verhovskoy, Esq. and the memorandum of points and authorities served and filed herewith and on the papers and records on file herein.

Dated: September 9, 1999

VLADIMIR VERHOVSKOY, Attorney for
Defendant and Appellant DIMITRI
VALERYEVICH TATARINOV

EXHIBIT D · page 3

EXCERPTS OF RECORD p. 16

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

### DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )    NO.  D 027293
        Plaintiff and Respondent, )    SUPER CT NO.  SCD 119330

v.

DIMITRI VALERYEVICH TATARINOV, )

        Defendant and Appellant. )

---

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant and Appellant DIMITRI VALERYEVICH TATARINOV respectfully submits the following memorandum of points and authorities in support of his motion to set aside dismissal and to reinstate appeal.

## I.

## STATEMENT OF THE CASE

Appellant was tried by jury for charges of violations of Penal Code section 211 [robbery] and Penal Code section 148, subdivision (a) [resisting an officer] arising out of an incident at Nordstrom's Department Store in La Jolla, California on March 6, 1996. On August 12, 1996, the jury delivered verdicts of guilty as to the robbery charge (Count I of

EXHIBIT D.  page 4

EXCERPTS OF RECORD p. 17

the Amended Information) and not guilty as to resisting an officer (Count II of the Amended Information). At sentencing, on September 10, 1996, appellant was granted probation with imposition of sentence suspended for three years. As conditions of probation, appellant was ordered to be committed to the custody of the Sheriff for 270 days (with 87 days' credit), to pay a fine of $200.00, and to pay restitution in the amount of $200.00. On October 25, 1996, defendant filed his Notice of Appeal. The Clerk's Transcript was forwarded on November 25, 1996, followed, shortly thereafter, by the Reporter's Transcript. Because appellant failed to file a brief after notice pursuant to rule 17(a) of the California Rules of Court, the appeal was dismissed on April 28, 1997.

## II.

## THIS COURT SHOULD GRANT THE REQUESTED RELIEF FROM DEFAULT BECAUSE THE DEFAULT OCCURRED THROUGH NO FAULT OF APPELLANT AND THIS APPLICATION IS ACCOMPANIED BY AN ATTORNEY'S AFFIDAVIT OF FAULT

Rule 45(e) of the California Rules of Court authorizes the reviewing court to relieve a party from a default caused by the failure to comply with the Appellate Rules of Court. Case law provides that an applications for relief from default in filing a brief is based on mistake, inadvertence, surprise, or neglect, similar to an application under section 473 of the Code of Civil Procedure (*Sanders* v. *Warden* (1951) 106 Cal.App.2d 707, 708; *Clinton* v. *Shaw* (1943) 57 Cal.App.2d 630, 633-634).

EXHIBIT D   page  5

EXCERPTS OF RECORD p. 18

Section 473 of the Code of Civil Procedure provides, among other things, that whenever an application for relief is accompanied by an attorney's affidavit of fault, relief from default is mandatory. If the attorney is willing to take the blame, the court must set aside the default. The client's interests are protected and the culpable attorney avoids a potential malpractice action or disciplinary proceeding (see *Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1604). Moreover, there is no requirement that the attorney's mistake, inadvertence, or neglect be excusable. Relief must be granted even where the default resulted from inexcusable neglect by the defendant's attorney (*ibid.*). The court is not concerned with the reasons for the attorney's mistake (*Billings* v. *Health Plan of America* (1990) 225 Cal.App.3d 250).

Financial distress and illness of counsel were found to be sufficient grounds for relief from the appellant's default in failing to timely file the opening brief in *Ventura County Title Co.* v. *Constance* (1936) 7 Cal.2d 684, 684-685). As the attached declaration shows, appellant's counsel in this case was experiencing similar problems.

In addition to the judicial policy of favoring hearings of appeal on the merits (*Haskins* v. *Crumley* (1957) 152 Cal.App.2d 64, 66), the most important concern is the preservation of an innocent (as to the default) appellant's right to appeal. The supreme court reinstated the appeal in *In re Martin* (1962) 58 Cal.2d 133, when it was established that appellant had not known of the dismissal or likelihood of dismissal due to the inaction of his trial counsel. Likewise in *In re Serrano* (1995) 10 Cal.4th 447, where the defendant's family had paid a substantial fee to an attorney, but the attorney had done nothing to prepare the brief.

EXHIBIT D    page 6

EXCERPTS OF RECORD p. 19

Finally, it should be noted that granting of the relief requested herein has taken on new urgency for appellant in that, having completed the required period of custody as a condition of probation, appellant is now in deportation proceedings and under the complete control of the Immigration and Naturalization Service. The draconian nature of the current federal immigration laws has forced individuals subject to these regulations to look to state courts as a last resort to ease their plight. Needless to say, deportation would have truly devastating effects on appellant, including the breakup of his marriage, loss of his business, and the potential for persecution in his native Russia.

### III.

### CONCLUSION

As the foregoing shows, appellant is entitled to the requested relief; and, because denial thereof would result in appellant facing a punishment grossly disproportionate to the crime appellant was convicted of, this court should exercise its discretionary and equitable powers and grant the instant motion.

Respectfully submitted,

VLADIMIR VERHOVSKOY, Attorney for
Defendant and Appellant DIMITRI
VALERYEVICH TATARINOV

EXHIBIT D        page **7**

EXCERPTS OF RECORD p. 20

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

PEOPLE OF THE STATE OF CALIFORNIA, )    NO.  D 027293
                                    )
         Plaintiff and Respondent,  )    SUPER CT NO.  SCD 119330
                                    )
v.                                  )
                                    )
DIMITRI VALERYEVICH TATARINOV,      )
                                    )
         Defendant and Appellant.   )
_____ )

## DECLARATION OF VLADIMIR VERHOVSKOY, ESQ.

I, the undersigned, declare as follows:

1.    I am an attorney at law duly licensed and admitted to practice in the State of California and am the attorney of record for DIMITRI VALERYEVICH TATARINOV, the defendant and appellant herein.

2.    On April 28, 1997, appellant's appeal was dismissed for failure to timely file an opening brief. Entry of said dismissal was the result of my mistake, inadvertence, surprise and/or neglect as more fully set forth below.

3.    I represented appellant at his trial which resulted in a guilty verdict on one of the counts appellant had been charged with on August 12, 1996. After sentencing on September 10, 1996, I timely filed a Notice of Appeal on October 25, 1996, and the record

EXHIBIT D  ·  page **8**

EXCERPTS OF RECORD p. 21

on appeal was perfected in a timely fashion as well.

4.    Notwithstanding the foregoing, I failed to file appellant's opening brief, which resulted in an entry of dismissal on April 28, 1997. This failure on my part was due to financial and medical catatrophes.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: September 9, 1999

VLADIMIR VERHOVSKOY, Attorney for
Defendant and Appellant DIMITRI
VALERYEVICH TATARINOV

EXHIBIT D    page 9

EXCERPTS OF RECORD p. 22

FROM DISTRICT COURT DOCUMENT 1

Court of Appeal Order Dated September 24, 1999

Exhibit E to the Federal Habeas Petition

Consisting of page E-1 of Doc 1

EXCERPTS OF RECORD p. 23

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

F I L E D
Stephen M. Kelly, Clerk

SEP 2 4 1999

Court of Appeal Fourth District

PEOPLE OF THE STATE OF CALIFORNIA
  Plaintiff-Respondent

  v.

