## 2. Applying § 2244(d)(1)(D)

There is, however, a second scenario which points to a later starting date. Under § 2244(d)(1)(D), the clock begins ticking on the day "the factual predicate of the claim...could have been discovered through the exercise of due diligence." Here, the claim centers on the loss of Petitioner's appeal rights by the failure of his counsel to do anything beyond filing a notice of appeal. The question thus becomes, "when could petitioner have discovered his appeal had been dismissed had he exercised due diligence?"

In this case, his retained counsel, Mr. Vladimir Verhovsky, Esq., was less than candid and misrepresented the status of the appeal on several occasions. For example, Petitioner's wife declared, "[f]rom late fall of 1996 through the summer of 1998, I continually asked Mr. Verhovsky how the robbery appeal was going." Declaration of Patricia Lynn Jacks-Tatarinov, Petition for Writ of Habeas Corpus, Exhibit "A," at 2. She continues, Verhovsky "gave responses such as, 'appeals take several months,' 'appeals can take years,' 'the appeals court must believe we have some merit to the case as they have not responded'...and 'the court is still looking into the matter.'" *Id.* Petitioner in his own declaration explains that after he was aware the appeal had been dismissed, "I asked [Verhovsky] several times to do something about it. Each time he said he would. Finally in September 1999 Mr. Verhovsky filed a motion to reinstate the appeal." Petition, Exhibit "B," at 1.

### a. Petitioner's Contention: January 2, 2001

Petitioner argues that the statute should run (under 2244(d)(1)(D)) from January 2, 2001. Petition, at 17-18. He argues that date because Verhovsky continued to represent him on various matters through December 24, 2000. On December 24th, he received a letter from Verhovsky ending, without explanation, his representation in all matters. *See* Petition, Exhibit "G." Approximately three weeks later, Petitioner received notice from the State Bar that Verhovsky had been suspended from the practice of law. Petitioner defends himself saying, "[p]rior to that time, petitioner was unduly influenced by Verhovsky's legal advice, which made it a practical impossibility for petitioner to discern Verhovsky's

4

02cv2029

EXCERPTS OF RECORD p. 62

1  incompetent representation." Petition, at 18. He explains further that, the "attorney-client

2  relationship was particularly strong because Verhovsky could communicate with petitioner

3  in Russian, petitioner's first language." *Id.*

### b. Respondent's Contention: Fall 1998

5       Not surprisingly, Respondent argues that under this second scenario the statute

6  should run from an earlier date: the fall of 1998. Memorandum in Support of Motion to

7  Dismiss, at 7-8. Respondent argues that "the factual predicate for Petitioner's claim was

8  *discoverable* with the exercise of due diligence well before either December 24, 2000 or

9  January 2, 2001....Petitioner had *actual knowledge* that Verhovskoy failed to file the

10  opening brief and the appeal had been dismissed, no later than Fall 1998." *Id.* (emphasis

11  in original). In support of this position, Respondent points to the declarations of Petitioner

12  and his wife. Specifically, Respondent notes that Petitioner's wife, on her own, called the

13  court during the summer of 1998 and found out "the appeal was not active." *Id.* at 8

14  (quoting Declaration of Patricia Jacks-Tatarinov, Petition, Exhibit "A"). Petitioner's wife

15  then called Verhovsky and Verhovsky "admitted he had not filed the appeal." Respondent

16  continues this line of argument by pointing to Petitioner's own declaration wherein he

17  relates, "[i]n 1998, Mr. Verhovskoy admitted that he had not filed the appeal." *Id.* at 8

18  (quoting Declaration of Dimitri Tatarinov, Petition, Exhibit "B"). Thus, building the

19  argument from Petitioner's own evidence, Respondent argues that Tatarinov was actually

20  aware that the appeal had been dismissed by the fall of 1998. Respondent contends that

21  it is the date of Petitioner's actual knowledge of the dismissed appeal that starts the clock

22  running (as opposed to Petitioner's knowledge of the legal significance of the dismissed

23  appeal.) *Id.* at 9. Respondent concludes that with the clock beginning to tick in the fall of

24  1998, the statute of limitations had certainly run by 2002, the year the federal Petition was

25  filed.

### c. The Due Diligence Date: The Summer of 1998

27       In sum, under 2244(d)(1)(D), Petitioner identifies January 2001 as the critical date,

28  while Respondent picks the fall of 1998 as the date the clock began ticking. Respondent's

1  argument is generous.    It is based upon Petitioner's *actual* knowledge.    Section

2  2244(d)(1)(D), however, starts the clock running on the day "the factual predicate of the

3  claim...*could have been discovered* through the exercise of due diligence." (Emphasis

4  added.) In other words, the day Petitioner could have discovered that the appeal had been

5  lost, had he exercised appropriate diligence.

6    If one in Petitioner's place was extremely diligent, one could call the court of appeals

7  every week checking on the status of the appeal. Such a person would have discovered the

8  truth in early May 1997. If one checked every quarter, one would have discovered the

9  dismissal no later than the fall of 1997. If one checked only once a year, a more reasonable

10  approach, the dismissal would still have been discovered in the fall of 1997. It took almost

11  two years before Petitioner's wife inquired of the court. Even if that were deemed to be

12  within the outer boundaries of "due diligence," the statute of limitations would have begun

13  to run in the summer of 1998. Certainly, the fact that Petitioner's wife actually called the

14  court, strongly suggests Petitioner could have exercised the same diligence.

15    This Court finds that had Petitioner exercised due diligence, notwithstanding his

16  attorney's misrepresentations, Petitioner could have discovered the fate of his appeal in the

17  summer of 1998. As a result, the statute of limitations expired one year later in the

18  summer of 1999 – approximately three years prior to the filing of the instant Petition.

19  Finally, there would be no entitlement to a statutory tolling of the clock because nothing

20  was done to reinstate the appeal or collaterally attack the conviction between the summer

21  of 1998 and the summer of 1999 when Petitioner's time ran out.

22      *d. An Aside: "Retriggering" the Statute*

23    As an aside, though neither party addresses it, one could argue that an ineffective

24  assistance of appellate counsel claim is *sui generis* for purposes of the statute of limitations.

25  This is because all other types of claims revolve around the time of trial. In contrast, an

26  appellate counselor's failure does not occur or become evident until long after the trial. In

27  the context of Petitioner's case, one might argue that Petitioner could not have known

28  whether his appellate attorney had injured his appeal until December 12, 2001. That is

6

1   because up until 2001, his appeal might have been reinstated by the various corrective

2   motions actually brought. When it was filed in September 1999, the motion to set aside

3   the dismissal *might* have been successful. Likewise, when the second motion to vacate the

4   dismissal was filed in August 2001, the court of appeal *might* have granted relief. Finally,

5   when the unsuccessful motion to reinstate the appeal was itself appealed to the California

6   Supreme Court, the Supreme Court *might* have granted relief and reinstated Petitioner's

7   appeal. That, outcome *would* have eviscerated the foundation of his ineffective assistance

8   claim. He would have finally been able to present his meritorious arguments on appeal.

9   Consequently, one might argue, it was not until December 12, 2001, when the California

10  Supreme Court denied the appeal of the appeals court decision to refuse to reinstate the

11  appeal, that the federal claim of ineffective assistance of appellate counsel became ripe.

12       The problem with this theory is that it lacks finality and encourages repetitive

13  frivolous motion practice as a means for extending the running of the statute of limitations.

14  Under this theory, one could wait years before filing a motion to reinstate an appeal, or file

15  successive motions in the vain hope that one sympathetic ear would reinstate the

16  previously lost appeal rights.  Under this theory, a federal habeas petition claiming

17  ineffective appellate assistance could always be made timely and the statute of limitations

18  would be reduced to a curiosity.

19       Two other courts have rejected similar arguments. In those cases, petitioners had

20  failed to take direct appeals from their convictions.  While they did not argue ineffective

21  assistance of appellate counsel, they did eventually file motions seeking permission for a

22  late or delayed appeal. Once in federal court, the petitioners argued that the habeas statute

23  of limitations should not run until after their motions to pursue late appeals were denied.

24  The courts decided that AEDPA's one-year limitations clock could not be "retriggered" in

25  this fashion and that to allow a retriggering by this route would emasculate the statute.

26  *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001); *Raynor v. Dufrain*, 28 F.Supp. 2d 896 (S.D.

27  N.Y. 1998). The reasoning of the *Raynor* decision is compelling:

28       This is a position that we cannot endorse, because it would effectively
         eviscerate the AEDPA's statute of limitations. Leave to file a late notice of

7

02cv2029

1   appeal can be sought at any time, even many years after conviction. If the
2   one-year period of limitations did not begin to run until such an application
    for leave to appeal was denied, the one-year statute of limitations would be
3   meaningless; merely by delaying his application for leave to file a late notice
    of appeal, a petitioner could indefinitely extend the time for seeking habeas
4   relief. The statute of limitations provision of the AEDPA would thus be
    effectively eliminated, a clearly unacceptable result.

5   28 F.Supp.2d at 898 (*quoted in Searcy*, 246 F.3d at 519). For similar reasons, this Court

6   finds that once an order dismissing an appeal becomes "final," AEDPA's statute of

7   limitations clock is triggered. The clock cannot be "retriggered" by thereafter filing a later

8   motion to vacate the dismissal or reinstate the appeal.

9   In the case at bar, the order dismissing Tatarinov's appeal became final under

10  California law in 1997. The clock was not retriggered by the motions to reinstate his

11  appeal filed later in 1999 and 2001. The statute of limitations ran out at the latest in 1999

12  under any viable theory, and the instant Petition is too late – unless Petitioner is entitled

13  to the benefit of tolling.

14  **B. AEDPA's STATUTORY TOLLING PROVISION**

15  In order for AEDPA's statutory tolling provision to apply there must be a "properly

16  filed application for post-conviction or other collateral review...pending" in state court. 28

17  U.S.C.A. § 2244(d) (2). Petitioner did not have any collateral review "pending" until he

18  filed his state petition for habeas relief in February 2002. By that time the statute of

19  limitations clock had run down.

20  *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied*, 529 U.S. 1104

21  (2000), held that the AEDPA statute of limitations is tolled for "all of the time during which

22  a state prisoner is attempting, through proper use of state court procedures, to exhaust state

23  court remedies with regard to a particular post-conviction application." This holding

24  contemplates that the state inmate first files a petition in the state's superior court, then

25  proceeds to the California Court of Appeal, and concludes state review in the California

26  Supreme Court. *Lewis v. Mitchell*, 173 F. Supp.2d 1057 (C.D. Cal. 2001) ( *citing Nino* at

27

28

8

1  1006 n.2 & n.3).[3]  Applying *Nino* to Petitioner's case, the tolling provisions of the AEDPA

2  do not save his Petition from being dismissed.

3  Here, Petitioner had no state habeas petition "pending" within the statutory period.

4  *Nino*, 183 F.3d at 1005 (statutory tolling is available for periods when the petitions

5  comprise "one complete round of the State's established appellate review process.").

6  Statutory tolling does not apply to periods between petitions that do not form part of a

7  progressive series from the superior court, to the court of appeal, to the California Supreme

8  Court. *Id.* Thus, the statute of limitations ran long before 2002 when Petitioner filed his

9  first petition for habeas relief in the California Court of Appeal. Because there was no state

10  habeas petition "pending" within the statutory period of 28 U.S.C. §2244(d)(2), the

11  AEDPA's statutory tolling provisions do not apply and the Petition remains untimely.

12  **C.  AEDPA's EQUITABLE TOLLING PROVISION**

13  Having determined that statutory tolling does not apply, this Court must next

14  determine whether equitable tolling will excuse the delay.

15  **1. Applicable Law**

16  AEDPA's one-year statute of limitations is subject to equitable tolling. *Calderon v.*

17  *United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on*

18  *other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1997)

19  (en banc), *cert. denied*, 526 U.S. 1060 (1999). *Beeler* held that the time bar of 28 U.S.C. §

20  2244 (d)(1) can be tolled if "extraordinary circumstances beyond a prisoner's control make

21  it impossible to file a petition on time." 128 F.3d at 1288-89 (citing *Alvarez-Machain v.*

22  *United States*, 107 F.3d 696, 701 (9th Cir. 1997)). However, *Beeler* admonishes judges to

23  "take seriously Congress' desire to accelerate the federal habeas process" and "only

24  authorize extensions when the high hurdle is surmounted." *Id.* at 1289.

25  In *Allen v. Lewis*, 255 F.3d 798, 799 (9th Cir. 2001), the Ninth Circuit established the

26

27  [3] In California, the supreme court, intermediate courts of appeal, and superior courts all have original habeas corpus jurisdiction. *See* Cal. Const. art. VI, §10. The state prisoner may first present

28  his habeas petition to the superior court. *See* Cal. R. Ct. 260. Although a superior court order denying habeas corpus relief is non-appealable, *see People v. Griggs*, 67 Cal. 2d 314 (1967), a state prisoner may file a new habeas corpus petition in the court of appeals, *see In re Reed*, 33 Cal. 3d 914 (1983).

9

02cv2029

1  showing a prisoner must make in order to demonstrate that "extraordinary circumstances"

2  made it "impossible to file a petition on time." *Allen* held that the prisoner, at the very

3  least, must show that the "extraordinary circumstances" were the proximate cause of his

4  untimeliness. *Id.*

5           ### a. Petitioner's Argument

6           Petitioner argues the statute of limitations should be equitably tolled because of

7  Verhovsky's misrepresentations and that because of Verhovsky's ability to communicate

8  to Petitioner in Petitioner's native Russian language, Petitioner trusted and believed his

9  attorney was effectively representing him.    This unique attorney-client relationship

10 coupled with the attorney's prevarications presents the rare case for equitable tolling,

11 according to Petitioner.    Specifically, he asserts,

12         After petitioner learned that the appeal had been dismissed, Verhovsky
           continued to practice deception by misleading petitioner concerning
13         procedures available to reinstate the appeal. Verhovskoy engaged in this
           ongoing pattern of lies, deception and misinformation to hide from petitioner
14         the fact that Verhovsky had acted incompetently, first by causing the direct
           appeal to be dismissed, and then by failing to get it reinstated.
15

16 Opposition to Motion to Dismiss, at 3.  Continuing on, petitioner contends,

17         ...petitioner placed more than the usual amount of reliance on Verhovskoy
           as his attorney, and Verhovskoy repeatedly violated that trust by practicing
           deception to hide his own incompetence. This case presents the type of "rare
18         and exceptional circumstances" that justify the use of equitable tolling.