TATARINOV, DIMITRI VALERYEVICH
  Defendant-Appellant
D027293
San Diego County No. SCD119330

THE COURT:

Appellant's Motion to Set Aside Dismissal and to Reinstate Appeal filed on September 9, 1999 is DENIED.

_Haller_

Acting Presiding Justice

cc: All Parties

EXHIBIT E page 1

EXCERPTS OF RECORD p. 24

TOTAL P.07

FROM DISTRICT COURT DOCUMENT 1

<u>CaliforniaSuperior Court Minute Orders</u>

Exhibit F to the Federal Habeas Petition

Consisting of pages F-1 through F-3 of Doc 1

EXCERPTS OF RECORD p. 25

58

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE SCD119330 DA P7244201 BKG 96116303A

JUDGE: HON. DAVID M. SZUMOWSKI
CLERK: FRANCES L. MERCER

THE PEOPLE OF THE STATE OF CALIFORNIA,
PLAINTIFF,
vs.
DIMITRI VALIRAVICH TATARINOV,
DEFENDANT.

DATE 04-13-00 AT 10:00 a.m. IN DEPARTMENT MFA

REPORTER: FRANK BODDEN, CSR # 2621
REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128

DUSEK, JEFF B., Deputy District Attorney
COUNSEL FOR THE PEOPLE

VERHOVSKOY, VLADIMIR Retained
COUNSEL FOR THE DEFENDANT

### VIOLATIONS

Ct(s):   Ct. 1 PC211**

### PC1203.03 RETURN

The defendant is present.

### SPONTANEOUS MOTIONS

The defendant makes a motion for relief pursuant to PC1203.4. The motion is denied.

### CUSTODY STATUS

The defendant is to remain at liberty on probation.

### OTHER

Defense counsel indicates that the defendant does not require an interpreter. The court excuses the Russian interpreter.

Defense motions the court for probation to revert to summary, motion is GRANTED.

Defense motions the court to permit the defendant to leave the country, motion is GRANTED.

EXHIBIT F    page 1

Page: 1 of 1

ORIGINAL
**EXCERPTS OF RECORD p. 26**



Judge of the Superior Court

56

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE SCD119330  DA P7244201  BKG 96116303A

JUDGE: HON. DAVID M. SZUMOWSKI

CLERK: COLLEEN LEWIS

THE PEOPLE OF THE STATE OF CALIFORNIA,
                                    PLAINTIFF,
                    VS.

DIMITRI VALIRAVICH TATARINOV,
                                    DEFENDANT.

DATE 11-03-00 AT 10:00 a.m. IN DEPARTMENT MFA

REPORTER: ALEXANDER, LYNN, CSR # 4489
REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA  92112-0128

HELLSTROM, PER  Deputy District Attorney
COUNSEL FOR THE PEOPLE

VERHOVSKOY, VLADIMIR  Retained
COUNSEL FOR THE DEFENDANT

PROBATION OFFICER: JACKIE RIVERA

VIOLATIONS

    Ct(s):    Ct. 1 PC211**

PROB MODIFICATION HG

The defendant is present.

A Probation Modification Hearing is held. The modification(s) requested is/are as follows:  terminate probation.  Motion denied.

CUSTODY STATUS

The defendant is to remain at liberty on probation.

EXHIBIT F page 2

Page: 1 of 1                    ORIGINAL

Judge of the Superior Court

EXCERPTS OF RECORD p. 27

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

DA   PT244201

10-19-98   AT   01:30 M.   96116303   SENT AFTER REVOCATN

HON: MICHAEL D. WELLINGTON   JUDGE PRESIDING DEPARTMENT   008

REPORTER   JULIA K. GILL 3524   CSR#

REPORTER'S ADDRESS: P.O. BOX 128, SAN DIEGO, CA 92112-4104

THE PEOPLE OF THE STATE OF CALIFORNIA

VS.   DEPUTY DISTRICT ATTORNEY

STARINOV   DIMITRI   VALIFAVICH   R   R.KATZMAN   V. VERHOVSKOV
DEFENDANT

ATTORNEY FOR DEFENDANT (PD/APD/PCC/RETAINED)

TION OF   PC211 ** CT.1   J. Powell (PD)

INTERPRETER   Glenn Serebryary   OATH ON FILE/SWORN
LANGUAGE   Russian

☐ DEFENDANT ☒ PRESENT. ☐ NOT PRESENT.

☐ DEFENDANT ADVISED OF RIGHTS AND ADMITS/DENIES A VIOLATION OF PROBATION _____
PROBATION IS: FORMALLY/SUMMARILY ☐ REVOKED ☒ REINSTATED ☐ MODIFIED ☒ CONTINUED ☒ T&C ☐ WAIVES HEARING. ☒ EXTENDED TO: 10.18.02

☐ WAIVES ARRAIGNMENT. ☐ ARRAIGNED FOR JUDGMENT. ☐ IMPOSITION/EXECUTION OF SENTENCE IS SUSPENDED.
☐ PROBATION IS: ☐ DENIED ☐ GRANTED _____ YEARS (FORMAL/SUMMARY) TO EXPIRE _____
☐ COMMITMENT TO SHERIFF FOR _____ DAYS. STAYED TO: _____ ☐ ADULT INST. RECOMMENDED. ☐ PAROLE NOT TO BE GRANTED.
☐ PERFORM _____ HRS/DAYS PSP/VOL. WORK AT NONPROFIT ORG. SUBMIT PROOF TO PROBATION/COURT BY _____
☐ FOURTH AMENDMENT WAIVER OF PERSON/AUTO/RESIDENCE/PERSONAL EFFECTS. ☐ SHORT TERM WORK FURLOUGH. REPORT: _____
☐ UPON COMPLETION OF CUSTODY, DEFENDANT RELEASED TO U.S.I.N.S./UPON DEPORTATION, FORMAL PROBATION REVERTS TO SUMMARY.
☐ FURTHER CONDITIONS ARE SET FORTH IN PROBATION ORDER. ☐ VEHICLE INTERLOCK DEVICE (VC 23235/23246).
☐ DEFENDANT IS COMMITTED TO THE DEPARTMENT OF CORRECTIONS ☐ PER PC 1170(d).
☐ DEFENDANT IS COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY ☐ PER WI 1737
☐ FOR _____ LOWER/MIDDLE/UPPER TERM OF _____ YEARS/MONTHS/TO LIFE
   ON COUNT _____ CODE & NO. _____ ☐ PRINCIPAL COUNT.
☐ NO VISITATION, PER PC 1202.05. VICTIM IS UNDER 18 YRS. OF AGE. DA TO COMPLY WITH NOTICES.
☐ DEFENDANT IS ADVISED REGARDING PAROLE/APPEAL RIGHTS.
☐ REGISTRATION PER PC 290/HS 11590/PC 457.1. ☐ TESTING PER PC 1202.1
☐ CIRCUMSTANCES IN MITIGATION/AGGRAVATION OUTWEIGH THOSE IN MITIGATION/AGGRAVATION.
☐ RESTITUTION FINE OF $_____ PER PC 1202.4(b). ☐ FORTHWITH PER PC 2085.5.
☐ RESTITUTION FINE OF $_____ PER PC 1202.45 SUSPENDED UNLESS PAROLE IS REVOKED.
☐ FINE OF $_____ PLUS PENALTY ASSESSMENT. ☐ RESTITUTION OF $_____ TO VICTIM(S) PER P.O.'S REPORT/REST. FUND PER PC 1202:4(f).
☐ AT $_____ PER MONTH. ☐ COMBINED RATE. TO START 60 DAYS AFTER RELEASE/OR _____
☐ DEFENDANT TO PAY PRE-PLEA INVESTIGATION AND REPORT PREPARATION COSTS. ☐ DEFENDANT TO PAY BOOKING FEES.
☐ REFERRED TO REVENUE AND RECOVERY. ☐ COURT APPOINTED ATTORNEY FEES ORDERED IN THE AMOUNT OF $_____

| CREDIT FOR TIME SERVED |
| _____ DAYS LOCAL |
| _____ DAYS STATE INST. |
| _____ DAYS PC 4019/2933.1 |
| _____ TOTAL DAYS CREDIT |