19 *Id.* (citations omitted).  Petitioner explains that even after he learned from his attorney that

20 the appeal had been dismissed, Verhovsky told him that he was working on a solution, but

21 "that it takes time to reinstate the appeal."  *Id.* at 5.  Petitioner explains, "[e]ventually

22 Verhovsky filed a motion to reinstate the appeal, which the court eventually denied.

23 Thereafter, Attorney Verhovsky continued to lie, telling petitioner and his wife that

24 nothing further could be done to revive the appeal." *Id.*  "Eventually," writes petitioner,

25 he "became hopelessly lost in the web of deceit that his lawyer spun." *Id.* at 6.

26         ### b. Respondent's Argument

27         Respondent argues that a petitioner must establish that the extraordinary

28 circumstances actually caused the delay and  that "even giving Petitioner's Russian

                                    10                              02cv2029

1  background and English language skills appropriate consideration, his inability to file a

2  timely petition must be attributable to his personal failure to exercise due diligence, not

3  some external force." Memorandum of Points and Authorities at 11. Respondent continues

4  his argument pointing to Petitioner's awareness by the fall of 1998 that Verhovsky had let

5  the appeal flounder and that he had been lying about its progress. *Id.* at 12.  Respondent

6  also points out that: (1) Verhovsky made no representations or misrepresentations

7  regarding the filing of a federal habeas petition; (2) Petitioner was not confined to prison

8  and could have retained other counsel; and (3) Petitioner could have learned about and

9  filed a federal habeas petition on his own. *Id.* at 12-13.

10      **2. Extraordinary Circumstances Were Not the Cause of Petitioner's Untimeliness**

11      As explained above, Petitioner had one year from either May 28, 1997 (under §

12  2244(d)(1)(A)), or summer 1998 (under § 2244(D)(1)(D)) to file his federal habeas petition.

13  He missed both deadlines. He suggests that the continuing lies and deceit of Verhovsky

14  together with the unique Russian connection comprise the "rare and exceptional

15  circumstances" entitling him to equitable tolling. However, the Ninth Circuit has

16  explained, "[i]f the person seeking equitable tolling has not exercised reasonable diligence

17  in attempting to file, after the extraordinary circumstances began, the link of causation

18  between the extraordinary circumstances and the failure to file is broken." *Allen*, 255 F.3d

19  at 800-01.

20          *a.  The 1st Wake-up Call*

21      In this case, despite the "web of deceit his lawyer had spun," Petitioner did finally

22  discover that Verhovsky had been lying to him and that the direct appeal had been

23  dismissed. This was sometime in the fall of 1998. It was at this time that Petitioner should

24  have done something to prepare to seek collateral relief. If Petitioner had (as he asserts)

25  become "hopelessly lost in the web of deceit" spun by his lawyer, the fall of 1998 should

26  have been a wake-up call. He should have taken steps to protect his habeas rights on his

27  own. He did not. Instead, he decided that he would proceed with Verhovsky's plan to file

28  a motion to reinstate the appeal. Meanwhile, time passed.

11

02cv2029

### b. The 2nd Wake-up Call

Approximately one year passed before Verhovsky filed the discussed motion to reinstate the appeal on September 10, 1999. The California Court of Appeal rejected the request two weeks later on September 24, 1999. This was another wake-up call. Again, Petitioner should have taken steps to protect his habeas rights. The appeal was over. He understood this much. In his declaration he states, "[f]inally in September 1999 Mr. Verhovsky filed a motion to reinstate the appeal....Later he told me the motion was denied....I believed the appeal was over and nothing more could be done about it." Petition, Exhibit "B," at 2.

### c. The 3rd Wake-up Call

Another 15 months passed before Petitioner received his third wake-up call, i.e., the letter from Verhovsky terminating his representation in all matters and the letter from the State Bar advising that Verhovsky had been suspended from practice. Even then, petitioner waited another six months before he hired new counsel in the summer of 2001. His new counsel has diligently pursued collateral relief and federal habeas relief, but the effort comes too late.

### d. Petitioner's Own Obligation to Exercise Reasonable Diligence

The Supreme Court has emphasized that "the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation" because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991), *r'hng denied*, 501 U.S. 1277 (1991). In order to minimize that risk, habeas petitioners must exercise reasonable diligence in overseeing the actions of their attorneys. *See Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001), *cert. denied*, 535 U.S. 937 (2001) ("clients, whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands"); *see also Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000) (AEDPA statute of limitations not equitably tolled by lawyer's mistake resulting in missed deadline, because such mistake is not an extraordinary circumstance); *Taliani v. Chrans*,

12

02cv2029

1  189 F.3d 597, 598 (7th Cir. 1999) (concluding that, to the extent equitable tolling is available

2  for AEDPA, no tolling occurred because of a lawyer's mistake resulting in a missed

3  deadline).

4     Petitioner has not identified any circumstances beyond his control that made it

5  impossible for him to file a timely federal habeas petition. His decision to wait 12 months

6  and follow Verhovsky's suggestion and pursue reinstating his direct appeal before filing

7  a federal habeas petition within AEDPA's one-year window was not a circumstance beyond

8  his control. Likewise, his decision to do nothing for another 15 months after the motion

9  to reinstate the appeal failed was not a circumstance beyond his control. Moreover, his

10  decision to delay another six months after learning that Verhovsky would no longer be

11  representing him was another circumstance not beyond his control. These decisions were

12  entirely Petitioner's. With 20/20 hindsight, Petitioner may have exercised poor judgment,

13  but the repeated making of unwise choices does not rise to the level of "extraordinary

14  circumstances" such that AEDPA's statute of limitations should be tolled. *Cf. Frye v.*

15  *Hickman*, 273 F.3d 1144 (9th Cir. 2001), *cert. denied*, 535 U.S. 1055 (2002) (holding that the

16  miscalculation of the AEDPA limitations period by counsel and counsel's negligence in

17  general *did not* constitute extraordinary circumstances sufficient to warrant equitable

18  tolling); *accord Smaldone v. Senkowski*, No. 00-2519, 2001 WL 1453925, at 4 (2nd Cir. Nov.

19  16, 2001); *Fahy v. Horn*, 240 F.3d 239, 244 (3rd Cir. 2001), *cert. denied*, 534 U.S. 944 (2001);

20  *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000); *Kreutzer v. Bowersox*, 231 F.3d

21  460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 863 (2001); *Ellis v. Martin*, No. 98-6450, 1999

22  WL 1101241, at 2 (10th Cir. Dec. 6, 1999) (unpublished opinion); *Sandvik v. United States*,

23  177 F.3d 1269, 1272 (11th Cir. 1999), *r'hng denied*, 207 F.3d 666 (11th Cir. 2001).

24     Further, although Petitioner does not allege it, even if Petitioner had difficulty in

25  understanding the procedures for filing his petitions for collateral relief or understanding

26  his rights because he is not a lawyer and the legal issues are complex, the circumstances

27  would not compel equitable tolling. *See Hebner v. MaGrath*, 2001 WL 764474 (N.D. Cal

28  2001) (holding that being a layman in the law and that the issues are complex are not

13

02cv2029

1  sufficient basis for equitable tolling); *Ross v. R. Q. Hickman*, 2001 WL 940911 (N.D. Cal.

2  2001) (same). Certainly, Petitioner's difficulty with English does not warrant equitable

3  tolling. *Nguyen v. Mervau*, 1998 U.S. Dist. LEXIS 13547 (N.D. Cal. 1998) (lack of fluency

4  in English is not an extraordinary circumstance); *Cf. Hughes v. Idaho State Bd. of*

5  *Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of pro se petitioner not sufficient

6  cause to avoid procedural bar).

7           *e. Policy Considerations*

8        Finally, the instant case raises policy considerations, which counsel against a

9  finding of equitable tolling. Petitioner's claim under §2254 is subject to a congressionally

10  imposed limitations period as prescribed by the AEDPA. As the United States Supreme

11  Court stated in *Mohasco Corp v. Silver*, 447 U.S. 807, 826 (1980), "in the long run,

12  experience teaches that strict adherence to the procedural requirements specified by the

13  legislature is the best guarantee of evenhanded administration of the law." To allow

14  Petitioner's reliance on an attorney who had dropped his appeal and lied to cover it and

15  Petitioner's own inaction for another two and one-half years after discovering his attorney's

16  duplicity to constitute grounds for equitable tolling, would essentially allow Plaintiff more

17  than thrice the amount of time specified by Congress for the filing of a writ of habeas

18  corpus under the AEDPA. Given the strict procedural requirement imposed by the

19  legislature and the general deference of the Supreme Court, this Court declines to

20  recommend a result that would distort the limitations period. *See e.g. Baldwin County*

21  *Welcome Center v. Brown*, 466 U.S. 147, 152 (1984), *r'hng denied*, 437 U.S. 1261 (1984)

22  ("Procedural requirements established by Congress for gaining access to the federal courts

23  are not to be disregarded by courts out of a vague sympathy for particular litigants.").

24                 **III. CONCLUSION**

25        This Court finds that exceptional circumstances did not exist to warrant the

26  equitable tolling of the AEDPA one-year statute of limitations. The Petition for Writ of

27  Habeas Corpus filed on October 11, 2002 is time barred.

28        For the reasons set forth above, this Court recommends that Respondent's Motion

14

02cv2029

1 to Dismiss the Petition for Writ of Habeas Corpus be **GRANTED**. This Report and

2 Recommendation is submitted to the United States District Judge assigned to this case,

3 pursuant to the provisions of 28 U.S.C. § 636 (b)(1).

4      **IT IS ORDERED** that no later than <u>**April 30, 2003**</u>, any party to this action may file

5 written objections with the Court and serve a copy on all parties. The document should

6 be captioned "Objections to Report and Recommendation."

7      **IT IS FURTHER ORDERED** that any reply to the objections should be filed with the

8 Court and served on all parties no later than <u>**May 14, 2003.**</u> The parties are advised that

9 failure to file objections within the specified time may waive the right to raise those

10 objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.

11 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

12 Dated: _____

13

14                            ROGER T. BENITEZ
                           United States Magistrate Judge

15

16 cc: U.S. District Judge Thomas J. Whelan

17

18

19

20

21

22

23

24

25

26

27

28

02cv2029

# APPENDIX

02cv2029

Pet'r Jury Trial August 1996

Appeal Dismissed For Failure to File Brief 4/28/97

Pet'r's Wife Discovers Appeal is Dismissed Summer 1998

Pet'r Discovers Appeal is Dismissed Fall 1998

Motion to Reinstate Appeal 9/10/99

Motion is Denied 9/24/99

Letter from Attorney Withdraw'g From Pet'r Cases 12/24/00

Letter from State Bar Re: Suspension of Atty 1/19/01

New Atty Files Second Motion to Reinstate Appeal 8/30/01

Motion is Denied; Appeal to Cal. Sup.Ct. Denied Fall 2001

Pet'r Exhausts State Remedies With State Habeas Petition Spring &/Summer 2002

Federal Petition for Writ of Habeas Corpus Filed 10/11/02

EXCERPTS OF RECORD p. 74

DISTRICT COURT DOCUMENT 13

<u>Order of United States District Judge Thomas J. Whelan</u>
<u>Adopting Report and Recommendation</u>

11 pages

FILED

03 JUN 16 AM 7:26

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRI VALERYEVICH TATARINOV, | CASE NO. 02-CV-2029 W (BEN) |
| Petitioner, | ORDER ADOPTING REPORT AND RECOMMENDATION |
| v. | |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, | |
| Respondent. | |

On October 11, 2002 Petitioner Dimitri Valeryevich Tatarinov ("Petitioner"), proceeding through counsel, challenged his second degree robbery conviction by commencing these habeas proceedings under 28 U.S.C. § 2254. Respondent Superior Court of the State of California, County of San Diego ("Respondent") moves to dismiss on the ground that the habeas petition is time-barred. The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1(d.1). For the reasons outlined below, the Court **DISMISSES** this habeas petition.

*13*

- 1 -

02cv2029w

## I. BACKGROUND

A Nordstrom department store manager observed Petitioner allegedly secreting a merchandise jacket under his arm. The manager alerted store security officials who confronted Petitioner in the nearby parking lot. Security official Meza, pointing to a jacket rolled up beneath Petitioner's arm, asked Petitioner to accompany her back to the store. Petitioner refused and pushed Meza onto the trunk of a nearby car. Additional security officials were unable to restrain Petitioner, but an unidentified civilian came to the scene and threw Petitioner to the ground while security officials handcuffed Petitioner. Petitioner and security officials then returned to the store where police officers arrested Petitioner.

Petitioner was charged in California Superior Court with one count of second degree robbery in violation of Cal. Penal Code § 211, and one count of interfering with a police officer in the performance of his duties in violation of Cal. Penal Code § 148. Petitioner was tried and convicted for second degree robbery, acquitted of interference with a police officer, and sentenced to probation. Petitioner seeks habeas relief on the ground that he was denied effective assistance of counsel as required by the Sixth and Fourteenth Amendments. Petitioner bases his habeas petition on two grounds: (1) on appeal his trial attorney Verhovskoy ("Attorney Verhovskoy") could have successfully argued that the trial court committed error by not instructing the jury that reasonable force used to resist an overly forceful citizen's arrest does not constitute robbery; and (2) on appeal Attorney Verhovskoy could have successfully argued that the trial court committed error by not instructing the jury that theft is a lesser offense included within the offense of robbery.

Petitioner also alleges that Attorney Verhovskoy committed numerous professional failures on appeal. In April 1997 the California Court of Appeal dismissed Petitioner's appeal when Attorney Verhovskoy failed to file a written brief. When Petitioner and his wife asked about the appeal's status, Attorney Verhovskoy apparently misled them, saying "appeals can take years," "the appeals court must believe we have

1  some merit to the case as they have not responded," "I will call and check on the

2  status," and "the court is still looking at the matter." Petitioner's wife learned through

3  her own efforts that the appeal had been dismissed. Attorney Verhovskoy thereafter

4  filed an unsuccessful motion to reinstate the appeal. By then, more than two years had

5  passed since the appeal's dismissal.

6  In December 2000 Attorney Verhovskoy sent Petitioner a letter terminating his

7  representation. The California State Bar subsequently suspended Attorney Verhovskoy

8  and commenced disciplinary proceedings against him based upon his representation of

9  Petitioner. Petitioner's present counsel has since August 2001 unsuccessfully attacked

10  Petitioner's conviction in state court. Having exhausted his state court remedies,

11  Petitioner now seeks habeas relief in this Court.

12  On April 2, 2003 United States Magistrate Judge Roger Benitez issued a Report

13  and Recommendation ("Report") recommending that this Court grant Respondent's

14  motion to dismiss the habeas petition as time-barred. On April 29, 2003 Petitioner filed

15  timely objections ("Objections") to the Report.

16  II.    LEGAL STANDARD

17  A district court's duties concerning a magistrate judge's report and

18  recommendation for a habeas corpus petition and objections thereto are set forth in 28

19  U.S.C. § 636(b)(1). The district court must make a *de novo* review of those portions of

20  the report to which objection is made and then may accept, reject or modify the

21  magistrate judge's findings and recommendations. See id.; see also United States v.