☐ DEFENDANT REMANDED TO CUSTODY OF SHERIFF. ☐ WITHOUT BAIL. ☐ WITH BAIL SET AT $_____
☐ DEFENDANT ORDERED RELEASED FROM CUSTODY. ☐ ON PROBATION. ☐ ON OWN/SUPERVISED RECOGNIZANCE. ☐ THIS CASE ONLY.
☒ DEFENDANT TO REMAIN AT LIBERTY. ☐ ON BOND POSTED $_____ ☒ ON PROBATION. ☐ ON OWN/SUPERVISED RECOGNIZANCE.
☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT.
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION. ☐ PER PC 1203.03. ☐ PER WI 707.2.
OF COURT/DDA/DEFENDANT/PROBATION OFFICER. REASON: _____ CONTINUED TO/SET FOR _____ AT _____ M. IN DEPT. _____ ON MOTION

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $_____ ☐ SERVICE FORTHWITH. ☐ ORDERED WITHHELD TO _____
☐ BENCH WARRANT ISSUED/ORDERED _____ IS RECALLED/RESCINDED.
☐ BAIL IS ☐ EXONERATED. ☐ FORFEITED. AMOUNT $_____ BOND NO. _____
BOND COMPANY _____ AGENT _____

☐ PROCEEDINGS SUSPENDED ☐ PER PC 1368, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ PER WI 3051, ADDICTION OR DANGER OF ADDICTION. (SEE BELOW FOR SERVICE DATE OF PETITION AND ORDER.)

☐ SUPPLEMENTAL REPORT ORDERED. ☐ REPORT TO REGISTRAR OF VOTERS. ☐ DMV ABSTRACT. B.A.C. _____

(X) Deft waives interpreter. Court finds good
cause to use interpreter for sentencing purposes.
(X) Condition (F) and (g) on "order after
hearing" are deleted by Court.

EXHIBIT F
page 3

JUDGE OF THE SUPERIOR COURT

R-28 (Rev. 4-98)   CRIMINAL MINUTES

EXCERPTS OF RECORD p. 28

FROM DISTRICT COURT DOCUMENT 1

Letter Dated December 22, 2000 from Attorney  Verhovskoy

Exhibit G to the Federal Habeas Petition

Consisting of page G-1 of Doc 1

Post Office Box 620129
San Diego, CA 92162-0129 USA
Tel: 619 702-5852  Fax: 619 702-5853
E-mail: lawtech@pacbell.net

# LawTech International

December 22, 2000

Mr. Dimitri Tatarinov
Mrs. Patricia Lynn Jacks
5790 Friars Rd, #F8
San Diego, CA 92110

Dear Dimitri and Pat:

Subject:  Notice of Withdrawal as Attorney of Record before the Immigration & Naturalization Service

Please be advised that I am withdrawing from representation of your interests before the U.S. Immigration and Naturalization Service, as, likewise, from all other criminal matters.

Your next hearing before the INS court is on March 8, 2001.  Pleadings for that hearing are due by February 7, 2001.

All files are being assembled for your personal use and/or transfer to alternate counsel.  I will arrange to have all file materials delivered to you not later than January 3, 2001, or other counsel you may designate before that time.  This will give you or your new attorney ample and more than adequate time to prepare for the March 8 hearing.

Thank you, happy holidays, and I will you success in this and all other matters in the coming new year.

Sincerely,

Vladimir Verhovskoy, Esq.
Cal. Bar No. 97039

*Member Intertek Group:*
*An association of professional organizations*

EXHIBIT G page 1

EXCERPTS OF RECORD p. 30

FROM DISTRICT COURT DOCUMENT 1

<u>Subpoena Issued by the State Bar of California</u>
<u>for File in Superior Court Case SCD119330</u>

Exhibit H to the Federal Habeas Petition

Consisting of page H-1 of Doc 1



# THE STATE BAR OF CALIFORNIA
# OFFICE OF THE CHIEF TRIAL COUNSEL

# SUBPOENA

01-1277

*(California Business and Professions Code Sections 6049 to 6052 and 6069)*

In the Matter of

A State Bar Investigation

Case No. 01-O-00503

**COURT FILE SUBPOENA**

F I L E D
STEPHEN THUNBERG
Clerk of the Superior Court

JUN 2 8 2001

By: B. Lindahl, Deputy

**THE STATE BAR OF CALIFORNIA, TO:**     Clerk, San Diego Superior Court

1.     **YOU ARE ORDERED TO APPEAR TO TESTIFY AS A WITNESS** in this proceeding at the following time and place:

DATE: JULY 9, 2001     TIME: 3:00 P.M.

PLACE:   THE STATE BAR OF CALIFORNIA
OFFICE OF THE CHIEF TRIAL COUNSEL
ATTENTION: CONCHA CUELLAR-ROQUE
1149 SOUTH HILL STREET
LOS ANGELES, CALIFORNIA 90015-2299
TELEPHONE: (213) 765-1156

*Mail to ↑*

2.     **YOU ARE FURTHER ORDERED AS FOLLOWS:**

You are ordered to produce the documents and things described below:

Court file name:   **People v. Dmitri Tatarinov**

Court file No.     **SCD119330**

**PLEASE SEND CERTIFIED COPY OF DOCKET SHEET**

3.     You are not requested to appear in person; however, you are ordered to produce true, legible, and durable certified copies of the above-described documents, in lieu of personal appearance.

4.     The records are to be produced by the date and time shown above in paragraph 1.

5.     IF YOU HAVE ANY QUESTIONS ABOUT THIS SUBPOENA, YOU MAY CONTACT CONCHA CUELLAR-ROQUE BEFORE THE DATE ON WHICH YOU ARE TO APPEAR AT 213-765-1156. DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT OF COURT IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA.

Date issued:  June __4__, 2001

Dane Dauphine
Deputy Trial Counsel

EXHIBIT H page 1

H:\Work\Melissa\SCD11930\Sub-L.wpd\fdt

FROM DISTRICT COURT DOCUMENT 1


<u>Copy of Order Denying Motion to Recall Remittitur,
Vacate Dismissal and Reinstate Appeal, Filed September 20, 2001</u>

Exhibit "I" to the Federal Habeas Petition

Consisting of page I-1 of Doc 1

EXCERPTS OF RECORD p. 33

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

F I L E D
Stephan M. Kelly, Clerk

SEP 2 0 2001

Court of Appeal Fourth District

PEOPLE OF THE STATE OF CALIFORNIA
    Plaintiff-Respondent
v.
TATARINOV, DIMITRI VALERYEVICH
    Defendant-Appellant
D027293
San Diego County No. SCD119330

THE COURT:

    Appellant's motion to recall remittitur, vacate dismissal and reinstate appeal filed on August 30, 2001, is DENIED.