22  Raddatz, 447 U.S. 667, 676 (1980); United States v. Remsing, 874 F.2d 614, 617 (9th

23  Cir. 1989).

24  III.    ANALYSIS

25  A.    JURISDICTION

26  Before reaching the time-bar issue, the Court must first determine whether it has

27  subject matter jurisdiction over Petitioner's habeas request. Because Petitioner has

28  never been incarcerated for his conviction and is no longer under probation, habeas

- 3 -

02cv2029w

1  jurisdiction initially seems lacking.  A federal court does not have subject matter

2  jurisdiction over a habeas petition unless the petitioner is "in custody" within the

3  meaning of 28 U.S.C. § 2254(a).  See Maleng v. Cook, 490 U.S. 488, 494 (1989) (per

4  curiam).  The custody requirement for habeas corpus has been broadly construed, such

5  that physical restraints beyond imprisonment that are not shared by the general public

6  can qualify as custodial.  Jones v. Cunningham, 371 U.S. 236, 243 (1963).  Included

7  among these non-physical restraints is probation.  Cervantes v. Walker, 589 F.2d 424,

8  425 n.1 (9th Cir. 1978) (citing Benson v. California, 328 F.2d 159, 162 (9th Cir. 1964))

9  (holding that California probation is tantamount to custody for the purposes of federal

10  habeas corpus jurisdiction).  In this case, Petitioner was under summary parole when

11  he commenced his habeas petition. Accordingly, Petitioner was in custody for 28 U.S.C.

12  § 2254(a) purposes.  Habeas jurisdiction is therefore proper.

13      **B.**    <u>MOOTNESS</u>

14      Because Petitioner's probation ended sometime after he filed his habeas petition,

15  the Court must next determine whether the habeas petition is moot.  "To satisfy the

16  Article III case or controversy requirement, a litigant must have suffered some actual

17  injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc.

18  v. Heckler, 464 U.S. 67, 70 (1983); see also Powell v. McCormack, 395 U.S. 486, 497

19  (1944) ("[A] case is moot when the issues presented are no longer 'live' or the parties

20  lack a legally cognizable interest in the outcome.").  But a habeas petition does not fail

21  for mootness when the petitioner's sentence ends during the course of proceedings, so

22  long as serious collateral consequences stem from the conviction. Carafas v. LaVallee,

23  391 U.S. 234, 238 (1968).  Such consequences include "the inability to vote, engage in

24  certain businesses, hold public office, or serve as a juror." (Id. at 237-38).  A conviction

25  usable in a "persistent felony offender" prosecution is a collateral consequence that

26  defeats any mootness objections when a habeas petitioner is no longer in custody.

27  Evitts v. Lucey, 469 U.S. 387, 391 n.4 (1985).  Here, Petitioner overcomes mootness

28  because, under California's "Three Strikes" law, Petitioner's robbery conviction can be

- 4 -

02cv2029w

1  used to increase the punishment for subsequent felonies.  Therefore, as jurisdiction is

2  present and mootness absent, this Court may address the substance of the Report.

3      **C.**     AEDPA STATUTE OF LIMITATIONS

4      The Court must next determine whether Petitioner's claims are time-barred.

5  Petitioner argues that the earliest date from which the limitations period should be

6  measured is December 24, 2000.  Respondent counters that the latest possible start date

7  for the limitations period under any AEDPA provision is mid-1998.  (Def.'s Mem. of

8  P&A at 5).  Thus Respondent argues that Petitioner's limitations period expired well

9  before the instant petition was filed.

10      . The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No.

11  104-132, 100 Stat. 1214, applies to all federal habeas petitions filed after April 24, 1996.

12  AEDPA mandates that all state prisoners who wish to file federal habeas petitions in

13  federal court do so within one year from the date on which their state court judgment

14  becomes final.  See 28 U.S.C. § 2244(d)(1)(A).[1]

15      Here, Petitioner's appeal was dismissed on April 28, 1997.  California law makes

16  a dismissal final after thirty days.  Under Section 2244(d)(1)(A), the one-year

17  limitations period began on May 28, 1997 and ended on May 28, 1998, well before the

18  present habeas petition was filed.  Moreover, Petitioner cannot use the AEDPA

19  statutory tolling provision because no state collateral review was pending during the

20  limitations period.  Therefore, unless Petitioner can establish a later starting date for

21  AEDPA's one-year limitations period, Petitioner's habeas petition is time-barred.[2]

22   

---

23      [1]    Petitioner makes no showing that he was unconstitutionally impeded from filing

24  a habeas petition, or that his claim is based on a constitutional right newly recognized by the
U.S. Supreme Court.  See 28 U.S.C. § 2244(d)(1)(B)-©).

25      [2]    The Report raises *sua sponte* and rejects what it terms the "retrigger theory,"

26  whereby the limitation period established by 28 U.S.C. § 2244(d)(1)(A) begins anew whenever

27  a motion attacking a final judgment is made.  (Report at 6-8).  Petitioner adopts this theory
in his Objections and argues that the "unique circumstances of petitioner's case, including but

28  not limited to the intentional misconduct of Attorney Verhovskoy, make it appropriate to use
the 'retrigger' theory."  (Objections at 7).  Bearing in mind judicial efficiency and the

EXCERPTS OF RECORD p. 80

1    Petitioner seeks support for his proposed December 24, 2000 limitations period

2  start date by relying on Section 2244(d)(1)(D), which allows the limitations period to

3  begin on "the date on which the factual predicate of the claim or claims presented could

4  have been discovered through the exercise of due diligence." Petitioner argues that the

5  factual predicate for his ineffective assistance of counsel claim "continued throughout

6  the period of time that Verhovskoy represented petitioner on various matters."

7  (Objections at 2). If this is the proper characterization of the issue, then the Report's

8  conclusion that Section 2244(d)(1)(D) authorizes a limitation period start date of mid-

9  1998 is erroneous.

10    The Report concludes that the factual predicate question is answered by

11  determining the date when Petitioner, by exercising due diligence, could have

12  discovered that his appeal had been dismissed. Petitioner counters that he could not

13  have been expected to do anything prior to Attorney Verhovskoy's terminating his

14  representation. Respondent answers that the only factual predicate at issue is Attorney

15  Verhovskoy's failure to file a written brief with the California Court of Appeal.

16  Moreover, asserts Respondent, had Petitioner exercised due diligence, he would have

17  discovered his appeal's dismissal by mid to late 1998 and taken appropriate remedial

18  measures. (Def.'s Mem. of P&A at 6-7). Respondent notes that Petitioner's wife had

19  *actual* knowledge of the appeal's dismissal by mid-1998. (Id. at 8). Respondent

20  therefore argues that the limitations period based on Section 2244(d)(1)(D) ended no

21  later than Fall 1999, well before the instant petition was filed.

22    There are two elements to an ineffective assistance of counsel claim:  (1)

23  counsel's performance must have been unreasonable under prevailing professional

24  standards; and (2) there must be a reasonable probability that, but for counsel's

25  unreasonable performance, the result would have been different.  Strickland v.

26  Washington, 466 U.S. 668, 687-91 (1984). The Ninth Circuit has recently held that,

27

28  Congressional purpose behind statutory limitations periods, this Court agrees with the Report's
   conclusion and rejects the "retrigger theory."

1  under <u>Strickland</u>, the factual predicate for a habeas petition based on ineffective

2  assistance of counsel requires that the "petitioner must have discovered (or with the

3  exercise of due diligence could have discovered) facts suggesting both unreasonable

4  performance *and* resulting prejudice." <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1154 (9th Cir.

5  2001).

6       Applying the <u>Hasan</u> test to the facts here, it is clear that Petitioner's factual

7  predicate theory is erroneous. There is nothing about Petitioner's receiving Attorney

8  Verhovskoy's representation termination letter that necessarily links it to Attorney

9  Verhovskoy's unreasonable performance or any resulting prejudice. Quite the

10  contrary, most of Petitioner's attorney's unreasonable performance and the resulting

11  prejudice to Petitioner's case occurred well before December 24, 2000 (when Petitioner

12  received the letter). As the Report indicates, Petitioner had actual knowledge of his

13  attorney's failure to file an appellate brief and the appeal's consequent dismissal by Fall

14  1998. At that time, Petitioner may have had a colorable ineffective assistance of

15  counsel claim. Although Petitioner's attorney later compounded his deficient

16  performance, it does not alter the undisputed fact that Petitioner had actual knowledge

17  that his appeal had been dismissed by Fall 1998.

18       In sum, the Report correctly treated Petitioner's appellate dismissal as the date

19  from which the limitations period would commence under Section 2244(d)(1)(D).

20  The Report also correctly found that Petitioner could have learned through the exercise

21  of due diligence that his appeal had been dismissed by mid to late 1998. (<u>Id.</u>).

22  Therefore, the limitations period expired in 1999, thus time-barring Petitioner's current

23  habeas petition.[3]

24

25       [3]    The Report and Recommendation briefly addresses Petitioner's claim for
26  statutory tolling under 28 U.S.C. § 2244(d)(2). Petitioner's argument here is meaningful only
27  if one assumes that the limitations period began in December 2000. <u>See</u> Objections at 3. But
    as has already been discussed in Part III.C, the Section 2244(d)(1)(D) limitations period began
28  in 1998 and expired in 1999, well before Petitioner's alleged August 2001 collateral review
    request. (<u>Id.</u>) The issue is therefore moot.

1    D.    EQUITABLE TOLLING

2    Finally, Petitioner seeks to avoid AEDPA's one-year statute of limitations

3  through equitable tolling. Petitioner asserts that any time in excess of the AEDPA

4  limitations period should be equitably tolled because of Attorney Verhovskoy's

5  "intentional misconduct." Respondent counters that Petitioner's case is not sufficiently

6  extraordinary to merit equitable tolling. This Court agrees.

7    AEDPA's limitations period is subject to equitable tolling, which is available to

8  petitioners who can demonstrate that "extraordinary circumstances" prevented their

9  filing a timely petition. Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283,

10  1288-89 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United

11  States Dist. Court (Kelly), 163 F.3d 530 (9th Cir. 1997) (en banc), abrogated on other

12  grounds by Woodford v. Garceau, —U.S.—, 123 S. Ct. 1398 (2003). The Ninth

13  Circuit has held that habeas petitioners must show that the proffered extraordinary

14  circumstances were the but–for and proximate cause of the delay in filing and

15  subsequent AEDPA time-bar. Allen v. Lewis, 255 F.3d 798, 799 (9th Cir. 2001) (per

16  curiam), overruled on other grounds by 295 F.3d 1046 (9th Cir. 2002) (en banc).

17    A near sine qua non for a finding of extraordinary circumstances is the petitioner's

18  absence of fault. For example, where a petitioner asked prison officials to draw a check

19  upon petitioner's trust account to pay for the processing of his habeas request, and the

20  prison officials failed to do so, such conduct was held to be an extraordinary

21  circumstance warranting tolling. Miles v. Pruntz, 187 F.3d 1104, 1107 (9th Cir. 1999).

22  In another case, where lead counsel for a capital defendant moved to another state to

23  take up a new job, extraordinary circumstances were found. Beeler, 128 F.3d at 1289.

24  Where petitioner for habeas was mentally incompetent, such impaired mental capacity

25  was deemed an extraordinary circumstance supporting an equitable tolling. Kelly, 163

26  F.3d at 541. Finally, where a pro se petitioner's habeas request was improperly rejected

27  for clerical irregularities and the main body of petitioner's request was lost by the district

28

- 8 -                                                02cv2029w

1    court clerk, extraordinary circumstances were deemed to arise.[4] <u>Corjasso v. Ayers</u>, 278

2    F.3d 874, 878 (9th Cir. 2002).

3            This Court finds that Petitioner's case does not amount to the requisite

4    "extraordinary circumstances" deserving equitable tolling.  This Court acknowledges

5    that the evidence used to support or refute a finding of reasonable diligence is often the

6    same as that proffered for extraordinary circumstances. In this regard, the Report's three

7    "wake-up" calls—events in the case history indicating Petitioner's sitting on his habeas

8    rights—are highly relevant.    In Fall 1998 Petitioner learned his appeal had been

9    dismissed, but did nothing to protect his habeas rights. In Fall 1999 Petitioner's motion

10   to reinstate his appeal was rejected by the state appellate court, but Petitioner did

11   nothing to protect his habeas rights.  On December 24, 2000 Petitioner learned his

12   attorney had ended his representation, but Petitioner did nothing to protect his habeas

13   rights for another six months.  (Report at 11-12).

14           In response to this damaging factual history, Petitioner claims that his inadequate

15   command of the English language makes navigation through the U.S. court system very

16   difficult.  He contends that his former attorney was fluent in his native language, thus

17   giving Petitioner cause to place great trust in his attorney.  Finally, Petitioner claims that

18   his attorney affirmatively misled Petitioner to keep him as a paying client.  (Objections

19   at 4).  For all these reasons Petitioner believes his case to be distinguishable from the

20   aforementioned decisional authority.

21           Petitioner's efforts are unavailing.  A helpful comparison may be made between

22   this case and <u>Montenegro v. United States</u>, 248 F.3d 585 (7th Cir. 2001), <u>overruled on

23   other grounds by Ashley v. United States</u>, 266 F.3d 671 (7th Cir. 2001). There, the

24   petitioner never received a response from his counsel for his transcript request;

25   petitioner could not understand the docket sheet sent by counsel because of a language

26

27           [4]     But mere counsel negligence does not rise to the level of extraordinary
     circumstances necessary for equitable tolling under AEDPA.  <u>Frye v. Hickman</u>, 273 F.3d 1144

28   (9th Cir. 2001).  See Report at 13-14 for cases holding that petitioner's ignorance of the law,
     illiteracy, or lack of fluency in English does not amount to extraordinary circumstances.

                                        - 9 -                              02cv2029w

1  barrier; petitioner was never consulted as to the possibility of making an appeal;

2  petitioner had little knowledge of English or of the American legal system; and petitioner

3  was transferred between prisons when the limitation period expired.  (Id. at 594).

4  Nevertheless, the Seventh Circuit found no extraordinary circumstances because

5  petitioner's situation was not so "far beyond" his control as to preclude timely filing.  Id.

6  (citing United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)).  If the situation

7  of an incarcerated petitioner like Montenegro did not merit an application of equitable

8  tolling, a fortiori Petitioner Tatarinov, who has never been incarcerated, and thus not

9  subject to the great practical inconveniences suffered thereby, does not qualify for

10 exemption from AEDPA's express requirements.

11        Petitioner counters that his case is distinguishable from the cases cited in the

12 Report (and presumably those cited above) because Petitioner, owing to his attorney's

13 active misrepresentations, could not "detect and oversee" his counsel's machinations.