Presiding Justice

cc:  All Parties

Exhibit "I" page 1
EXCERPTS OF RECORD p. 34

FROM DISTRICT COURT DOCUMENT 1


Copy of Order Denying Petition for Review of Motion to RecallRemittitur,
Vacate Dismissal and Reinstate Appeal, Filed December 12, 2001

Exhibit J to the Federal Habeas Petition

Consisting of pageJ-1 of Doc 1


EXCERPTS OF RECORD p. 35

Court of Appeal, Fourth Appellate District, Division One - No. D027293
S101020

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

DIMITRI VALERYEVICH TATARINOV, Defendant and Appellant.

SUPREME COURT
FILED

DEC 1 2 2001

Frederick K. Ohlrich Clerk

DEPUTY

Petition for review DENIED.

GEORGE
_____
Chief Justice

EXCERPTS OF RECORD p. 36
Exhibit J page 1

FROM DISTRICT COURT DOCUMENT 1

Copy of Order of California Court of Appeal
Denying Petition for Writ of Habeas Corpus
Filed June 25, 2002

Exhibit K to the Federal Habeas Petition

Consisting of page K-1 of Doc 1

# COURT OF APPEAL - FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re DIMITRI VALERYEVICH TATARINOV<br><br>on<br><br>Habeas Corpus. | D039562<br><br>(San Diego County Super. Ct. No. SCD 119330) |

F I L E D

JUN 2 5 2002

Court of Appeal Fourth District

THE COURT:

The petition for writ of habeas corpus and response have been read and considered by Justices Benke, Huffman and McConnell.

Petitioner has failed to present a prima facie case to set aside the dismissal and reinstate the appeal. Further, petitioner has not shown prejudice flowing from counsel's performance or lack thereof. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692.) Also, habeas corpus does not serve as a substitute for appeal. Absent special circumstances that excuse a failure to raise issues on appeal, such failure generally precludes review in a post conviction petition for writ of habeas corpus. (*In re Harris* (1993) 5 Cal.4th 813, 829.)

The petition is denied.

McCONNELL, Acting P. J.

Copies to: All parties

Page 1
EXHIBIT K

EXCERPTS OF RECORD p. 38

FROM DISTRICT COURT DOCUMENT 1


<u>Copy of Order of California Supreme Court</u>
<u>Denying Petition for Review of Writ of Habeas Corpus,</u>
<u>Filed August 28, 2002</u>

Exhibit L to the Federal Habeas Petition

Consisting of page L-1 of Doc 1

Court of Appeal, Fourth Appellate District, Division One - No. D039562
**S108092**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re DIMITRI VALERYEVICH TATARINOV  on Habeas Corpus

Petition for review DENIED.

SUPREME COURT
**FILED**

AUG 2 8 2002

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice

Page 1
EXHIBIT L

EXCERPTS OF RECORD p. 40

FROM DISTRICT COURT DOCUMENT 1

<u>Copy of Argument from the Federal Petition for Writ of Habeas Corpus
Explaining Tolling Pursuant to 28 U.S.C. Section 2244(d)(1)</u>

Consisting of pages 18 through 20 of Doc 1

1    tioner placed great reliance on Verhovskoy's legal advice. The attorney-client

2    relationship was particularly strong because Verhovskoy could communicate

3    with petitioner in Russian, petitioner's first language. Exhibits A and B.   On

4    December 24, 2000, petitioner received a letter from Verhovskoy.  It tersely

5    said Verhovskoy would no longer represent petitioner. It advised petitioner to

6    retain other counsel.  The letter provided no explanation. Exhibit G.   On Janu-

7    ary 19, 2001, petitioner received a notice from the California State Bar indicat-

8    ing Verhovskoy was "suspended from the practice of law in the State of Cali-

9    fornia for a period of sixty (60) days."  Petitioner thereafter retained James R.

10   Patterson to represent him in the immigration matter. Exhibit A, p. 3.

11         The date of December 24, 2000, is the earliest date that could

12   trigger the provisions of 28 U.S.C. § 2244(d)(1)(D), the day on which the

13   factual predicate of the claim or claims presented could have been discovered

14   through the exercise of due diligence. Prior to that time, petitioner was unduly

15   influenced by Verhovskoy's legal advice, which made it a practical impossibil-

16   ity for petitioner to discern Verhovskoy's incompetent representation.  It would

17   be reasonable to choose January 2, 2001, as the date from which the statute

18   commenced to run because it would have been quite difficult for petitioner to

19   obtain new legal counsel during the holiday season.

20         During the one-year period that commenced January 2, 2001, the

21   statute of limitations in 28 U.S.C. § 2244(d)(1) was tolled for substantial peri-

22   ods of time pursuant to the provisions of 28 U.S.C. § 2244(d)(2).   That sub-

23   section provides, "[t]he time during which a properly filed application for State

24   post-conviction or other collateral review with respect to the pertinent judg-

25   ment or claim is pending shall not be counted toward any period of limitation

26   under this subsection."  From the date of January 2, 2001, the statute ran for a

27   period of 240 days commencing January 2, 2001 and concluding August 29,

28   2001.

18

PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2254

1  On August 30, Attorney Wallingford filed a "Motion to Recall Re-
2  mittitur, Vacate Dismissal and Reinstate Appeal." The California Court of Ap-
3  peal denied the motion in an order dated September 20, 2001. Exhibit "I". Pe-
4  titioner then filed a timely petition for review in the Califomia Supreme Court.
5  It was considered as case S101020 and denied December 12, 2001. Exhibit J.
6  That motion tolled the AEDPA statute of limitations between those dates.
7  In *Artuz v. Bennett*, 531 U.S. 4, 148 L.Ed.2d 213, 121 S.Ct. 361
8  (2000), the United States Supreme Court considered whether a prisoner's pro
9  se motion to vacate his judgment of conviction could toll the statute of limita-
10  tions under 28 U.S.C. § 2244(d)(2). The Court stated that "an application is
11  `properly filed' when its delivery and acceptance are in compliance with the ap-
12  plicable laws and rules governing filings. These usually prescribe, for example,
13  the form of the document, the time limits upon its delivery, the court and office
14  in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531
15  U.S. *supra*, at p. 8 (emphasis omitted) (footnote omitted). "[T]he question
16  whether an application has been `properly filed' is quite separate from the ques-
17  tion whether the claims contained in the application are meritorious and free of
18  procedural bar." *Id.* at 9 (emphasis omitted). Thus, the Court upheld the Sec-
19  ond Circuit's determination that the statute of limitations was tolled during the
20  time when the state court was considering the prisoner's motion to vacate his
21  conviction, despite the fact that the claims in the motion were procedurally
22  barred under New York law. *Artuz v. Bennett*, 531 U.S. at pp. 7-8, *supra.*
23  Likewise, in *Tillema v. Long*, 253 F.3d 494 (9th Cir. 2001) the Ninth Circuit
24  held that a pro per defendant's motion to vacate illegal sentence, filed in the
25  California courts, tolled the one-year statute even though the motion did not in-
26  clude an issue subsequently raised on federal habeas corpus. *Tillema v. Long*,
27  253 F.3d at pp. 498-499.
28

19
PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2254

1         If the motions in *Artuz v. Bennett* and *Tillema v. Long* tolled the
2    running of the statute of limitations, there can be no question that petitioner's
3    motion likewise tolled the statute. Tolling extends for the full period the motion
4    is properly before the state court system, from the initial filing in the lower
5    court to denial of a timely filed petition for review. 28 U.S.C. 2244(d)(2) and
6    see *Nino v. Galaza* 183 F.3d 1003, 1006 (9th Cir. 1999).