14 Moreover, Petitioner asserts that his case "is truly unique and presents facts that require

15 an application of equitable tolling."

16        The Report's response to Petitioner's arguments is compelling and decisive:

17

18        "To allow Petitioner's reliance on an attorney who had dropped his appeal
          and lied to cover it and Petitioner's own inaction for another two and one-
19        half years after discovering his attorney's duplicity to constitute grounds for
          equitable tolling, would essentially allow Plaintiff more than thrice the
20        amount of time specified by Congress for the filing of a writ of habeas
          corpus under the AEDPA."
21

22 (Report at 14).  This Court agrees that such a result would frustrate the Congressional

23 purpose behind the AEDPA statutory limitations period.  See, e.g., Mohasco Corp. v.

24 Silver, 447 U.S. 807, 826 (1980) ("[I]n the long run, experience teaches that strict

25 adherence to the procedural requirements specified by the legislature is the best

26 guarantee of evenhanded administration of the law").  Habeas relief will not issue.

27 //

28 //

- 10 -

02cv2029w

IV.    CONCLUSION AND ORDER

In light of the foregoing, the Court **ADOPTS** the Report and Recommendation. For the reasons stated in the Report, which are incorporated herein by reference, the Court **GRANTS** Respondent's motion to dismiss.  (Doc. No. 8).  The Clerk of the Court shall close the district court case file.


**IT IS SO ORDERED.**


DATE: June _16_, 2003

_____
HON. THOMAS J. WHELAN
United States District Court
Southern District of California


CC: ALL PARTIES
      HONORABLE ROGER BENITEZ, UNITED STATES MAGISTRATE JUDGE

DISTRICT COURT DOCUMENT 14

Judgment of the United States District Court
Dismissing the Petition for Writ of Habeas Corpus
Filed June 16, 2003

1 page

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

JUDGMENT IN A CIVIL CASE

Case Number: 3:02-cv-02029

Tatarinov - PLAINTIFF

v.

Superior Court - DEFENDANT

FILED

JUN 16 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
B Reed              DEPUTY

__    JURY VERDICT.  This action came before the Court for a
      trial by jury.  The issues have been tried and the jury
      has rendered its verdict.

X     DECISION BY COURT.  This action came to trial or hearing
      before the Court.  The issues have been tried or heard
      and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT the Court adopts report &
recommendation [11-1] and grants the respondents motion to dismiss
[8-1] terminating case

6/16/03
_____
Date

                                    W. Samuel Hamrick, Jr.
                              _____
                                          Clerk

                              _____
                                       B Reed

                              Entered on 6/16/03

                                    pre - Whelan
                                    ref - Benitez

DISTRICT COURT DOCUMENT 16

<u>Notice of Appeal</u>
<u>Filed July 11, 2003</u>

1 page

1  Jerome P. Wallingford
2  Attorney at Law
   CA State Bar No. 41235
3  P.O. Box 501108
   San Diego, CA 92150-1108
4  Tel. (858) 484-2387
5  Attorney for Petitioner



FILED

JUL 11 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

6
7
8
9
10
11
12              UNITED STATES DISTRICT COURT
13            SOUTHERN DISTRICT OF CALIFORNIA
14
15  DIMITRI VALERYEVICH TATARINOV,        Case No. 02-CV-2029 W (BEN)
16              Petitioner,               NOTICE OF APPEAL
17          v.
18  SUPERIOR COURT OF THE STATE OF
    CALIFORNIA, COUNTY OF SAN DIEGO,
19              Respondent.
20

21        Petitioner DIMITRI VALERYEVICH TATARINOV hereby appeals
22  from the order filed June 16, 2003, by which the United States District Court
23  granted Respondent's motion to dismiss the petition for writ of habeas corpus.

24  DATE: July 11, 2003

25                                    _____
                                      Jerome P. Wallingford
                                      Attorney for Dmitri Valeryevich Tatarinov

                                      NOTICE OF APPEAL  02cv2029W

#095979 $105.00 Pd   16

EXCERPTS OF RECORD p. 90

# DISTRICT COURT CIVIL DOCKET
## FOR CASE 02-CV-2029

3 pages

U.S. District Court
Southern District of California (San Diego)

TERMED APPEAL

CIVIL DOCKET FOR CASE #: 02-CV-2029

Tatarinov v. Superior Court, et al
Assigned to: Judge Thomas J. Whelan
Referred to: Magistrate Judge Roger T. Benitez
Demand: $0,000
Lead Docket: None
Dkt# in other court: None

Filed: 10/11/02

Nature of Suit:   530
Jurisdiction: Federal Question

Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

DIMITRI VALERYEVICH TATARINOV
        petitioner

Jerome P Wallingford
[COR LD NTC]
Law Offices of Jerome P
Wallingford
PO Box 501108
San Diego, CA 92150
(858)484-2387

        v.

SUPERIOR COURT OF THE STATE OF
CALIFORNIA, ., County of San
Diego
        respondent

Attorney General
(619)645-2012
[COR LD NTC]
State of California
Office of the Attorney General
110 West A Street
Suite 1100
San Diego, CA 92101-5266
(619)645-2001

Docket as of July 16, 2003 11:47 am

Page 1

EXCERPTS OF RECORD p. 92

Proceedings include all events.                                    TERMED APPEA
3:02cv2029 Tatarinov v. Superior Court, et al

10/11/02 1        Petition for Writ of Habeas Corpus by Dimitri Valeryevich
                  Tatarinov    referred to Magistrate Judge Roger T. Benitez :
                  Receipt No/Amt of FEE: #87557/$5. (Atty Maint) (jpp)
                  [Entry date 10/15/02] [Edit date 10/15/02]

10/11/02 2        Memorandum of points and authorities by petitioner Dimitri
                  Valeryevich Tatarinov in support of habeas corpus petition
                  [1-1] (jpp) [Entry date 10/15/02]

10/22/02 3        NOTICE AND Order by Magistrate Judge Roger T. Benitez
                  regarding possible failure to exhaust and one-year statute
                  of limitations. (bjr) [Entry date 10/22/02]

10/22/02 4        Order requiring response to petition  by Magistrate Judge
                  Roger T. Benitez: Respondent shall file motion to dismiss
                  no later than 11/25/02; opposition to motion due by
                  12/16/02, or in the alternative  Return deadline set for
                  12/9/02; Traverse ddl set for 1/3/03 (bjr)
                  [Entry date 10/22/02]

10/30/02 5        Notice by petitioner Dimitri Valeryevich Tatarinov  of
                  filing correction to table of authorities (bjr)
                  [Entry date 10/30/02]

11/18/02 6        Application by respondent Superior Court for enlargement of
                  time to file response to writ; requesting 45 days (bjr)
                  [Entry date 11/19/02]

11/18/02 7        Order  by Magistrate Judge Roger T. Benitez  granting
                  application for enlargement of time [6-1]: Motion to
                  dismiss due by 01/09/03, opposition to motion due by
                  01/29/03 or in the alternative  Return deadline extended
                  to 2/3/03; Traverse ddl extended to 2/26/03 (bjr)
                  [Entry date 11/19/02]

12/11/02 8        Notice of Motion and Motion by respondent Superior Court
                  to dismiss [ motion(s) referred  to Magistrate Judge
                  Roger T. Benitez ] No hrg required (bjr)
                  [Entry date 12/12/02]

12/11/02 9        Memorandum of points and authorities by respondent Superior
                  Court in support of motion to dismiss [8-1] (bjr)
                  [Entry date 12/12/02]

1/23/03   10      Opposition by petitioner Dimitri Valeryevich Tatarinov  to
                  motion to dismiss [8-1] (bjr) [Entry date 01/24/03]

4/2/03   11       Report and Recommendation  by Magistrate Judge Roger T.
                  Benitez  recommending that the petition for Writ of Habeas
                  Corpus be granted; Objections to be filed 4/30/03 and Reply
                  to objections to be filed 5/14/03 (andy)
                  [Entry date 04/02/03]

Docket as of July 16, 2003 11:47 am                       Page 2

Proceedings include all events.                                      TERMED APPEAI
3:02cv2029 Tatarinov v. Superior Court, et al

4/29/03   12       Objections by petitioner Dimitri Valeryevich Tatarinov  to
                   report & recommendation [11-1] (bjr) [Entry date 04/30/03]

6/16/03   13       Order by Judge Thomas J. Whelan  adopting  report &
                   recommendation [11-1] and granting respondensts motion to
                   dismiss [8-1] (bjr) [Entry date 06/16/03]

6/16/03   14        Clerks Judgment: adopting  report & recommendation and
                   granting respondents motion to dismiss terminating case (bjr)
                   [Entry date 06/16/03] [Edit date 06/19/03]

7/11/03   15       Request by petitioner Dimitri Valeryevich Tatarinov  for:
                   certificate of appealability (apb) [Entry date 07/16/03]

7/11/03   16       Notice of appeal by petitioner Dimitri Valeryevich
                   Tatarinov from Dist. Court decision entered on 06/16/03.
                   Receipt No/Amt of Fee: Fee not paid [14-2] (apb)
                   [Entry date 07/16/03]

EXCERPTS OF RECORD p. 94

UNITED STATES COURT OF APPEALS

**F I L E D**

FOR THE NINTH CIRCUIT

OCT 2 3 2003

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

DIMITRI VALERYEVICH TATARINOV,

Petitioner - Appellant,

v.

SUPERIOR COURT OF THE STATE OF
CALIFORNIA, COUNTY OF SAN DIEGO,

Respondent - Appellee.

No. 03-56342

D.C. No. CV-02-02029-W
Southern District of California
(San Diego)

ORDER

Before:    WARDLAW and BERZON, Circuit Judges.

The request for a certificate of appealability is granted with respect to

whether the district court properly denied appellant's federal habeas corpus

petition as untimely.  *See* 28 U.S.C. §§ 2244(d)(1)(D); 2253(c)(2).

Appellant's opening brief and excerpts of record are due November 24,

2003; appellee's answering brief is due December 29, 2003; and the optional reply

brief is due within 14 days after service of appellee's brief.

**FILED**

**NOT FOR PUBLICATION**

AUG 11 2004

UNITED STATES COURT OF APPEALS

CATHY A. CATTERSON, CLE*
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DIMITRI VALERYEVICH TATARINOV, | No. 03-56342 |
| Petitioner - Appellant, | D.C. No. CV-02-02029-W |
| v. | |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, | MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Thomas J. Whelan, District Judge, Presiding

Submitted August 4, 2004**
Pasadena, California

Before: CANBY, HANSEN, and RAWLINSON, Circuit Judges.

Petitioner Dimitri Valeryevich Tatarinov appeals the district court's denial

of his federal habeas petition as time-barred under the one-year statute of

---

\*    This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

\*\*    This panel unanimously finds this case suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

EXCERPTS OF RECORD p. 96

96

limitations set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1).  The California Court of Appeal dismissed Tatarinov's appeal on April 28, 1997, the decision became final on May 28, 1997,[1] and the one-year limitations period expired on May 29, 1998.[2]  Tatarinov's federal habeas petition was not filed until October 11, 2002, and is therefore time barred unless he is entitled to tolling.

Tatarinov argues that he is entitled to tolling under 28 U.S.C. § 2244(d)(1)(D) because he could not have discovered the factual predicate of his ineffective assistance of counsel claim until either 2000 or 2001.  However, Tatarinov's own declaration stated that he discovered his attorney's deficient performance no later than mid-to-late 1998.  At that point, Tatarinov had a colorable ineffective assistance of counsel claim and the AEDPA statute of limitations clock started ticking.  *See Hasan v. Galaza,* 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) ("This is not to say that [petitioner] needed to understand the legal

_____

[1]Rule 24(b)(1) of the California Rules of Court provides that "a Court of Appeal decision . . . is final in that court 30 days after filing."

[2]Tatarinov's one-year statute of limitations began to run on May 29, 1997, the day after his conviction became final.  *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002).

97

significance of those facts-rather than simply the facts themselves-before the due diligence (and hence the limitations) clock started ticking.").

Tatarinov also argues that the egregious misconduct of his attorney constituted "extraordinary circumstances" that warrant equitable tolling of AEDPA's statute of limitations. We allow for equitable tolling of AEDPA's one-year limitations period when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time" and "the extraordinary circumstances were the cause of his untimeliness." *Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir. 2003) (citations and internal quotation marks omitted). Even if we accept that Tatarinov's attorney's conduct constituted "extraordinary circumstances," those circumstances effectively ended when Tatarinov was made aware of the true state of his legal representation in mid-to-late 1998. At that point, any equitable tolling ceased.

Under either analysis, Tatarinov's federal habeas petition should have been filed no later than the end of 1999. The district court correctly held that the petition filed in 2002 was untimely.

**AFFIRMED.**

3

98

Case No. 03-56342


# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| DIMITRI VALERYEVICH TATARINOV, | D.C. No. CV-02-02029-W Southern District of California (San Diego) |
| Petitioner - Appellant, | |
| v. | |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, | |
| Respondent - Appellee. | |

Appeal from the District Court, Southern District of California
The Honorable Thomas J. Whelan

---

### APPELLANT'S PETITION FOR REHEARING

---

JEROME P. WALLINGFORD
ATTORNEY FOR APPELLANT
California State Bar No. 41235
P.O. Box 501108
San Diego, CA 92150-1108
Tel. (858) 484-2387

EXCERPTS OF RECORD p. 99

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................i

APPELLANT'S PETITION FOR REHEARING ........................................................1

    INTRODUCTION ...................................................................................1

    WHY A REHEARING SHOULD BE GRANTED.............................................2

I

The opinion fails to consider that egregious misconduct perpetrated by an attorney to mislead his client <u>after</u> the client has learned facts indicating the attorney has performed deficiently can nevertheless justify a finding of equitable tolling...........................................................................2

II

The opinion fails to consider or discuss the truly unique relationship that existed between Mr. Tatarinov and Attorney Verhovskoy which made Verhovskoy's intentional misconduct particularly egregious.................3

CONCLUSION .................................................................................................5

CERTIFICATE OF COMPLIANCE (Circuit rule 32-1)

PROOF OF SERVICE

## TABLE OF AUTHORITIES

### <u>CASES</u>

    *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003)...........................................3

### <u>FEDERAL RULES OF APPELLATE PROCEDURE</u>

    rule 40.....................................................................................................1

i

*100*

Case No. 03-56342

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DIMITRI VALERYEVICH TATARINOV,

    Petitioner - Appellant,

    v.

SUPERIOR COURT OF THE STATE OF
CALIFORNIA, COUNTY OF SAN DIEGO,

    Respondent - Appellee.