7         The statute of limitations in section 2244(d)(1) commenced to run
8    again on December 13, 2001, the day after the California Supreme Court de-
9    nied the petition for review in case S101020. It ran for 64 days to February
10   14, 2002. On February 15, 2002, petitioner filed his petition for writ of habeas
11   corpus in the Court of Appeal, case D039562. On June 25, 2002, the Court of
12   Appeal filed its decision denying the petition for review. Exhibit K. On July 3,
13   2002, petitioner filed a timely petition for review in the California Supreme
14   Court from denial of the petition for writ of habeas corpus. It was considered
15   as case S108092 and denied August 28, 2002. Exhibit L. That petition for writ
16   of habeas corpus again tolled the statute of limitations in 28 U.S.C. 2244(d)(1)
17   while it was pending in the state courts. 28 U.S.C. § 2244(d)(2) and see *Nino*
18   *v. Galaza,* 183 F.3d at p 1006, *supra,* and *Tillema v. Long,* 253 F.3d at p. 502,
19   *supra.* The statute of limitations again commenced to run on August 29, 2002.
20   Prior to that date, the statute had already run for a period of 304 days between
21   January 2, 2001 and August 29, 2001, and again between December 13, 2001
22   and February 14, 2002. Therefore, the last day for filing this petition for writ
23   of habeas corpus will be October 28, 2002. As explained above, that date is
24   based on the statute commencing to run on January 2, 2001. Even if the court
25   determines that the statute commenced running on December 24, 2000, the last
26   day for filing would be October 18, 2002.
27
28

FROM DISTRICT COURT DOCUMENT 1

Copy of Argument from the Federal Petition for Writ of Habeas Corpus
Explaining How Petitioner Was Prejudiced by
Trial Counsel's Ineffective Assistance

Consisting of pages 24 through 35 of Doc 1

EXCERPTS OF RECORD p. 45

in case D027293. A criminal defendant is entitled to effective assistance of counsel on appeal. *Evitts v. Lucey,* 469 U.S. 387, 83 L.Ed.2d 821, 105 S.Ct. 830 (1985). The most basic duty required of appellate counsel involves preparation and filing of a legal brief setting forth all arguable issues that advance the client's position. *Doyle v. United States,* 721 F.2d 1195, 1198 (9th Cir. 1983). Attorney Verhovskoy utterly failed to perform that duty, causing petitioner's appeal in case D027293 to be dismissed on procedural grounds. A claim of ineffective assistance of appellate counsel is cognizable in a habeas corpus proceeding. *Murray v. Carrier,* 477 U.S. 478, 488, 91 L.Ed.2d 397, 106 S.Ct. 2639, 2645 (1986).

2.  **Petitioner was prejudiced by counsel's failure to act because petitioner had meritorious legal issues to present on appeal.**

a)  **On appeal, petitioner could have successfully argued that the trial court committed error by failing to instruct the jury that petitioner had a right to use a reasonable amount of force to resist an excessively forceful citizen's arrest.**

Petitioner could have obtained substantial relief on appeal had Attorney Verhovskoy provided competent professional assistance. Petitioner was convicted of robbery on an *Estes* theory. *People v. Estes,* 147 Cal.App.3d 23, 27-28 (1983)(robbery conviction affirmed where defendant shoplifted merchandise from Sears store and then assaulted a security guard who tried to apprehend him in the store parking lot). At trial, testimony presented by the prosecution and the defense provided conflicting descriptions of the fight that occurred between petitioner and Nordstrom security agents in the parking lot. Nordstrom agents said petitioner assaulted them after they asked him to return to the store. RT pp. 69-71, 92-95, 134-135, 276. Conversely, petitioner said he walked peacefully to his car. When he started to open it, a Nordstrom agent jumped on him from behind, grabbed his neck and said, "we just want to talk to you." Petitioner was thrown onto the trunk of his car and then to the

24

1  ground. The agent continually applied force until petitioner was handcuffed.

2  R.T. pp. 369-374, 410-412.

3  The jury's resolution of that factual conflict was important, be-

4  cause it created the basis for the robbery conviction in count one. If petitioner

5  stole merchandise from the store and then used force in the parking lot to avoid

6  apprehension, the crime was robbery. *People v. Estes, supra,* 147 Cal.App.3d

7  at pp. 27-28. However, if petitioner used reasonable force only to defend him-

8  self against an unlawful use of force by Nordstrom agents, he was not guilty

9  of robbery. To support that defense, petitioner needed a jury instruction ex-

10  plaining that he could lawfully use reasonable force to repel excessive force

11  applied by Nordstrom agents who arrested him.

12  Petitioner's trial counsel explained at the jury instruction confer-

13  ence that he would defend against the robbery charge by arguing that petitioner

14  used force to resist excessive force applied by the Nordstrom agents in making

15  the citizen's arrest. Counsel told the court:

> [T]he defense there, your honor, was that [the Nordstrom agents] were doing something. They had no right to physically restrain the defendant. He had a right to defend himself. That was not a lawful arrest.

Emphasis added, R.T. p. 261, also see p. 266. Counsel added:

> [The Nordstrom agents] were instigating and creating the physical confrontation."

*Ibid.*

The trial court recognized that a basic issue presented to the jury

for decision involved the difference between petty theft and robbery. With that

in mind, the court gave the jury a number of special instructions explaining the

difference between those two offenses. The court erred by failing to include in

those instructions language that explained petitioner's right to use a reasonable

1    amount of force to defend against excessive force by the Nordstrom agents.[3]

2    Petitioner's trial counsel told the court at the jury instruction conference that

---

3    [3]    The trial court gave standard instructions defining robbery and petty theft
using CALJIC Nos. 9.40 [robbery defined], 9.40.2 [robbery – after ac-
quired intent], 9.41 [robbery – fear – defined], and 9.43 [second-degree
robbery as a matter of law], 14.02 [petty theft – defined]. (CT pp. 80-83,
96.) In addition, the court gave the following instructions that related to
the distinction between robbery and petty theft:

SPECIAL JURY INSTRUCTION: "Mere theft becomes robbery if the
perpetrator, having gained possession of the property without the use of
force or fear, resorts to force or fear while carrying away the loot. ¶ In
other words, when property is taken with the specific intent to steal but
without the use of threat or force or fear and thereafter force or fear is
used to prevent the owner from recovering the property, however tempo-
rarily, or to facilitate an escape, the crime of robbery is committed. ¶ A
slight movement is sufficient for the element of taking. ¶ The robber's
escape with the loot is not a necessary element of the crime of robbery. ¶
Robbery does not require that the loot be carried away after the use of
force of [sic] fear. (CT p. 84.)

"MERCHANT'S PRIVILEGE" INSTRUCTION: "A merchant may detain a
person for a reasonable time for the purpose of conducting an investigation
in a reasonable manner whenever the merchant has probable cause to be-
lieve the person to be detained is attempting to unlawfully take or has un-
lawfully taken merchandise from the merchant's premises. ¶ In making
the detention the merchant may use a reasonable amount of nondeadly
force necessary to protect himself or herself and to prevent escape of the
person detained or the loss of tangible or intangible property. ¶ As used in
this section: ¶ 'Merchandise' means any personal property, capable of
manual delivery, displayed, held or offered for retail sale by a merchant. ¶
'Merchant' means an owner, operator, and the agent, consignee, lessee or
officer of an owner or operator, of any premises used for the retail pur-
chase or sale of any personal property capable of manual delivery." (CT p.
92.)