D.C. No. CV-02-02029-W
Southern District of
California (San Diego)

Appeal from the District Court, Southern District of California
The Honorable Thomas J. Whelan

---

## APPELLANT'S PETITION FOR REHEARING

---

### INTRODUCTION

Appellant DIMITRI VALERYEVICH TATARINOV files this pe-
tition pursuant to rule 40 of the Federal Rules of Appellate Procedure.  In coun-
sel's judgment, the Court overlooked the following material points of fact and
law in its decision:

1

101

1.   The opinion fails to consider that egregious misconduct perpetrated by an attorney to mislead his client <u>after</u> the client has learned facts indicating the attorney's deficient performance can nevertheless justify a finding of equitable tolling;

2.   The opinion fails to consider or discuss the truly unique relationship that existed between Mr. Tatarinov and Attorney Verhovkoy which made Verhovskoy's intentional misconduct particularly egregious.

### WHY A REHEARING SHOULD BE GRANTED

**1.   The opinion fails to consider that egregious misconduct perpetrated by an attorney to mislead his client <u>after</u> the client has learned facts indicating the attorney has performed deficiently can nevertheless justify a finding of equitable tolling**

In his opening brief, Mr. Tatarinov asserts that he is entitled to equitable tolling based upon "egregious misconduct" by his trial attorney. AOB pp. 10-18. This Court deals with that argument at page 3 of its opinion. The opinion says, "Even if we accept that Tatarinov's attorney's conduct constituted 'extraordinary circumstances,' those circumstances effectively ended when Tatarinov was made aware of the true state of his legal representation in mid-to-late 1998. At that point, any equitable tolling ceased." (Opinion, p. 3.) In other words, the Court appears to assert that, once Mr. Tatarinov learned his attorney had permitted the California appeal to be dismissed, no amount of subsequent fraud, deceit, or similar misconduct perpetrated by Attorney Verhovskoy could

2

amount to the type of egregious misconduct that would justify a finding of equitable tolling.

Mr. Tatarinov relies on the decision in *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) to support his argument. AOB pp. 16-17. This Court cites *Spitsyn v. Moore* in its opinion, at page 3. However, the Court fails to recognize that much of the equitable tolling authorized in that case occurred <u>after</u> the petitioner learned his attorney had failed to file a habeas corpus petition and failed to return materials entrusted to the attorney by his client. *Id.* at pp. 801-802.

The facts of Mr. Tatarinov's case are even more compelling for relief than the facts of *Spitsyn*. Attorney Verhovskoy caused delay in seeking relief from dismissal of the appeal by repeatedly misleading Mr. Tatarinov concerning the status of his appeal. After Mr. Tatarinov learned that the appeal had been dismissed, Verhovskoy continued to practice deception. After Verhovskoy's motion to reinstate the appeal failed, Verhovskoy misled Mr. Tatarinov by telling him nothing further could be done to revive the appeal.

**2.    The opinion fails to consider or discuss the truly unique relationship that existed between Mr. Tatarinov and Attorney Verhovkoy which made Verhovskoy's intentional misconduct particularly egregious.**

Mr. Tatarinov's argument concerning equitable tolling is based upon the truly unique attorney-client relationship he had with Attorney Ver-

hovskoy.  Pertinent details of that relationship are described at pages 13, 17 and 18 of Mr. Tatarinov's opening brief.  Mr. Tatarinov placed an unusually high degree of trust in Attorney Verhovskoy because of their shared Russian heritage and language, and the fact that Mr. Tatarinov could communicate with Verhovskoy in Russian.  As explained in the opening brief at pages 13, 17 and 18, this made Mr. Tatarinov particularly vulnerable to the fraud and deception practiced by Verhovskoy to convince Mr. Tatarinov that nothing could be done about the dismissed appeal.

The opinion of this Court fails to mention or discuss these compelling facts, which form the basis of Mr. Tatarinov's argument.  Under the circumstances of this case, the misconduct perpetrated by Verhovskoy to mislead his vulnerable client was particularly egregious.  These facts must be considered to accurately rule on Mr. Tatarinov's appeal.

4

104

## CONCLUSION

For the reasons set forth above, Mr. Tatarinov asks this Court to grant his petition for rehearing and permit further argument concerning the appropriate disposition of the case.

Jerome P. Wallingford
Attorney for Appellant

5

105

UNITED STATES COURT OF APPEALS **F I L E D**

FOR THE NINTH CIRCUIT       **SEP 2 8 2004**

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DIMITRI VALERYEVICH TATARINOV, | No. 03-56342 |
| Petitioner - Appellant, | D.C. No. CV-02-02029-W |
| | Southern District of California, |
| v. | San Diego |
| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, | ORDER |
| Respondent - Appellee. | |

Before: CANBY, HANSEN, and RAWLINSON, Circuit Judges.

The panel has voted to deny Appellant's Petition for Rehearing.

Appellant's Petition for Rehearing filed on August 25, 2004, is DENIED.

EXCERPTS OF RECORD p. 106

*106*

1   Patricia Lynn Jacks
    CA State Bar No. 226300
2   5790 Friars Road F8
    San Diego, CA  92110
3   619 574-1625

4

    Attorney for Plaintiff
5

F I L E D
Clerk of the Superior Court

SEP 2 5 2006

By: X. LUGO, Deputy

6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                            COUNTY OF SAN DIEGO

10

11  PEOPLE OF THE STATE OF CALIFORNIA, )   Case No.: No. SCD 135946

12              Plaintiff,             )   NONSTATUTORY MOTION TO VACATE
                                       )   A PLEA ENTERED ON GROUNDS OF
13          vs.                        )   INEFFECTIVE ASSISTANCE OF
                                       )   COUNSEL.
14  DMITRI TATARINOV,                  )
                                       )   Date: _10/23/06_
15              Defendant              )
                                       )   Time: _9AM_
16  _____)
                                           Place: Department _11_
17

18  TO THE DISTRICT ATTORNEY, SAN DIEGO COUNTY:

19       PLEASE TAKE NOTICE that on __10/23_____, 2006, at the hour of

20  _9 AM_, in Department _11_ of the above-entitled court, located at 220 W. Broadway, San

21  Diego, CA  92101, defendant Dmitri Tatarinov will and hereby does move for an order vacating

22  his conviction of October 19, 1998, for felony violation of Penal Code §484/666 petty theft with

23  a prior, on the ground of ineffective assistance of counsel based on defense counsel's conflict of

24  interest. "An actual conflict of interest on the part of defense counsel can constitute ineffective

25  assistance of counsel and mandate reversal of a criminal conviction or sentence." California

26  Practice Guide Professional Responsibility 2005, 6-133 [6:820].

27       Mr. Tatarinov came to the United States as a visitor in May of 1992. Since that time, he

28  has never left the United States. He originally applied for asylum in the United States in Albany,

                            EXCERPTS OF RECORD p. 107

1   New York that same year, based upon his fear of return due to problems and threats he had

2   received in the former Soviet Union.

3          Mr. Tatarinov was placed in removal proceedings after going through an extended period

4   of depression and obsessive compulsive behavior.  During this period, Mr. Tatarinov suffered

5   three convictions all relating to shoplifting.  The first of the three convictions for shoplifting

6   occurred in August of 1995.  Mr. Tatarinov received a misdemeanor conviction for petty theft in

7   violation of California Penal Code 484(a)/488.  For this he received one year of probation.  In

8   August of 1996, Mr. Tatarinov took a jacket from a department store.  Due to California case law

9   which escalates shoplifting to a robbery where any force is used with a security guard, Mr.

10  Tatarinov was convicted of robbery in violation of California Penal Code Section 211.  For this

11  Mr. Tatarinov was sentenced to 270 days of custody, imposition of which was suspended and

12  Mr. Tatarinov was granted three years probation.  Mr. Tatarinov's final conviction was also for

13  shoplifting which occurred in 1998, it was upgraded to a felony due to his prior theft conviction

14  and he was charged under California Penal Code Section 484/666.  He was sentenced to 364

15  days of custody, but imposition of the sentence was suspended and he was placed on probation

16  for five years.  He has successfully completed his probation.

17         On January 6, 1995, Mr. Tatarinov was granted Conditional Permanent Resident Status

18  based upon his marriage.  In December 1996, he filed a petition to remove that status.  That

19  application was not adjudicated until several years later.  In fact, it was not until Mr. Tatarinov

20  was in Removal Proceedings that the Immigration and Naturalization Service decided to remove

21  the condition, making him a Lawful Permanent Resident.

22         As a result of his convictions, Mr. Tatarinov was placed in removal proceedings on June

23  24, 1998.  The Immigration Judge found him removable as an alien convicted of a crime

24  involving moral turpitude within five years of admission pursuant to section 237(a)(2)(A)(i) of

25  the Immigration and Nationality Act, as well as an alien convicted of two or more crimes

26  involving moral turpitude.  (See Letter of James R Patterson, Attorney at Law, attached hereto as

27  Exhibit A.)

28

NONSTATUTORY MOTION 7                           EFFECTIVE ASSISTANCE OF COUNSEL

1   Attorney Vladimir Verhovskoy, California Bar No. 94039, represented Mr. Tatarinov in

2  San Diego Superior Court case number SDC119330. Upon conviction, Mr. Tatarinov retained

3  and instructed Verhovskoy to file the appeal. In 1997, Verhovskoy failed to file the opening

4  brief and caused the appeal to be dismissed. Verhovskoy hid the fact of that dismissal from Mr.

5  Tatarinov by lying to him about the status of the appeal. Mr. Tatarinov learned about the

6  dismissal during 1999 after a family member made her own inquiry to the court. Mr.

7  Verhovskoy made a perfunctory effort to have the dismissal set aside. (See article from

8  California Bar Journal August 2003 attached hereto as Exhibit B.)

9   Mr. Tatarinov was represented by Verhovskoy for this 1998 conviction. At this point,

10  unbeknownst to Mr. Tatarinov, Verhovskoy had not filed the appeal in SDC Case 119330 and

11  was lying to Mr. Tatarinov about the case status. Verhovskoy was laboring under an actual

12  conflict of interest –a conflict resulting from representing a former client in subsequent matter

13  that the client may want to attack the prior conviction on the ground of incompetent

14  representation: the failure to file the appeal in SDC Case 119330.

15   Mr. Tatarinov placed his trust in Mr. Verhovskoy's hands based on the ease of

16  communicating in Russian and the common heritage they both shared and was represented by

17  Verhovskoy until December 2000. Upon learning of Verhovskoy's deceit Mr. Tatarinov retained

18  Jerome P. Wallingford in 2001 in an effort to revive the dismissed appeal (See Letter of Jerome

19  P. Wallingford, Attorney at Law, attached hereto as Exhibit C) and reported Verhovskoy to the

20  California Bar Association.

21   In 1993, Mr. Tatarinov met his wife, Patricia Lynn Jacks-Tatarinov, a U.S. citizen by

22  birth and they were married in 1994. They have been married for 12 years and live together in

23  the condominium they jointly own. Mr. Tatarinov is well liked and respected by members of the

24  community. (Letter from Roy Renikoff, M.D., Exhibit D, Dr. Tim McDaniel, Exhibit E, P.A.

25  Quint, Exhibit F, Eric Ensley, Exhibit G, and Paul Quint, Exhibit H.)

26   Mr. Tatarinov has demonstrated extreme hardship to him and his wife if he was deported

27  as a result of this conviction. To add credibility to his rehabilitation of his criminal record, since

28  the eight years of his last conviction, there has been no criminal activity.

EXCERPTS OF RECORD p. 109

NONSTATUTORY MOTIO\      INEFFECTIVE ASSISTANCE OF COUNSEL

109

1    This motion is based on this notice, and the attached memorandum in support of
2  nonstatutory motion to vacate a judgment entered after court trial on grounds of ineffective
3  assistance of counsel.

4

5

6

7                                   Dated this 25th day of September, 2006

8

9                                        Patricia Lynn Jacks

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXCERPTS OF RECORD p. 110

1    Patricia Lynn Jacks
     CA State Bar No. 226300
2    5790 Friars Road F8
     San Diego, CA 92110
3    619 574-1625

4

5    Attorney for Plaintiff

6

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SAN DIEGO

10

11   PEOPLE OF THE STATE OF CALIFORNIA, )   Case No.: No. SCD 135946

12              Plaintiff,              )   MEMORANDUM IN SUPPORT OF
                                        )   NONSTATUTORY MOTION TO VACATE
13        vs.                           )   A PLEA ENTERERD ON GROUNDS OF
                                        )   INEFFECTIVE ASSISTANCE OF
14   DMITRI TATARINOV,                  )   COUNSEL.
                                        )
15              Defendant              )    Date: _____
                                        )
16                                          Time: _____

17   _____      Place: Department ____

18
          Defendant now brings this motion to vacate the verdict and sentence in the case on the
19
     ground that he received ineffective assistance of counsel based on defense counsel's conflict of
20
     interest rendering these critical stages constitutionally inadequate, in violation of the state and
21
     federal rights to the effective assistance of counsel, due process, and a fair trial.
22
          California courts must entertain nonstatutory motions to invalidate particular stages of a
23
     criminal case, even entire criminal convictions, on constitutional grounds. For example, in
24
     Murqui v. Municipal Court (1975) 15 Ca. 3d 286, 124 Cal. Rptr. 204, 206 n.4, the Supreme
25
     Court stated:
26
              Although no clear California statutory authority provides for such a pretrial
27            motion to dismiss [on grounds of discriminatory prosecution], we have no
28

     MEMORANDUM IN SUPPORT OF NONSTATUTORY MOTION TO VACATE A PLEA ENTERERD ON GROUNDS OF

                            INEFFECTIVE ASSISTANCE OF COUNSEL

doubt in light of the constitutional nature of the issue as to the trial court's authority to entertain such a claim. (Accord, Jones v. Superior Court (1970) 3 Cal. 3d 734, 738-739, 91 Cal. Rptr. 578...; People v Coffey (1967) 67 Cal. 2d 204, 215 and fn. 11, 60 Cal. Rptr. 457....)

This rule – that constitutional violations must find a remedy even if no statute provides one – has been specifically applied to claims of ineffective counsel. For example, in People v. Fosselman (1983) 33 Cal. 3d 572, 189 Cal. Rptr. 855, 861:

> Penal Code section 1181 enumerates nine grounds for ordering a new trial. It is true the section expressly limits the grant of a new trial to only the listed grounds, and ineffective assistance is not among them. Nevertheless, the statute should not be read to limit the constitutional duty of trial courts to ensure that defendants be accorded due process of law. "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused." (Glasser v. United States (1942) 315 U.S. 60, 71 [parallel citations omitted]; see also Powell v Alabama (1932) 287 U.S. 45, 52 [parallel citations omitted]; People v Davis (1973) 31 Cal. App. 3d 106, 110, 106 Cal. Rptr. 897; Scwarzer, Dealing with Incompetent Counsel – The Trial Judge's Role (1980) 93 Harv.L.Rev. 633, 639, fn. 27, 649.) The Legislature has no power, of course, to limit this constitutional obligation by statute. (People v Davis, supra, 31 Cal. App. 3d at p. 110, 106 Cal. Rptr. 897.) It is undeniable that trial judges are particularly well suited to observe courtroom performance and to rule on the adequacy of counsel in criminal cases tried before them. (See McMann v Richardson (1970) 397 U.S. 759, 771 [parallel cites omitted].) Thus, in appropriate circumstances justice will be expedited by avoiding appellate review, or habeas corpus proceedings, in favor of presenting the issue of counsel's effectiveness to the trial court as the basis of a motion for new trial. If the court is able to determine the effectiveness issue on such motion, it should do so. The court should have done so in the case at bar.