UNTITLED SPECIAL INSTRUCTION: "The excessive or unreasonable
force instructions do not apply to Nordstrom personnel. They apply only
to Count 2, the charge of resisting arrest by a Peace Officer, Penal Code
Section 148. ¶ However, as the instructions indicate, the crime of robbery
requires that the taking be accomplished by force or fear. Thus, the ele-
ment of force or fear required for robbery must be to facilitate the taking
of stolen property, either to prevent the owner from recovering the prop-

26

1   petitioner would defend the robbery charge on a theory that any force he used

2   against Nordstrom agents in the parking lot was a lawful response to excessive

3   force by the Nordstrom agents in making the arrest. RT p. 261.  Trial counsel

4   tried hard to get instructions on that point of law.  During the jury instruction

5   conference he explained to the court that "robbery involves the use of force or

6   fear to take the property.  Here the force we are arguing was in self-defense

7   and protection of his own self and vehicle but he had an absolute right to

8   physically defend himself." RT p. 266.

9          The court told trial counsel he could argue that to the jury, imply-
    ing the court would not give an instruction to that effect.  *Ibid.*  Counsel per-

10  sisted, saying, "...[T]he defendant had an absolute right to use force.  He was

11  being precluded from entering his car.  He had no duty to submit to that physi-

12  cal arrest." *Ibid.*

13         Counsel resumed his argument during a subsequent discussion of

14  jury instructions.  At that time, he submitted CALJIC No. 9.60, which defines

15  the crime of false imprisonment by force.  Counsel said:

16         [T]his was my attempt, as the People's counsel said, "loose at-
           tempt," or best attempt over the course of the evening to come up
17         with an alternate to our discussion in chambers of addressing the issue
           of the rights of a private citizen, security agent, in using force to ar-
18         rest someone and hold him against his will, including the defendant's
           right to resist that confinement.
19

20  RT pp. 490-491.  The court noted that CALJIC 9.60 seemed inappropriate,

21  since it defines the crime of false imprisonment. RT p. 491.  Trial counsel re-

22  ─────────────────────────────────────────────
23  erty or to escape apprehension for the theft." CT p. 93.  This instruction
    necessarily referred to CALJIC Nos. 9.26 and 9.28.  Those instructions
24  said that a person arrested by a peace officer may use reasonable force to
    defend himself if the peace officer uses excessive force in making the ar-
25  rest. CT pp. 89, 90.

PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2254
EXCERPTS OF RECORD p. 49

1    plied that he modified the instruction so it did not appear to charge the Nord-

2    strom agents with a crime. He said, "what I am trying to accomplish by this is

3    to show that there is possible misconduct here on the part of agents and the

4    right of defendant to defend himself." R.T. p. 491, and see CT pp. 52-53. The

5    court declined to give the modified version of CALJIC No. 9.60. RT pp. 491-

6    492.

7        The trial court had a duty under California law to give a sua sponte

8    instruction telling the jury petitioner had that right.    The California Supreme

9    Court has long held that trial courts have a sua sponte duty to instruct on all

10   material issues presented by the evidence.    The duty extends to defenses as

11   well as to lesser-included offenses. *People v. Breverman,* 19 Cal.4th 142, 157

12   (1998).    However, a distinction is drawn between the two situations.    In the

13   case of defenses, a sua sponte instructional duty arises only if it appears the

14   defendant is relying on such a defense, or if there is substantial evidence sup-

15   portive of such a defense and the defense is not inconsistent with the defen-

16   dant's theory of the case. *People v. Breverman, supra,* 19 Cal.4th at p. 157,

17   *People v. Elize,* 71 Cal.App.4th 605, 611, 615 (1999).

18       In petitioner's case, it was crystal clear that petitioner relied on a

19   defense theory that he used force in the parking lot to repel excessive force ap-

20   plied by the Nordstrom agents, and not to commit robbery.    Trial counsel re-

21   peatedly expressed reliance on that theory, both at the jury instruction confer-

22   ence and in his argument to the jury. R.T. pp. 261, 266, 490-491, 754-755.

23   Trial counsel argued to the jury, without the aid of instructional support, that:

24       [t]he force was not associated with the taking.  It was not asso-
     ciated with the taking.  It was not used to accomplish the taking, as the
25   law requires.  <u>Whatever force or fear there may have been, we would
     submit was a lawful resistance to an unlawful arrest, to an excessive,
     unreasonable use of force</u>."

28

1  Emphasis added, RT pp. 754-755. Likewise, petitioner asserted that theory in
2  his testimony. He testified that Nordstrom agents initiated combat in the park-
3  ing lot by jumping on his back and continuously applying force until he was
4  handcuffed. RT pp. 372-374, 410-412. Thus, petitioner clearly relied on this
5  defense. The jury should have received instructions that would have author-
6  ized it to use this theory to decide whether petitioner's use of force in the
7  parking lot was lawful resistance to use of excessive force by the Nordstrom
8  agents.

9  Appropriate language for a sua sponte instruction was readily
   available. In conjunction with the section 148 offense charged in this case, the
10 trial court gave CALJIC No. 9.28 [USE OF EXCESSIVE FORCE BY AN OF-
11 FICER]. It says:

12     [a] peace officer is not permitted to use unreasonable or excessive
       force in making or attempting to make an otherwise lawful arrest.
13     ¶ If an officer does use unreasonable or excessive force in mak-
       ing or attempting to make an arrest, the person being arrested may
14     lawfully use reasonable force to protect himself.

15 CT p. 90. CALJIC No. 9.28 could have been modified by simply substituting
16 the word "citizen" or the words "store security agent" for the words "officer,"
17 or "peace officer." In that way, the instruction would have correctly estab-
18 lished that petitioner had a right to use reasonable force to resist excessive
19 force employed by the Nordstrom agents in executing the arrest.

20     The trial court compounded the error when it answered a jury
21 question by saying that the excessive or unreasonable force instructions appli-
22 cable to peace officers did not apply to the Nordstrom agents. The instruction
23 erroneously implied that petitioner had no right to use force against the Nord-
24 strom agents, even if they used excessive force in arresting him. Immediately
25 after the court instructed the jury, a juror submitted a written question to the
   court. It said:

1      Re resisting arrest element, does the element of excessive force, num-
2    ber 148, apply to the peace officer and the Nordstrom's loss preven-
     tion team in the detention of the defendant or just the peace officer?
3
     RT pp. 725-726. This was an important question. It appeared to address peti-
4
     tioner's legal theory that he used force in response to excessive force by the
5
     Nordstrom agents, and therefore did not commit robbery.
6
7       In discussing the juror's question with the court, trial counsel ar-
     gued that the peace officer instructions should apply to the Nordstrom person-
8    nel because, "I think there is an issue of unreasonable force, making an unlaw-
9    ful arrest. And I think it definitely applies." RT p. 726. Trial counsel was
10   correct. The juror's question addressed the language of CALJIC No. 9.28,
11   discussed above, which says a peace officer cannot use excessive force in
     making an arrest. It authorizes the person arrested to use reasonable force to
12   resist a peace officer who makes an otherwise lawful arrest with excessive
13   force. The principle set forth in that instruction would necessarily apply
14   equally to a citizen's arrest.
15      However, the trial court ruled that the legal principle concerning
16   excessive force in making an arrest did not apply to the Nordstrom personnel.
17   RT p. 726. The court stated,
18     …and as our special instruction says, if force or fear is used to prevent
     the owner from recovering the property, however temporarily or to fa-
19   cilitate escape, then the crime of robbery is committed. But if the
     force is used for some other reason, such as an unprovoked attack,
20   then it would be relevant.
21   RT p. 727. The court appeared to be referring to its special instruction that
22   explained the difference between "mere theft" and robbery, which contains
23   some of the language the court used in its explanation. CT p. 84. However,
24   that special instruction did not contain language saying, "if the force is used for
25   some other reason, such as an unprovoked attack…" *Ibid.*

It appears the trial court failed to understand the relevance of an instruction telling the jury that petitioner could lawfully use reasonable force to repel a citizen's arrest involving excessive force. The jury needed to know that it would be lawful for petitioner to use a reasonable amount of force, even if he had actually stolen a jacket in the store, if the Nordstrom agents used excessive force to arrest him in the parking lot.