In the present case, the court thus has authority to vacate the verdict and sentence on grounds of ineffective counsel.

Because the verdict and sentencing in this case are invalid since the accused received ineffective assistance of counsel, the Fifth , Sixth, and Fourteenth Amendment rights to counsel, due process, and a fair trial require that the original plea and sentence vacated, and defendant to be afforded a fresh opportunity to defend this case with effective assistance of counsel.

MEMORANDUM IN SUPPORT OF NONSTATUTORY MOTION TO VACATE A PLEA ENTERERD ON GROUNDS OF

INEFFECTIVE ASSISTANCE OF COUNSEL

I.  A NEW TRIAL MUST BE GRANTED WHERE THE DEFENDANT HAS BEEN DENIED DUE PROCESS OF LAW.

"We begin with the general proposition that a motion for new trial is a statutory right and may be made only on the grounds enumerated in Penal Code Section 1181." (People v Sainz (1967) 253 Cal. App. 2d 496, 500 [61 Cal. Rptr. 196].) The only exception to the rule occurs where strict adherence to the rule would deny the accused due process of law.

"Since the duty of the trial court to afford every defendant in a criminal case a fair and impartial trial is of constitutional dimension, the inherent power of the court to correct matters by granting a new trial transcends statutory limitations.  (People v. Oliver (1975) 46 Cal. App. 3d 747, 751 [120 Cal. Rptr. 368].)" (People v Cardenas (1981) 114 Cal. App. 3d 643, 647-648, 170 Cal. Rptr. 763.)

"Although it has been stated that motions for new trial must be made on one or more of the grounds enumerated in Penal Code Section 1181 (see, e.g. People v Sainz, 253 Cal. App. 2d 496, 500 [61 Cal. Rptr. 196]), new trials are frequently granted on nonstatutory grounds 'where the failure to do so would result in a denial of a fair trial to a defendant in a criminal case.' (People v Davis, 31 Cal. App. 3d 106, 109 [106 Cal. Rptr. 897].)  The duty of a trial court to afford every defendant in a criminal case a fair and impartial trial is of constitutional dimension. Where the procedure has fallen short of that standard, an accused has been denied due process, and the inherent power of the court to correct matters by granting a new trial transcends statutory limitations (People v Davis, supra, 31 Cal. App. 3d 106, 110).  (People v. Oliver (1975) 46 Cal. App. 3d 747, 751, 120 Cal. Rptr. 368)

The defendant has been denied due process of law because the defense Attorney of Record, Vladimir Verhovskoy, provided ineffective assistance of counsel based upon counsel's conflict resulting from representing former client in subsequent matter.  A criminal defendant has a constitutional right to representation by "conflict-free" counsel.  "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to

MEMORANDUM IN SUPPORT OF NONSTATUTORY MOTION TO VACATE A PLEA ENTERERD ON GROUNDS OF INEFFECTIVE ASSISTANCE OF COUNSEL

1·3

representation that is fee from conflicts of interest." <u>Wood v. Georgia</u> (1981) 450 U.S. 261, 271, 101 S.Ct. 1097, 1103.

"The defense counsel had a duty to alert the court to the existence of conflicts and to assist the court in determining whether the conflict has been properly waived, if a waiver exists." (People v. Mroczko (1983) 35 C3d 86, 112, 197 CR 52, 69). Attorney Verhovskoy had a duty to the inform the court of the prior trial, SDC 119330, his failure to file Mr. Tatarinov's appeal, and his deceit regarding the appeal.

> "In criminal cases, an attorney's representation of a former client may preclude renewed representation of that client in a new matter if the prior representation resulted in the client's conviction. Reason: The client may want to attack the prior conviction on the ground of incompetent representation. (People v Bailey (1992) 9 CA4th 1252, 1254-1255, 12CR2d 339, 340-341 – permitting trial counsel to represent same client on appeal puts the counsel in "the untenable position of urging his own incompetency"; San Diego Bar Ass'n Form. Opn. 1995-1-lawyer representing former client on new matter involving "three strikes" violation must decline representation if prior representation deemed inadequate.) California Practice Guide Professional Responsibility 2005, 6-142 [6:900]

Mr. Tatarinov is currently attacking the prior conviction based on ineffective assistance of counsel.

Mr. Tatarinov has been denied due process of law because the defense Attorney of Record, Vladimir Verhovskoy, provided ineffective assistance of counsel based upon counsel's conflict of interest. Verhovskoy's continued representation of Mr. Tatarinov after failing to file the SDC 119330 appeal is a "actual" conflict. There is a "presumption of prejudice where conflict is actual." California Practice Guide Professional Responsibility 2005, 6-138 [6:846]. The consequences of a ineffective assistance where defense counsel labored under an actual conflict of interest are a reversal of the conviction.

Dated this 25th day of September, 2006

_____
Patricia Lynn Jacks

MEMORANDUM IN SUPPORT OF NONSTATUTORY MOTION TO VACATE A PLEA ENTERERD ON GROUNDS OF

INEFFECTIVE ASSISTANCE OF COUNSEL

# LILIA S. VELASQUEZ
### ATTORNEY AT LAW
110 WEST "C" STREET, SUITE 905
SAN DIEGO, CALIFORNIA 92101

CERTIFIED SPECIALIST
EMIGRATION AND NATIONALITY LAW
THE STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

Fax:    (619) 233-4431
(619) 683-5233

◆   James R. Patterson
     Attorney at Law

February 10, 2003

Re:    Status of Immigration Proceedings of Dmitri Tatarinov

To Whom It May Concern:

I represent Mr. Dmitri Tatarinov before the Immigration and Naturalization Service, the United States Immigration Court, the Board of Immigration Appeals, and the Federal Court of Appeals for the Ninth Circuit. The purpose of this letter is to acquaint you with Mr. Tatarinov's immigration situation.

I have represented Mr. Tatarinov since February of 2001, before the agencies and courts noted above.  I currently represent him before the Court of Appeals for the Ninth Circuit.  All of Mr. Tatarinov's prior arguments and administrative appeals have been dismissed. Should Mr. Tatarinov's appeal before the Court of Appeals for the Ninth Circuit be dismissed, he will be deported to Russia, a country where he has not lived for over 10 years.  This will most likely result in separation from his U.S. citizen spouse, or her relocation to a country that she has never visited.

Because we have exhausted all of Mr. Tatarinov's administrative remedies and because we believe that Mr. Tatarinov's current legal appeal will likely be dismissed in the near future, we are asking that your office carefully review his case and consider extraordinary remedies to aid this family.

Mr. Tatarinov, came to the United States as a visitor in May of 1992.  Since that time, he has never left the United States.  He originally applied for asylum in the United States in Albany, New York that same year, based upon his fear of return due to problems and threats he had received from organized crime elements in the former Soviet Union.

In 1993, he met his wife, Patricia Lynn Jacks-Tatarinov, a U.S. citizen by birth, and they were married in February of 1994.  They have now been married for 9 years and live together in the condominium they jointly own. Ms. Jacks-Tatarinov has never lived outside the United States.  She is a Certified Public Accountant, with a Master of Science degree in Accountancy and a Juris Doctorate in Law.

On January 6, 1995, Mr. Tatarinov was granted Conditional Permanent Resident Status based upon his marriage.  In December of 1996, he filed a petition to remove that status.  That application was not adjudicated until several years later.  In fact, it was not until Mr. Tatarinov was in Removal Proceedings that the Immigration and Naturalization Service decided to remove the condition, making him a Lawful Permanent Resident.

EXCERPTS OF RECORD p. 115

115
115

Dmitri Tatarinov Letter
Page 2

---

Mr. Tatarinov was placed in removal proceedings after going through an extended period of depression and obsessive compulsive behavior. During this period, Mr. Tatarinov suffered three convictions all relating to shoplifting. The first of the three convictions for shoplifting occurred in August of 1995. Mr. Tatarinov received a misdemeanor conviction for petty theft in violation of California Penal Code 484(a)/488. For this he received one year of probation. In August of 1996, Mr. Tatarinov took a jacket from a department store. Due to California case law which escalates shoplifting to a robbery where any force is used with a security guard, Mr. Tatarinov was convicted of robbery in violation of California Penal Code Section 211. For this Mr. Tatarinov was sentenced to 270 days of custody, imposition of which was suspended and Mr. Tatarinov was granted three years probation. Mr. Tatarinov's final conviction was also for shoplifting which occurred in 1998, it was upgraded to a felony due to his prior theft conviction and he was charged under California Penal Code Section 484/666. He was sentenced to 364 days of custody, but imposition of the sentence was suspended and he was placed on probation for five years. He has now successfully completed his probation.

As Mr. Tatarinov was not in financial need of the items, he realized he had a problem and underwent extensive treatment through the help of a psychologist for his obsessive-compulsive behavior which the psychiatrist believed led him to shoplift. After receiving treatment, Mr. Tatarinov has not had any problems with the law since 1998.

Unfortunately, while he may have had defenses or other avenues of relief in the criminal cases, Mr. Tatarinov's attorney, Vladimir Verhovsky, did not pursue them. Further, he did not file appeals in the most serious of the cases, although he told the Tatarinov's that he had done so. Mr. Verhovsky was subsequently suspended from the practice of law in the State of California.

As a result of his convictions, Mr. Tatarinov was placed in removal proceedings on June 24, 1998. The Immigration Judge found him removable as an alien convicted of a crime involving moral turpitude within five years of admission pursuant to section 237(a)(2)(A)(i) of the Immigration and Nationality Act (the Act), as well as an alien convicted of two or more crimes involving moral turpitude.

Mr. Tatarinov, through former counsel, sought relief of Cancellation of Removal under section 240A(a) of the Act, a waiver under prior section 212(c) of the Act, adjustment of status with a waiver under section 212(h) of the Act, asylum, withholding and relief under the convention against torture. Although the Immigration Judge was sympathetic to Mr. Tatarinov's situation and to that of Mr. Tatarinov's U.S. citizen wife, he denied all relief requested finding that Mr. Tatarinov was not statutorily eligible for any of the relief and ordered Mr. Tatarinov deported to Russia.

Unfortunately, due to the timing of Mr. Tatarinov's convictions in relation to his obtaining legal status, there is not much hope of prevailing in his immigration case. Due to a change in the law brought about by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Mr. Tatarinov no longer qualifies for a waiver (under section 212(h)) that would have resolved his case upon a showing of hardship to his U.S. citizen spouse. In other words, had Mr. Tatarinov's immigration case been resolved prior to September 30, 1996, he would have qualified for a waiver under section 212(h) of the Act and would not be facing imminent deportation. However, under the law as it stands now, he no longer

116

**Dmitri Tatarinov Letter**
**Page 3**

---

qualifies for the waiver. Rather, with three shoplifting-related convictions (all of which were attributable to a diagnosed and subsequently treated mental illness) Mr. Tatarinov now faces near-certain deportation and separation from his U.S. citizen wife of 9 years.

Based on the foregoing, we are requesting that you consider Mr. Tatarinov's case as one deserving of extraordinary measures. As mentioned above, at this point, Mr. Tatarinov faces near-certain deportation which will result in exceptional hardship to both himself and his U.S. citizen wife.

Please feel free to contact me should you have any questions or need more information.

Sincerely,

James R. Patterson
Attorney at Law

117

Taken from the California Bar Journal August 2003

**VLADIMIR VERHOVSKOY** [#97039], 57, of San Diego was suspended for two years, stayed, placed on two years of probation with a 180-day actual suspension and was ordered to pay sanctions and comply with rule 955. The order took effect April 2, 2003.

Verhovskoy handled criminal defense and immigration cases for a client who was not a U.S. citizen. The client was convicted of second degree robbery and was subjected to possible deportation. Verhovskoy had second thoughts about the appeal he filed, believing he might get the conviction reduced and perhaps expunged due to his efforts to rehabilitate the client through community and church involvement. As a result, he let the appeal lapse and it was dismissed.

He did not tell the client about the dismissal and instead repeatedly told him things were going well.

When the client was charged with another crime, Verhovskoy decided it would be better to appeal the robbery conviction, so he filed a motion to reinstate the appeal, two years after it had been dismissed. The court refused to reinstate the appeal.

The client also was convicted of shoplifting before Verhovskoy represented him. Verhovskoy filed a motion to vacate his guilty plea, which the court denied.

He then filed an appeal, realized he would not prevail on the issue at hand, but knowing an appeal could not be used for deportation purposes, he decided to let the appeal run.

He did not prepare or file an opening brief and the appeal was dismissed. As with the robbery conviction, he tried unsuccessfully to reinstate the appeal two years later.

Verhovskoy stipulated that he failed to perform legal services competently.

In a civil lawsuit, the court ordered Verhovskoy and his client to pay $915 in sanctions for failing to comply with discovery. When they did not comply, the court ordered a judgment of $915 against Verhovskoy personally. He did not pay.

In a third matter, he represented a client in an appeal of a guilty plea, but did not file the opening brief on time and was found in default. He did not take advantage of two opportunities to file a motion for relief from default, was sanctioned, but did not pay. He also didn't respond to an order to supplement the record and was sanctioned $2,000 for repeated failures to comply with court orders.

Verhovskoy was disciplined in 2001 for writing checks against insufficient funds

418

and in 1993 for failing to perform legal services competently or return client files and improperly withdrawing from employment.

In mitigation, at the time of the misconduct, Verhovskoy was caring for his terminally ill wife and sought medical care in other states. After his wife died, he spent significant time winding up her affairs. He cooperated with the bar's investigation.