The court said it would not give the instruction as to the Nordstrom agents because,

> your version of the facts and your argument is that [petitioner] dropped the jacket in the store; he left the jacket in the store and then left. Whatever he did, under your version, was completed at that time. <u>The fact that [the Nordstrom agents] may have gone out there and if they did use excessive force against him, does not apply to whether he committed a petty theft or not</u>.

Emphasis added; RT p. 728 (the court essentially repeated this analysis at RT p. 732). The court's statement reveals a basic misunderstanding of the reason why petitioner needed the instruction. Petitioner needed it to defend against the robbery charge, not petty theft. The jury evidently believed petitioner carried the jacket into the parking lot, and rejected his testimony that he dropped it inside the store. Otherwise, the jury would have found him guilty of attempted petty theft, using a lesser-included offense instruction tied to that factual scenario. CT pp. 94-96, RT pp. 697-698. Assuming the jury believed petitioner left the store with the jacket, however, the question remained whether he used force in the parking lot in an effort to escape with the jacket, or as a reasonable response to an excessively forceful citizen's arrest. Petitioner needed an instruction informing the jury that he could use reasonable force to resist excessive force in effecting the citizen's arrest, even if he actually stole the jacket. That instruction would have let the jury know petitioner could lawfully use force during the arrest without escalating the offense to robbery.

31

1      Petitioner was entitled, under California law, to an instruction sup-
2   porting his defense under that factual scenario. In *People v. Elize, supra,* 71
3   Cal.App.4th 605, the defendant had a physical struggle with two women.
4   During the struggle he drew a gun which fired one time, nearly injuring one
5   woman. *Id.* at p. 607. The trial court refused to instruct on self-defense be-
6   cause the defendant testified the shooting was accidental. *Id.* p. 610. The ap-
7   pellate court reversed and remanded for a new trial, holding that the self-
8   defense instructions should have been given. The court explained that the jury
9   could have disregarded the defendant's testimony about an accidental shooting
10  and found self-defense from other evidence. It was reversible error to not in-
    struct on self-defense. *Id.* pp. 612, 616. That same rationale applies here. The
11  jury could have rejected petitioner's testimony about dropping the jacket in the
12  store, but believed he used force in the parking lot to repel excessive force by
13  Nordstrom agents. The instruction would have informed the jury that peti-
14  tioner could lawfully use force in that circumstance.
15      It was extremely important that the jury understand petitioner
16  could use reasonable force to resist an excessively forceful citizen's arrest.
17  The special instruction distinguishing robbery from "mere theft" said "force
18  ...used to prevent the owner from recovering the property, however temporar-
    ily...," would amount to robbery. CT p. 84. If the jury thought petitioner had
19  no lawful right to use force against the Nordstrom agents, the jury would at-
20  tribute any force he did use against them as force escalating theft to robbery.
21  There would simply be no permissible reason for him to use force. Under the
22  special instruction distinguishing robbery from "mere theft," the impermissible
23  use of force would necessarily result in a verdict finding petitioner guilty of
24  robbery, because it delayed the effort to make the citizen's arrest and recover
25  the property.

PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2254

1    Instead of telling the jury that petitioner could use reasonable force

2 to resist an excessively forceful citizen's arrest, the court fashioned and gave

3 the following instruction in response to the juror's question:

4        The excessive or unreasonable force instructions do not apply
         to Nordstrom personnel.  They apply only to count 2, the charge of
5        resisting arrest by a Peace Officer, Penal Code Section 148.  ¶  How-
         ever, as the instructions indicate, the crime of robbery requires that
6        the taking be accomplished by force or fear.  Thus, the element of
         force or fear required for robbery must be to facilitate the taking of
7        stolen property, either to prevent the owner from recovering the prop-
8        erty or to escape apprehension for the theft. [4]

9 CT p. 93, RT pp. 734-736.  That instruction was defective.  It failed to tell the

10 jury that petitioner could lawfully use force against the Nordstrom agents if

11 they used excessive force to arrest him.  As explained above, if the jury

12 thought petitioner had no lawful right to use force under any circumstance, pe-

13 titioner lost any reasonable opportunity to have the jury accept his theory of de-

14 fending against the robbery charge.  Had Attorney Verhovskoy presented this

15 legal argument on direct appeal, it is likely that petitioner would have prevailed.

Therefore, petitioner is entitled to relief on habeas corpus.

16    **b)    On appeal, petitioner could have successfully argued that the**
17        **trial court committed error by failing to instruct the jury that**
         **the crime of theft is a lesser-included offense within the**
18        **crime of robbery.**

19        Petitioner was convicted of robbery in count one on a theory that

20 he shoplifted in a Nordstrom department store, then used force against Nord-

21

22 4    Appellant's trial counsel acquiesced in this instruction when asked by the
     court if it was satisfactory. RT pp. 734-735.  This should not be deemed a
23   waiver of the issue concerning instruction on the right to resist an exces-
     sively forceful citizen's arrest, however.  Petitioner's counsel had argued
24   forcefully for such an instruction immediately prior to the court's ruling.
     RT pp. 726-731.  The court had forcefully told counsel that he was not
25   entitled to the instruction. RT pp. 726-733.

33

1  strom security agents when they confronted him outside in the parking lot.
2  The court instructed the jury that attempted petty theft was a lesser-included
3  offense of robbery. CT p. 94.  That instruction was predicated on petitioner's
4  testimony that he started to steal a jacket, then dropped it inside the store and
5  left with no stolen merchandise. RT p. 494. The court explained:

6    [T]he court feels obligated to give the lesser-included offense instruc-
      tion of attempted petty theft in this case.  The defendant has made a
7    judicial confession on the witness stand that he intended to take the
      jacket, that he did take the jacket, that he started to walk out with the
8    jacket, and he thought someone was following him, that he then
9    dropped the jacket in the store and went out without the jacket. ¶ Now
      that is an attempted petty theft.  And the court feels obligated to give
10   that instruction and have a verdict form for attempted petty theft, so
      we will give the instruction on 14.02, which defines theft, the instruc-
11   tion on attempt and then 17.10, which talks about the lesser included
      offense.
12

13  RT p. 494, CT pp. 94-96. The court failed, however, to instruct and provide a
14  verdict form on the lesser-included offense of theft, a violation of section 484.
15  This was error.

16        The evidence at trial required instruction on the lesser-included of-
17  fense of theft.  If the jury believed that petitioner stole merchandise and took it
18  into the parking lot, the jury had to decide whether that act constituted robbery
19  or theft.  If the jury doubted that petitioner used force to facilitate the theft, the
20  jury should not have found petitioner guilty of robbery, but rather the lesser-
    included offense of theft.