JEROME P. WALLINGFORD
ATTORNEY AT LAW
P.O. BOX 501108
SAN DIEGO, CA 92150-1108
TEL. (858) 484-2387

October 15, 2004

To Whom It May Concern:

RE: Dmitri Tatarinov

Mr. Tatarinov was defrauded of his right to appeal the robbery
conviction he suffered in San Diego Superior Court case number
SCD119330 by attorney Vladimir Verhovskoy, California Bar No.
94039.  Attorney Verhovskoy represented Mr. Tatarinov at the
trial of that case, and was then retained to handle the appeal.
In 1997, Verhovskoy failed to file the opening brief and caused
the appeal to be dismissed. Verhovskoy hid the fact of that
dismissal from Mr. Tatarinov by lying to him about the status of
the appeal.  Mr. Tatarinov finally learned about the dismissal
during 1999 when a family member made her own inquiry to the
court.  Verhovskoy made a perfunctory effort to have the dismis-
sal set aside.  When that was denied, he continued to lie to Mr.
Tatarinov about the lack of other available remedies.  Verhovskoy
continued to represent Mr. Tatarinov on an immigration matter.
Verhovskoy ceased to represent Mr. Tatarinov in December 2000,
when the California State Bar suspended Verhovskoy's license to
practice law.

During the period of time that Verhovskoy represented Mr. Tatari-
nov, the attorney exploited the relationship he had with his
client.  Mr. Tatarinov placed an unusual amount of trust in the
attorney because of their shared Russian heritage.  Verhovskoy,
like Mr. Tatarinov, is a Russian national, fluent in the Russian
language.  Although Verhovskoy provided shoddy legal representa-
tion, he was able to keep Mr. Tatarinov as a paying client by
taking advantage of his client's unwavering trust.

Mr. Tatarinov retained me in 2001 in an effort to revive the
dismissed appeal.  From 2001 through September 2004, I litigated
the case from the California Court of Appeal, through the
California Supreme Court, then into the United States District
Court and the Ninth Circuit Court of Appeal.  In spite of the
substandard representation Mr. Tatarinov had received from
Attorney Verhovskoy, those courts were not willing to revive the
dismissed appeal, citing the passage of several years between the
dismissal and the efforts to revive the case.  In my opinion,
those courts failed to recognize the level of undue influence
that Attorney Verhovskoy had exercised over Mr. Tatarinov during
those years.

EXCERPTS OF RECORD p. 120

120

To Whom It May Concern:
RE: Dmitri Tatarinov
October 15, 2004
Page 2

---

It is extremely disappointing to me personally that Mr. Tatarinov
has not been allowed to litigate issues that could have been
presented on an appeal from the robbery conviction.  The case
was, in reality, a shoplifting incident.  Mr. Tatarinov had a
legal defense to the robbery charge.  Unfortunately, due to the
neglect of Attorney Verhovskoy during trial, the jury was not
instructed on that defense.  Therefore, the jurors did not
consider his defense in reaching their verdict.  In my opinion,
failure to instruct the jury concerning Mr. Tatarinov's defense
would have been a meritorious appellate issue.  Had the case been
properly tried, it would have been resolved at the misdemeanor
level.  The robbery conviction is the result of a miscarriage of
justice.

If you have questions or desire further information, please
contact me.

                              Very truly yours,


                              Jerome P. Wallingford

EXCERPTS OF RECORD p. 121

121

*Roy Resnikoff, M.D.*

family psychiatry

February 13, 2003

**TO WHOM IT MAY CONCERN:**

RE:              **DMITRI TATARINOV**

Dmitri Tatarinov has been my patient since 1998. Dmitri first came to see me seeking professional help for his depressions and shoplifting behavior. Dmitri is a perfectionist and at times became frustrated and depressed when his high standards were not met. With the help of Prozac (fluoxetine), Dmitri has been able to control his reactive emotions and with continued psychotherapy and psychopharmacology his prognosis is good.

The threat of deportation and the effect that would have on his marriage to Patricia Lynn Jacks is of great concern to Dmitri. If Dmitri stays in this country, I would be willing to continue his psychotherapy and pharmacotherapy.

Sincerely,

Roy Resnikoff, M.D.

827
Coast Boulevard South
La Jolla
California
92037

1104
Pearl Street
La Jolla
California
92037

858 / 454-1650

Fax 858 / 454-0692

Diplomate of the
American Board of
Psychiatry and Neurology

Diplomate of the
American Board of
Adolescent Psychiatry

Clinical Professor
of Psychiatry, UCSD

122

# UNIVERSITY OF CALIFORNIA, SAN DIEGO

**UCSD**

BERKELEY • DAVIS • IRVINE • LOS ANGELES • MERCED • RIVERSIDE • SAN DIEGO • SAN FRANCISCO



SANTA BARBARA • SANTA CRUZ

DEPARTMENT OF SOCIOLOGY, 0533

(858) 534-4627  OFFICE
(858) 534-4753  FAX

401 SOCIAL SCIENCE BUILDING
9500 GILMAN DRIVE
LA JOLLA, CALIFORNIA 92093-0533

February 8, 2003

Dear Sirs,

I am pleased to write a character reference for Mr. Dmitri Tatarinov. I have known Mr. Tatarinov for about ten years. I was University of California director of the Russia program in St. Petersburg, in charge of about 30 students. Mr. Tatarinov worked in a recreational center which the students used. I got to know him because he was extremely helpful and kind to the students, always going out of his way to make suggestions on how to negotiate Russian life.

Mr. Tatarinov came to the United States through the invitation of friends in New York. However, he moved to San Diego and quickly found work. I don't know the whole trajectory, but I know that he worked at a flower store and at Sea World. I kept in contact with him throughout that time, though I was often in Russia.

I know about Mr. Tatarinov's crimes; it is not my place to either explain or excuse them. I can say, however, that there is another side to Mr. Tatarinov. He can be extremely generous and giving, with an immense desire to help other people. I could give many examples, but I believe one will suffice. Roughly two years ago I began a very aggressive chemotherapy regimen for cancer. During this very difficult time for me Mr. Tatarinov was ever helpful. He came over to check on my needs. Without my even asking he took care of problems with my house that I was in no position to deal with. He made the whole period much easier for me, and I am grateful to him for it. He truly likes to help his friends, and he gives without any expectations. Although I am most familiar, of course, with my own relationship with him, I have observed this same generosity and kindness with other people.

For these reasons I am glad that he is here in America. I hope he can be allowed to stay. Thank you for your attention.

Sincerely,

Dr. Tim McDaniel
Professor of Russian Studies, Religious Studies, and Sociology

EXCERPTS OF RECORD p. 123

123

**P. A. QUINT**

ATTORNEY AT LAW

3748 FOURTH AVENUE

SAN DIEGO, CALIFORNIA 92103

(619) 291-9230

FAX (619) 291-0577

February 12, 2003

TO WHOM IT MAY CONCERN

RE: DMITRI V. TATARINOV

I have known Dmitri Tatarinov for several years and am somewhat familiar with the legal issues he and his wife have been dealing with over that period of time.

There were extenuating circumstances which led to Dmitri's shoplifting arrests more than six years ago, and for which he has obtained professional counseling.

Admittedly, Dmitri's own conduct is the proximate cause of his present concerns with the Immigration and Naturalization Service. Dmitri obtained legal assistance regarding his immigration status from a Russian speaking California licensed attorney in whom he had placed great trust and confidence. The Russian speaking attorney misrepresented certain matters to Dmitri, which misrepresentations have resulted in Dmitri's present concerns regarding his status with the Immigration and Naturalization Service.

Dmitri is a likeable, intelligent, well educated professional man, unable, unfortunately at this time, to utilize his education and experience in his profession in this country. He is married to a very well educated professional woman. In my social contacts with Dmitri, I have formed the opinion that Dmitri is a very responsible person. Dmitri made some mistakes for which he has assumed full responsibility, obtained professional help, and for which he has paid his debt to society. Dmitri has a great sense of loyalty to his family and friends, that was misused by his Russian speaking attorney, to Dmitri's detriment.

If I can provide any other information that would be of assistance, please do not hesitate to contact me.

Very truly yours,

P. A. Quint

PAQ/hs

124

February 10, 2003

To whom it may concern,

I am pleased to submit this letter on behalf of Dimitri Tartarinov to disclose some personal light on his character. Since our friendship began, he has demonstrated valued integrity and trust toward me and my family. He consistently offered his assistance whenever needed and displayed genuine respect and honesty. I am aware of his past and feel that he has learned from his mistake and has been able to resume a normal lifestyle with his family without any further incident. As an educator in this community pursuing a Master's of Science in Chemical Engineering and a former Director of a Community Corrections Center program contracted by the Federal Bureau of Prisons, I feel that Dimitri is deeply remorseful and should not be subjugated by his past. In regards to his pending issue of obtaining permanent residence, I believe he is a trusted member in our diverse community and culture. It is an honor and privilege to submit any recommendation on the behalf of him and his family.

If there are any questions regarding this letter, feel free to contact me at my address 5790 Friars Rd #F-5 San Diego, Ca 92110.

Sincerely,

Eric Ensley

February 19, 2003

To Whom this may concern:

I have known Dmitri Tatarinov for a number of years.
Both he and his wife, Patricia, are personal frinds of
mine.

Over the years I have found Dmitri to be a person of truth
and sincerity.  He is responsibile and reliable.  He has a
compassionate and giving nature.

I know that Dmitri is extremely well-educated and experienced
in his field of expertise.  He is of good character and will
follow through on any promise.  I would have complete trust
in him for any given circumstance.

I consider the education and sincere attitude to helping
others, an asset to our community in both Dmitri and his
wife.

Thank you for your attention.

Sincerely,

Paula Quint
1412 Egret Way
El Cajon, CA  92019
(619) 442-1327

126

CR-120

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):

PATRICIA LYNN JACKS
CA STATE BAR NO. 226300
5790 FRIARS ROAD F8
SAN DIEGO CA 92110
TELEPHONE NO.: 619-574-1625    FAX NO.:
ATTORNEY FOR (Name): DMITRI V TATARINOV

FOR COURT USE ONLY

F I L E D

Clerk of the Superior Court

NOV 0 2 2006

By: GREG HOHMAN, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF

PEOPLE OF THE STATE OF CALIFORNIA
vs.

DEFENDANT: DMITRI V TATARINOV

Date of birth: 12-15-65    California Dept. of Corrections No. (if applicable): _____

NOTICE OF APPEAL-FELONY (DEFENDANT)
(Pen. Code, §§ 1237,1538.5(m); Cal. Rules of Court, rule 30(b))

CASE NUMBER(S):

SCD 135946

## NOTICE

- If your appeal challenges the validity of the plea you must complete the *Request for Certificate of Probable Cause* on the other side of this form. (Pen. Code, § 1237.5.)
- You must file this form in the superior court within 60 days after entry of judgment.

1. Defendant (name): DMITRI V TATARINOV

   appeals from the order or judgment entered on (specify date of order, judgment, or sentence): OCTOBER 23, 2006

2. This appeal follows:

   a. ☐ A jury or court trial. (Pen. Code, § 1237(a).)

   b. ☐ A contested violation of probation. (Pen. Code, § 1237(b).)

   c. ☐ A guilty (or no-contest) plea or an admitted probation violation (check all boxes that apply):

      (1) ☐ This appeal is based on the sentence or other matters occurring after the plea. (Cal. Rules of Court, rule 30(b)(4)(B)) (d).)

      (2) ☐ This appeal is based on the denial of a motion to suppress evidence under Penal Code section 1538.5.

      (3) ☐ This appeal challenges the validity of the plea or admission. (You must complete the Request for Certificate of Probable Cause on the other side of this form.)

   d. ☑ Other (specify):

      THE DENIAL OF A NONSTATUTORY MOTION TO VACATE A JUDGEMENT ENTERED AFTER COURT TRIAL ON GROUNDS OF INEFFECTIVE ASSISTANCE OF COUNSEL.

3. ☐ I request that the court appoint an attorney on appeal.    Defendant ☐ was ☐ was not
   represented by an appointed attorney in the superior court.

4. Defendant's address: ☑ same as in attorney box above.
                        ☐ as follows:


Date:

PATRICIA LYNN JACKS
(TYPE OR PRINT NAME)

*Patricia Lynn Jacks*
(SIGNATURE OF DEFENDANT OR ATTORNEY)

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
CR-120 [Rev. July 1, 2005]

NOTICE OF APPEAL — FELONY (DEFENDANT)
(Criminal)

Penal Code, §§ 1237, 1538.5(m).
Cal. Rules of Court, rule 30(b)

American LegalNet, Inc.

EXCERPTS OF RECORD p. 127

127

## THE STATE BAR OF CALIFORNIA

### COMPLAINT FORM
#### Read instructions before filling in this form.

Date _January 28, 2000_

(1)    Your name and address    _Dmitri Valleryevich Tatarinov_

_5790 Friars Road FB, San Diego CA 92110_

(2)    Telephone number:    Residence _619 574-1635_    Work _619 296-8123 (Patricia Jacks Tatarin_

(3)    The name, address and telephone number of the attorney being complained about.    (See note below.)

_Vladimir Verhovskoy #99039, Law Tech International P.O. Box 620129_

_San Diego CA 92162-0129    619 702-5852_

(4)    Have you or a member of your family complained about this attorney previously?
    Yes ____, No _X_. If yes, please state to whom the previous complaint was made, its approximate date and disposition.

(5)    Did you employ the attorney? Answer yes or no and, if "yes," give the approximate date you employed him or them and the amount, if any, paid to him.

_Yes - April 1996_

_Payments #20,045.75_

(6)    If your answer to 5 above is "no," what is your connection with the attorney?    Explain briefly.

(7)    Write out on a separate piece of paper and send with this form a statement of what the attorney did or did not do that you are complaining about.    Please state the facts as you understand them.    Do not include opinions or arguments.    If you employed the attorney, state what you employed him to do.    Sign and date such separate piece of paper.    Further information may be requested.    (Attach copies of pertaining documents.)

(8)    If your complaint is about a law suit, answer the following, if known:
    a.    Name of court (For example, Superior Court or Municipal - in what county)

_San Diego Superior and Municipal Courts_

    b.    Title of the suit (For example, Smith against Jones).

_People of the State of California v Dimitri Valeryevich Tatarinov 119330_
_People of the State of California v Dimitri V. Tatarinov M699836_
    c.    Number of the suit

    d.    Approximate date the suit was filed _August 1996, ~~Sept~~ August 1995_

    e.    If you are not a party to this suit, what is your connection with it? Explain briefly.