21        Under California law, theft is a necessarily lesser-included offense
22  within robbery. *People v. Ramkeesoon*, 39 Cal.3d 346, 351 (1985), *People v.*
23  *Estes, supra,* 147 Cal.App.3d at p. 28.   Robbery has the additional element of a
24  taking by force or fear.  The trial court had a duty to instruct on theft even in
    the absence of a request by petitioner. *People v. Ramkeesoon, supra,* 39 Cal.3d
25  at p. 351.  A trial court must instruct, sua sponte, on the general principles of

34
PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. § 2254

law relevant to issues raised by the evidence. *People* v. *Wickersham*, 32 Cal.3d 307, 323-324 (1982), disapproved on other grounds in *People v. Barton*, 12 Cal.4th 186 (1995).  Encompassed within this requirement is the duty to instruct on a lesser-included offense, even if not requested, when the evidence raises a question as to whether all the elements of the charged offense are present and there is evidence that would justify a conviction of the lesser offense. *People* v. *Melton*, 44 Cal.3d 713, 746 (1988).

The necessity for instructions on lesser-included offenses is based on the defendant's constitutional right to have the jury determine every material issue presented by the evidence. *People* v. *Tinajero*, 19 Cal.App.4th 1541, 1547 (1993).  Fulfillment of this obligation ensures the jury will consider the full range of possible verdicts - not limited by the strategy, ignorance, or mistakes of the parties.  The jury should not be constrained by the fact that the prosecution and defense have chosen to focus on certain theories. *People* v. *Wickersham, supra*, 32 Cal.3d at p. 324.  When one of the elements of the offense charged remains in doubt, but the defendant is clearly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction. *People* v. *Ramkeesoon, supra*, 39 Cal.3d at p. 351.  Proper instruction on a lesser-included offense avoids an unwarranted all-or-nothing choice for the jury and ensures the verdict is neither harsher nor more lenient than the evidence merits. *People* v. *Wickersham, supra*, 32 Cal.3d at p. 324.

In petitioner's case, the jury needed the option of finding petitioner guilty of theft to accurately determine his culpability.  The error in failing to instruct on theft as a lesser-included offense caused a miscarriage of justice.  Had Attorney Verhovskoy presented this issue on appeal, it is likely that petitioner would have prevailed. *People* v. *Breverman*, 19 Cal.4th 142, 178, fn. 26 (1998).  Therefore, petitioner is entitled to relief on habeas corpus.

DISTRICT COURT DOCUMENT 11

<u>Report and Recommendation of Magistrate Roger T. Benitez</u>
<u>RE: Granting Motion to Dismiss Petition for Writ of Habeas Corpus</u>

16 pages, including Appendix to Report and Recommendation

FILED

03 APR -2 PH 1:58

CLERK, U.S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRI V. TATARINOV,<br><br>                    Petitioner,<br>v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO,<br><br>                    Respondent. | Civil No. 02cv2029-W (BEN)<br><br>**REPORT AND RECOMMENDATION RE: GRANTING MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS** |

## I. INTRODUCTION

Petitioner, Dimitri V. Tatarinov, was tried by a jury in August, 1996 and convicted of second degree robbery. He was sentenced to probation which terminated on October 18, 2002, after the filing of his habeas petition.

Although never incarcerated for the crime, Tatarinov now seeks federal habeas corpus relief from the lingering effects of his conviction pursuant to 28 U.S.C. § 2254. He alleges a single ground for relief. Specifically, he alleges the trial court committed reversible error in giving a jury instruction on self-defense which could have been remedied on appeal. However, he received ineffective assistance of appellate counsel when his retained counsel failed to file an opening brief and his direct appeal was dismissed.

02cv2029

1    The trial finished on August 12, 1996 and the appeal was dismissed on April 28,

2    1997 (with the Remittitur issued on July 1, 1997). The instant Petition was filed on

3    October 11, 2002. The Respondent now moves to dismiss arguing that the Petition is

4    barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).

5    After considering all of the pleadings and relevant lodgements, and for the reasons

6    set forth below, it is recommended that the Motion to Dismiss the Petition for Writ of

7    Habeas Corpus be GRANTED.

## II. THE STATUTE OF LIMITATIONS

### A. THE AEDPA ONE-YEAR STATUTE OF LIMITATIONS

10    Respondent contends that the Petition is time barred by the Antiterrorism and

11    Effective Death Penalty Act ("AEDPA").[1] AEDPA amended 28 U.S.C. § 2244 by adding

12    subdivision (d), which provides for the one-year limitation period for state prisoners to file

13    habeas corpus petitions in federal court. Section 2244(d) states, in pertinent part:

14    (d)(1) A 1-year period of limitation shall apply to an application for a writ of
       habeas corpus by a person in custody pursuant to the judgment of a State
15    court. The limitation period shall run from the latest of :

16         (A)    the date on which the judgment became final by the conclusion of
                  direct review or the expiration of the time for seeking such review;
17

18         (B)    the date on which the impediment to filing an application created by
                  State action in violation of the Constitution or laws of the United
19                States is removed, if the applicant was prevented from filing by such
                  State action;

20         (C)    the date on which the constitutional right asserted was initially
                  recognized by the Supreme Court, if the right has been newly
21                recognized by the Supreme Court and made retroactively applicable
                  to cases on collateral review; or
22

23         (D)    the date on which the factual predicate of the claim or claims
                  presented could have been discovered through the exercise of due
24                diligence.

25    (2)    The time during which a properly filed application for State post-conviction
              or other collateral review with respect to the pertinent judgment or claim is
26            pending shall not be counted toward any period of limitation under this

---

27    [1] AEDPA applies to Petitioner's case as he filed his Petition in 2002. *Lindh v. Murphy*, 521
28    U.S. 320 (1997) (AEDPA applies to petitions for writs of habeas corpus filed in federal court after its
      effective date of April 24, 1996). Prior to AEDPA, there was no statute of limitations for federal
      habeas relief.

2

02cv2029

1    subsection.

2    28 U.S.C.A. § 2244(d) (West Supp. 2002).

3       Petitioner does not fall within the statutory tolling provisions of § 2244(d)(1)(B) or

4    (C) as he does not: (a) show any impediment to filing an application by State action in

5    violation of the United States Constitution; or (b) rely on a constitutional right newly

6    recognized by the United States Supreme Court.  Instead, this Court must determine

7    whether §2244(d)(1)(A) or (D) applies and the date from which (under either section) the

8    one-year period began to run. To complicate the matter, Petitioner's counsel deceived him

9    by telling him an appeal was being pursued when in reality, it had been abandoned and

10   eventually dismissed.

11      **1.  Applying §2244(d)(1)(A)**

12      Under § 2244(d)(1)(A) the one-year limitation period begins to run on the date the

13   judgment becomes final either by the conclusion of direct review or the expiration of the

14   time for seeking such review.[2] Petitioner was sentenced on September 10, 1996. He timely

15   filed a notice of appeal on October 25, 1996.  Then his attorney failed to file an appeal

16   brief. Because no brief was filed, the appeal was dismissed on April 28, 1997. Thus, thirty

17   days later (i.e., May 28, 1997) becomes the first critical date for purposes of identifying the

18   start of the one-year time clock.  This is because under California law, a judgment becomes

19   "final" 30 days after the Court of Appeal orders an appeal dismissed.  Rule 24 of the

20   California Rules of Court states, "A decision of a Court of Appeal becomes final as to that

21   court 30 days after filing....An order dismissing an appeal involuntarily is a decision for

22   purposes of the preceding sentence."  Consequently, under 2244(d)(1)(A), the decision

23   became final on May 28, 1997 and the one-year limitation period expired on May 28, 1998.

24   Under this scenario, there would be no statutory tolling under 2244(d)(2) because there

25   was no pursuit of state collateral review during this period, and his federal petition would

26   be four years too late.

27

28

---

[2] A time line of significant events is attached for the reader's convenience.  See Appendix.

02cv2029