(9)    Size of law firm complained about (*)    1 Attorney _✓_    2 - 10 Attorneys ____    11 + Attorneys ____    Don't know ____

NOTE:  If you are complaining about more than one attorney, write out the information about each in answer to questions 3 through 8 above on separate sheets if necessary.

| Mail to: | (*) | Section 6095.1 of the Business and Professions Code mandates that the State Bar |
| --- | --- | --- |
| Office of the Chief Trial Counsel/Intake | | compile statistics concerning the size of the attorney's law firm – solo practitioner, |
| State Bar of California | | small law firm (2-10 attorneys) and large law firm (11+ attorneys). |
| 1149 South Hill Street | | |
| Los Angeles, California 90015-2299 | | Signature _____ |

#### EXCERPTS OF RECORD p. 128

_128_

**DMITRI VALLERVEICH TATARINOV**
**PATRICIA LYNN JACKS-TATARINOV**
5790 Friars Road F8
San Diego, CA 92110
619 574-1625

Complaint regarding
    Vladimir Verhovskoy Bar #97039
    Law Tech International
    P.O. Box 620129
    San Diego, CA 92162-0129

In April 1996 Vladimir Verhovskoy (Vladimir) was retained to represent Dmitri Tatarinov (Dmitri) in various criminal matters and in immigration matters as follows:

| | | |
|---|---|---|
| Immigration | | |
| JC Pennys | | |
| Target | M699836 | CA 126149 |
| Nordstroms | SCD 119330 | |

We (the Tatarinovs) believe that Vladimir violated the State Bar of California Ethical Code by accepting payment for services that he (Vladimir) did not perform.

| | |
|---|---|
| Exhibit 1: | Billing/retainer schedule by Vladimir |
| Exhibit 2: | Payments to Vladimir by the Tatarinovs - credit cards and checks |
| Exhibits 3 - 6: | Credit card payments to Vladimir |
| Exhibit 7 | Letter regarding billing (August 20, 1996) |

As indicated in the above Exhibits the Tatarinovs paid for the following services in advance.

| | |
|---|---|
| Immigration application | $ 675 |
| Target appeal | 2,500 |
| Nordstrom's appeal | 2,500 |
| | $5,675 |

The Target and Nordstrom appeals were to be filed in the fall of 1996.

| | |
|---|---|
| Exhibit 8: | Notice of appeal SCD 119330 (October 26, 1996) |
| Exhibit 9: | Motion to set aside dismissal 119330 (September 9, 1999) |
| Exhibit 10: | Motion to set aside dismissal M699836 (September 9, 1999) |
| Exhibit 11: | Order denying motion 119330 (September 24, 1999) |
| Exhibit 12: | Order denying motion M699836 (September 29, 1999) |

As indicated in the above Exhibits Vladimir did not file the briefs for the Target and Nordstrom appeals and therefore the appeals were disallowed.

Details:
When questioned through late fall of 1996 through the summer of 1998 about the status of the appeals we were given several different responses from Vladimir ranging from:

    "Appeals take several months"

Page 1 of 2

EXCERPTS OF RECORD p. 129

129

"Appeals can take years"
"The appeals court must believe we have some merit to the case as they have not responded"
"I will call and check the status"
"The court is still looking at the matter"

Having no legal background we believed Vladimir's statements. Some time during the summer of 1998 I (Mrs. Tatarinov) felt something was wrong so I called the San Diego Courthouse and spoke with someone in the records department. I was told that the appeals had not been filed. I asked what that meant and I was told that the Target and Nordstrom cases were not active. I immediately called Vladimir and he admitted that he had not filed the appeals. I told Vladimir he needed to tell my husband that he (Vladimir) had not filed the appeals. It took Vladimir several months to finally tell Dmitri that he had not filed the appeals. Vladimir stated that if Dmitri had not gotten arrested again the appeals would not matter. Because deportation proceedings were initiated against Dmitri, Vladimir filed motions in September 1999 (Exhibits 9 and 10) to reopen the appeals process.

Meanwhile in March or April of 1997 Dmitri was arrested again. When I (Mrs. Tatarinov) met with Vladimir the day after the arrest our conversation consisted of "The appeals were still in process" and because of Vladimir's "respect for me" he would take on this new case at no charge. I now believe the reason Vladimir took on the new case at no charge was because of Vladimir's default on the appeals - not out of "respect for me".

As indicated in Exhibit 2 (Payments to Verhovskoy) starting in January 1998 through November 2000 Vladimir requested various amounts of cash from us not representing legal fees. Vladimir stated the request for money was because he was short on cash. These payments were based on a loan request ($600) and monies for expenses (auto, printer cartridge, parking tickets and funds to pay his bills). As Vladimir was still representing us in the immigration case we felt we needed to pay his requests.

Lastly, On November 28, 2000 Vladimir made an additional request of funds for $500 which we paid him. On December 24, 2000 we received a letter (Exhibit 13) stating that Vladimir had resigned from our case(s). We have had no communication with Vladimir since that date.

On January 19, 2001 we received a copy of the State Bar of California's *Stipulation Form - Actual Suspension* indicating that Vladimir was "suspended from the practice of law in the State of California for a period of Sixty (60) days". It appears that this form was filed September 29, 2000. Vladimir last represented us in court before Immigration Judge Bartolomei on November 9, 2000. Question: Was he allowed to practice as an attorney at that time?

In conclusion, Vladimir was paid $5,000 to represent Dmitri Tatarinov in appeals for the Target and Nordstrom cases. Vladimir did not file the appeals timely therefore Dmitri's appeals were denied. Vladimir was paid $675 to represent Dmitri Tatarinov in the immigration matter. Vladimir withdrew from representing Dmitri in the immigration matter which is still pending (Pleadings to be filed February 7, 2001, Master Calendar hearing March 8, 2001). As far was we can tell the Immigration Judge has not been notified or asked for permission to withdraw. Besides the original agreed upon funds of $5,675, Vladimir has requested approximately $2,210 in additional funds not related to the above matters. We believe that Vladimir's conduct violates the State Bar of California Ethical Codes. We would like the State Bar of California to take action in this matter.

If you have any questions please contact us.

Sincerely,

Patricia and Dmitri Tatarinov

Page 2 of 2

130



**THE STATE BAR**
**OF CALIFORNIA**

1149 SOUTH HILL STREET, LOS ANGELES, CALIFORNIA 90015-2299

OFFICE OF THE CHIEF TRIAL COUNSEL
ENFORCEMENT

TELEPHONE: (213) 765-1000
TDD: (213) 765-1566
FAX: (213) 765-1383

DIRECT DIAL: (213) 765-1051

February 5, 2003

**PERSONAL AND CONFIDENTIAL**

Dmitri V. Tatarinov
5790 Friars Rd., F8
San Diego, CA  92110

Re:    Respondent:   Vladimir Verhovskoy
       Case Number: 01-O-00503

Dear Mr. Tatarinov:

The State Bar has actively prosecuted your complaint against the Respondent, Vladimir Verhovskoy, in the above-captioned matter, in which case you are named as the complainant. We write to advise that the disciplinary case settled, and on September 30, 2002, the State Bar and the Respondent signed a "Stipulation as to Facts, Conclusions of Law and Disposition re: Actual suspension, wherein the Respondent stipulated that certain violations were committed under the Rules of Professional Conduct.

The stipulation recommends that Respondent be suspended from the practice of law for a period of one hundred eighty days and be placed on probation for twenty-four months, subject to certain conditions.

Based upon the above, we are closing our files in regard to your case. On behalf of the State Bar, I wish to thank you for your invaluable assistance in reaching a successful resolution to this matter. As the agency responsible for handling complaints of misconduct on the part of attorneys, the State Bar depends on the active involvement of the public in bringing these matters to its attention.

Very truly yours,

Brooke A. Schafer
Deputy Trial Counsel

BAS/mrg

131

## ATTACHMENT TO

## STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION

IN THE MATTER OF: VLADIMIR VERHOVSKOY

CASE NUMBERS: 01-O-00503
and investigations no. 02-O-13951 & 02-O-14278

## FACTS AND CONCLUSIONS OF LAW.

Respondent admits that the following facts are true and that he is culpable of violations of the Rule of Professional Conduct as specified below.

### Jurisdiction

Respondent was admitted to practice law in California on February 6, 1981. He was at all times pertinent to the acts described herein, and is currently, a member of the State Bar of California.

### Case no. 01-O-00503 (Tatarinov)

1. On April 15, 1996, Respondent was employed by Dmitri Tatarinov ("Tatarinov") to represent him in legal matters including criminal defense and immigration cases. Tatarinov was not a U.S. citizen. Respondent received advance attorney fees to represent Tatarinov.

2. Also on April 15, 1996, Respondent substituted in as Tatarinov's attorney in San Diego County Superior Court, case number SCD 119330. Tatarinov had been charged with robbery and other crimes arising out of an incident at a Nordstrom store (the "Nordstrom case"). On or about August 9, 1996, the case was tried and the jury found Tatarinov guilty of second degree robbery, a conviction which subjected Tatarinov to possible deportation from the United States.

3. During the pendency of the Nordstrom case, Respondent had been working on clearing up Tatarinov's criminal record so that his client might avoid problems with the Immigration and Naturalization Service ("INS"). Respondent was able to vacate a petty theft conviction on

Page # 7

Attachment Page 1

132

Tatarinov's record. With respect to the new second-degree robbery conviction, however, Respondent believed that since a case on appeal could not be counted by the INS toward deportation purposes they would file an appeal based at least in part on jury instructions which were not given. On October 25, 1996, Respondent filed a Notice of Appeal of the Nordstrom case.

4.    Subsequent to filing the Notice of Appeal in the Nordstrom case the Reporter's Transcript and Record on Appeal were delivered. Respondent began to have doubts that an appeal was the proper way to proceed. His client had received a favorable sentence for the crime, and on remand or if they lost again after retrial Tatarinov could receive a higher sentence. More importantly, however, Respondent believed there was a better option with respect to the Nordstrom case. He felt that he could get the conviction reduced and perhaps even expunged due to efforts Respondent made to rehabilitate his client through community and church involvement. In order to take this route, however, the appeal would have to be abandoned and the underlying probation allowed to run out.

5.    Respondent made the decision to let the appeal of the Nordstrom case run without consulting Tatarinov. Respondent failed to prepare and file an opening appellate brief after receiving notice, and the Court of Appeal dismissed Tatarinov's appeal in the Nordstrom case on April 28, 1997. Notice of the dismissal was served on Respondent on April 29, 1997, and Respondent knew the Tatarinov appeal in the Nordstrom case had been dismissed that day. Respondent did not inform Tatarinov that the Nordstrom appeal had been dismissed. After the appeal had been dismissed Respondent repeatedly told Tatarinov that things were going well. Respondent reports that in his mind he was referring to the entire attempt to keep Tatarinov from being deported, whereas his client believed he was referring to the appeal itself.

6.    After the Nordstrom appeal had been dismissed, Respondent learned that Tatarinov had been charged with another crime. Given this change in circumstance, Respondent determined that Tatarinov's chances of defeating deportation would be better if the Nordstrom case were back on appeal, and so on September 9, 1999, he filed an untimely Motion to Set Aside Dismissal and to Reinstate Appeal. The motion to reinstate the appeal was filed more than two years after the appeal had been dismissed, and the Court of Appeals refused to reinstate.

7.    Respondent also represented Tatarinov with respect to a shoplift conviction involving a Target store, filed in San Diego County Municipal Court, case number M699839 (the "Target case"). Tatarinov had plead guilty to that crime before Respondent was hired. However, on or about August 14, 1996, Respondent filed a motion to vacate the guilty plea and for a writ of *coram*

---

Page #  8

Attachment Page 2

EXCERPTS OF RECORD p. 133

*nobis.* On October 23, 1996, the court denied the motion and writ and entered judgment against Tatarinov.

8.   Respondent filed a Notice of Appeal of the Target case on November 22, 1996. Respondent believed there was a potential appeal issue regarding failure of Tatarinov to have been fully apprized of the effects of a guilty plea upon his ability to remain in the country. Ultimately Respondent realized that he would not be able to prove that issue, but again, as a case on appeal could not be used for deportation purposes, he determined to let the appeal run. Thereafter, Respondent failed to prepare and file an opening brief in the case even though a "*Wende* brief" could have been filed to protect Tatarinov's rights. (*See People v. Wende* (1979) 25 Cal.3d 436 (a "*Wende* brief" is one in which the appellant's attorney believes there are no issues on appeal but requests the reviewing court to conduct a review of the entire record to determine any meritorious appeal issues).)

9.   On October 17, 1997, the Court dismissed the appeal due to Respondent's failure to file an opening brief. Respondent did not inform Tatarinov that he had decided to let the time for appeal run out, or that the appeal was dismissed.

10.  Respondent took no action to set aside the dismissal of the appeal of the Target case for nearly two years. As with the Nordstrom case, after Respondent learned of a new criminal charge against Tatarinov, Respondent decided that Tatarinov ultimately would fare better with respect to the INS matter if the case were back on appeal, and so on September 9, 1999, Respondent filed a motion to reinstate the appeal and to set aside the dismissal. Respondent's motion was denied.

<u>Conclusion of Law, case no. 01-O-00503</u> (Tatarinov)

By failing to prepare and file appellate briefs in the Nordstrom and Target cases, by not discussing the decision not to file the appeal in the Nordstrom case with his client, by not notifying Tatarinov that either appeal had been dismissed, by not filing *Wende* briefs to preserve his client's rights on appeal and by failing to timely seek to have the dismissals of the appeals set aside, Respondent repeatedly failed to perform legal services with competence, in violation of Rules of Professional Conduct, rule 3-110(A).

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

FILED
Stephen M Kelly, Clerk
JUN 1 2007
Court of Appeal Fourth District

THE PEOPLE,
Plaintiff and Respondent,
v.
DMITRI V. TATARINOV,
Defendant and Appellant.

D049763
San Diego County No. SCD135946
San Diego County No. SCD119330

THE COURT:

Respondent's motion to dismiss the appeal filed on May 18, 2007, and appellant's opposition to the motion filed on May 29, 2007, have been read and considered by Presiding Justice McConnell and Associate Justices McDonald and McIntyre. Respondent's motion to dismiss the appeal is GRANTED. The appeal is DISMISSED.

Appellant's request for judicial notice filed on February 5, 2007, is DENIED as moot.

_____
Presiding Justice

cc: All Parties

Court of Appeal, Fourth Appellate District, Div. 1 - No. D049763
**S153481**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

DMITRI V. TATARINOV, Defendant and Appellant.

The petition for review is denied.

SUPREME COURT
**FILED**

SEP 1 2 2007

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

DECLARATION OF SERVICE


Name  Patricia Jacks                              Case Number:

Address 450 B Street, Suite 1480

San Diego, CA 92101


I, undersigned, say: I am over 18 years of age, employed in the County of San Diego, California, in which county the within-mentioned delivery occurred, and not a party to the subject cause. My business address is 450 B Street, Suite 1480, San Diego, California. I served the MOTION UNDER 28 USC §2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDEAL CUSTODY and EXCERPTS OF RECORD - DMITRI V. TATARINOV of which a true and correct copy of the document filed in the cause is affixed, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:


Department of Justice, Office of Attorney General
110 West A Street, Suite 1100
PO Box 85266
San Diego, CA  92186-5266


Each envelope was then sealed and with the postage thereon fully prepaid deposited in the United States mail by me at San Diego, California, on _____.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _____, at San Diego, California.

_____

12