1
2
3
4
5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11
12
13

DMITRI VALLERVEICH TATARINOV,                )        No. 07cv2033 L (NLS)
[A72 779 308],                                             )
                                                                    )
                            Petitioner,                     )
                                                                    )
    v.                                                             )        **EXHIBITS**
                                                                    )
SUPERIOR COURT OF THE STATE         )
OF CALIFORNIA, COUNTY                       )
OF SAN DIEGO; et al.,                              )
                                                                    )
                            Respondents.                 )
_____ )

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Notice to Appear, filed with Immigration Court on June 24, 2998. . . . . . . . . . . . . . 1-2

Excerpt from transcript of proceeding before IJ on March 14, 2000. . . . . . . . . . . . . 3-4

Additional allegation and charge lodged on January 25, 2000 (Form I-261). . . . . 5-6

Additional allegation lodged on July 27, 2000 (Form I-261). . . . . . . . . . . . . . . . . . 7-8

IJ's December 13, 2001 decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-34

BIA's January 14, 2003 decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35-36

Magistrate Judge Benitez's Report and Recommendation

        in Tatarinov v. Superior Court of the State of California,

        02cv2029-W (BEN) (S.D. Cal.), filed April 2, 2003. . . . . . . . . . . . . . . . . 37-52

Judge Whelan's decision in  Tatarinov v. Ashcroft,

        No. 04cv2595-W (BLM) (S.D. Cal.), filed May 2, 2005. . . . . . . . . . . . . . 53-62

**U.S. Department of Justice**
Immigration and Naturalization Service

**Notice to Appear**

---

**In removal proceedings under section 240 of the Immigration and Nationality Act**

File No: A72 779 308

In the Matter of:

Respondent:  TATARINOV          DIMITRI, VALEREVEICH

880 FRONT ST. USINS SAN DIEGO, CA 92101

(619) 557-6011
(Number, street, city, state and ZIP code)          (Area code and phone number)

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

☐ 1. You are an arriving alien.

JUN 2 4 1998

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

FILED WITH
IMMIGRATION COURT
SAN DIEGO, CA

The Service alleges that you:

4.  You are not a citizen or national of the United States.
5.  You are a native of Russia and a citizen of Russia.
6.  On May 23, 1992, you were admitted to the United States at New York, NY on or about May 23, 1992 as a non-immigrant.
7.  On January 6, 1995, you were granted conditional resident status pursuant to the Immigration and Nationality Act, as amended.
8.  On August 30, 1995 you were convicted in Municipal Court, County of San Diego of the offense of THEFT OF PERSONAL PROPERTY/PETTY THEFT, in violation of Section 484(a)/488 of the California Penal Code.
9.  On August 12, 1996 you were convicted in Superior Court, County of San Diego of the offense of ROBBERY, in violation of Section 211 of the California Penal Code.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(A)(ii) of the of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8 CFR 208.30(f)(2)    ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: to be calendered and notice provided by the office of the Immigration Judge. Notice will be mailed to the address provided by the respondent

(Complete Address of Immigration Court, Including Room Number, if any)

on _____ at _____ to show why you should not be removed from the United States based on the
      (Date)                          (Time)

charge(s) set forth above.

Assistant District Director, Investigations
(Signature and Title of Issuing Officer)

Date:  April 13, 1998

San Diego, CA
(City and State)

JUN 0 3 1999

**See reverse for important information**

Form I-862 (Rev. 4-1-97)

000010

**See reverse for important information**

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge.

Before: _____
(Signature and Title of INS Officer)

_(Signature of Respondent)_

Date: 4/13/98

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW
JUN 2 4 1998
FILED WITH
IMMIGRATION COURT
SAN DIEGO, CA

---

**Certificate of Service**

This Notice to Appear was served on the respondent by me on _____April 13, 1998_____, in the following manner and in compliance with section 239(a)(1)(F) of the Act:
(Date)

☒ in person    ☐ by certified mail, return receipt requested    ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.

☑ The alien was provided oral notice in the _____ENGLISH_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
(Signature of Respondent if Personally Served)

_____
(Signature and Title of Officer)

2 / 000911

(

AMM

1    already in evidence.

2    JUDGE FOR THE RECORD

3           The respondent, through counsel, also filed a CBS News,

4    60 Minutes broadcast and transcript.  The Service has objected to

5    it based upon relevancy grounds.  I will note the Service's

6    objection, but I will receive the items into evidence as Exhibit

7    33.  They may have little bearing or may not have much weight,

8    but I will wait until I hear all of the evidence and argument

9    regarding the weight to which I should give the evidence, but it

10   will be received as Exhibit 33.

11          Exhibit 34 is the Court's interim order and the clerk's

12   cover letter, dated January 20, 2000 with the notice of hearing

13   rescheduling the hearing.  Exhibit 35 for identification purposes

14   only is the lodged charge with new factual allegation 10, and           ✳

15   then lastly, Exhibit 36 is the Service's pre-hearing statement

16   motion to admit documents in objection to the submission.  Let me

17   mark it as Exhibit 36 for identification.  It was filed on

18   January 25, 2000, and it does include a certificate of service.

19   JUDGE TO MR. VERHOVSKOY

20          Q.   Did the respondent receive his copy through you,

21   counsel?

22          A.   Yes, we did, Your Honor.

23          Q.   Very good.

24   JUDGE FOR THE RECORD

25          Let me receive it as Exhibit 36 in the case.

A 72 779 308                    57              March 14, 2000

3

000136

AMM

1    JUDGE TO MR. VERHOVSKOY

2        Q.   In terms of the lodged charge and the new factual

3    allegation, does the respondent acknowledge proper service of the

4    new factual allegation 10 and the lodged charge?

5        A.   We will acknowledge service.  We do object.  We'd

6    lodge an objection to it.

7    JUDGE FOR THE RECORD

8        Well, I will receive it into evidence as Exhibit 35 in

9    the case.

10   JUDGE TO MR. VERHOVSKOY

11       Q.   Have you explained to the respondent this new

12   factual allegation and the lodged charge?

13       A.   Yes.

14       Q.   And would you waive a reading by me to him of the

15   new factual allegation and the lodged charge?

16       A.   We waive the reading, Your Honor.

17       Q.   Very good.  So you're confident that he

18   understands the additional factual allegation and the lodged

19   charge?

20       A.   Yes.

21       Q.   In terms of your objection, counsel, it will be

22   noted but overruled.  The regulations give the Immigration

23   Service the unfettered right to lodge a new charge at any time.

24   JUDGE FOR THE RECORD

25       That brings the record up to date.

A 72 779 308                    58                    March 14, 2000

4

# Additional Charges of Admissibility/Deportability

In: ☒ Removal proceedings under section 240 of the Immigration and Nationality Act

☐ Deportation proceedings commenced prior to April 1, 1997 under former section 242 of the Immigration and Nationality Act

**In the Matter of:**

Alien/Respondent: <u>Valereveich Tatarinov-Dimitri</u>

File No: <u>A72 779 308</u>    Address: <u>c/o Vladimir Verhovskov, Esq.P.O. Box 620129 San Diego, CA. 92162</u>

There is/are hereby lodged against you the additional charge(s) that you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(A)(I)— Within five after your date of admission into the United States, you were convicted of a crime involving moral turpitude for which a sentence of one year or more could have been imposed. (i.e. you were admitted on 5/22/92 as a non-immigrant and were later convicted of ROBBERY, in violation of section 211 of the Cal. Penal Code, on 8/12/96).

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

JAN 2 5 2000

IMMIGRATION COURT
SAN DIEGO, CA

In support of the additional charge(s) there is submitted the following factual allegation(s) ☒ in addition to ☐ in lieu of those set forth in the original charging document:

10. The above offenses did not arise out of a single scheme of criminal misconduct.

Dated: 1/25/00    _____
(Signature of Service Counsel)

Additional allegations (continued):

---

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the charging document and that you are inadmissible or deportable on the charges contained in the charging document. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Certificate of Service

This charging document was served on the respondent by me on ____ 1/25/06 , in the following manner and in
                                                         (Date)

compliance with section 239(a)(1)(F) of the Act:

☐ in person        ☐ by certified mail, return receipt requested        ☑ by regular mail

to: _Vladimir Verkoshny, Esq   P.O. Box 620129 , San Diego, CA. 92162_
                              (Alien's address)

☐ The alien was provided oral notice in the _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____          _____
(Signature of respondent if personally served)          (Signature and title of officer)

U.S. Department of Justice
Immigration and Naturalization Service   ● **Additional Charges of I    missibility/Deportability**

In:   ☒ **Removal proceedings under section 240 of the Immigration and Nationality Act**

      ☐ **Deportation proceedings commenced prior to April 1, 1997 under former section 242 of the Immigration and Nationality Act**

**In the Matter of:**

Alien/Respondent: <u>Dmitri V. Tatarinov</u>

File No: <u>A72 779 308</u>   Address: <u>c/o Vladimir Verhovsdoy, P.O. Box 620129, San Diego, CA 92162-0129</u>

There is/are hereby lodged against you the additional charge(s) that you are subject to being taken into custody and deported or removed from the United States pursuant to the following provision(s) of law:

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW

JUL 2 7 2000

FILED WITH
IMMIGRATION COURT
SAN DIEGO, CA

In support of the additional charge(s) there is submitted the following factual allegation(s) ☒ in addition to ☐ in lieu of those set forth in the original charging document:

9
11)   ~~10)~~ On or about ~~June 9, 2000,~~ January 6, 1995 your status was adjusted to that of a Lawful Permanent Resident.

43

JUL 2 7 2000 ◁

Dated: <u>7/27/00</u>

(Signature of Service Counsel)

Form I-261(Rev. 4/1/97)N

000593

- Additional allegations (continued):

---

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case. If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the charging document and that you are inadmissible or deportable on the charges contained in the charging document. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Certificate of Service

This charging document was served on the respondent by me on <u>7/27/00</u>, in the following manner and in
(Date)

compliance with section 239(a)(1)(F) of the Act:

☒ in person          ☐ by certified mail, return receipt requested          ☐ by regular mail

to: Dmitri V. Tatarinov, C/O Vladimir Verhovsdoy, P.O. Box 620129, San Diego, Ca 92162-0129
(Alien's address)

☐ The alien was provided oral notice in the ____NA____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____          _____
(Signature of respondent if personally served)          (Signature and title of officer)

Form I-261(Rev. 4/1/97)N

IMMIGRATION COURT
401 WEST A STREET, SUITE #800
SAN DIEGO, CA 92101-7904

In the Matter of

                                    Case No.: A72-779-308

TATARINOV-DIMITRI, VALEREVEICH
        Respondent                  IN REMOVAL PROCEEDINGS

            ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Dec 13, 2001.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[*] The respondent was ordered removed from the United States to _Russia_.
                                    ~~or in the alternative to~~ ∅

[*] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to _Russia_.
    ~~alternative to~~ ∅

[——] Respondent's application for voluntary departure was granted until
      _____ upon posting a bond in the amount of $ _____
    with an alternate order of removal to

[*] Respondent's application for asylum was ( )granted (*)denied
    ( )withdrawn.

[*] Respondent's application for withholding of removal was ( )granted
    (*)denied ( )withdrawn, _including benefits under the Convention against Torture_.

[*] Respondent's application for cancellation of removal under section
    240A(a) was ( )granted (*)denied ( )withdrawn.

[——] Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)   ( ) granted under section 240A(b)(2)
    ( ) denied ( ) withdrawn. If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.

[*] Respondent's application for a waiver under section _212(h)_ _and 212(c)_ of the INA was
    ( )granted (*)denied ( )withdrawn or ( )other.

[*] Respondent's application for adjustment of status under section _245 + 212_ (h)
    of the INA was ( )granted (*)denied ( )withdrawn. If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.

[——] Respondent's status was rescinded under section 246.

[ ] Respondent is admitted to the United States as a _____ until _____.

[ ] As a condition of admission, respondent is to post a $ _____ bond.

[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.

[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.

[——] Proceedings were terminated.

[*] Other: _R has reserved appeal which must be properly filed w/ the BIA on or before JAN 14, 2002_

    Date: Dec 13, 2001            _1/14/02_
    Appeal: (Waived) (Reserved)  Appeal Due By: _____
            └INS              └By R only
             only

                                    RICO J. BARTOLOMEI
                                    Immigration Judge

GSD

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
SAN DIEGO, CALIFORNIA

File No.: A 72 779 308                    December 13, 2001

In the Matter of

DIMITRI VALEREVEICH TATARINOV,    )          IN REMOVAL PROCEEDINGS
                                  )
          Respondent              )

CHARGE:        Section 237(a)(2)(A)(ii) of the I&N Act (any time
               after admission, convicted of two crimes involving
               moral turpitude not arising out of a single scheme
               of criminal misconduct).

LODGED CHARGE: Section 237(a)(2)(A)(i) of the I&N Act (convicted
               of a crime involving moral turpitude for which a
               sentence of one year or more could have been
               imposed).

APPLICATIONS:  Termination; asylum; withholding of removal;
               benefits under the United Nations Torture
               Convention; former waiver of inadmissability under
               Section 212(c) of the Act; adjustment of status
               under Section 245(a) in conjunction with a waiver
               under Section 212(h) of the Act; voluntary
               departure at the conclusion of the removal
               proceedings under Section 240(B)(b) of the Act.


ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

James R. Patterson, Esquire       Janet Muller, Esquire
110 W. C St., Suite 905           880 Front St., Suite 1234
San Diego, California 92101       San Diego, California 92101


ORAL DECISION OF THE IMMIGRATION JUDGE

         The respondent, a 35-year-old native and citizen of the

former Soviet Union now Russia, first came to the United States

10

AMM

as a non-immigrant on or about May 23, 1992. Subsequently to his admission he married a United States citizen who filed a visa petition on his behalf. The visa petition was ultimately approved conferring upon the respondent lawful permanent resident status as of January 6, 1995.

The respondent suffered three criminal convictions in the United States subsequent to his admission. As a consequence, on April 13, 1998, the Immigration and Naturalization Service issued to him a Notice to Appear (Form I-862) (Exhibit 1). The charging document was filed with the Court in San Diego, California on June 24, 1998, vesting this Court with jurisdiction over the respondent's case.



The procedural history of the case is familiar to both parties. Therefore, the Court will not repeat it in detail in this oral decision. The respondent, through his first attorney, admitted to the truth of factual allegations that he is not a citizen or national of the United States, but a native and citizen of the country of Russia, who was admitted to this country as a visitor on or about May 23, 1992.

The respondent ultimately admitted that he is a lawful permanent resident of the United States. Part of the reason why the case proceeded at a patient pace was because it was not clear whether the respondent was a conditional resident or a lawful permanent resident until well after the initiation of the proceedings. It is established and was established that the

AMM

respondent is a lawful permanent resident of the United States.

The respondent denied that he was deportable from the United States. He specifically contested the existence of the convictions that were alleged against him. He contested removability not only under the original charge, but also under the lodged charge.

In terms of a designation of a country for removal purposes, initially the respondent attempted to name Canada as a country for removal purposes. Ultimately though he did not press that issue and withdrew an effort to designate a contiguous country to which he was not a resident and had absolutely no ties. Instead, the respondent declined to name a country. He informed the Court that he would be seeking relief in the form of asylum, withholding of removal, benefits under the United Nations Torture Convention, a waiver of inadmissability under former Section 212(c) of the Act, adjustment of status under Section 245(a), and a waiver of inadmissability under Section 212(h), and post-conclusion voluntary departure under Section 240(B)(b) of the Act.

Given the complexity of the issues, the Court will address them one at a time beginning first with the issue of removability.

I. Removability

Ultimately there is no dispute that the respondent suffered a conviction in municipal court for theft of personal 

A 72 779 308                    3                    December 13, 2001

12

AMM

property/petty theft in violation of Section 484(a)/488 of the California Penal Code on August 30, 1995. The Immigration and Naturalization Service has filed with the Court the conviction documents which support this conviction (Exhibit 16). The conviction document itself is a certified copy, and it does comport with the requirements of the Act. In addition, the Service has filed with the Court evidence demonstrating that the respondent suffered a conviction for robbery in violation of Section 211 of the California Penal Code on August 12, 1996 (Exhibit 12). In addition, the Service has given to the Court a certified copy showing that the respondent plead guilty to violation of California Penal Code Section 484 on September 8, 1996 (Exhibit 17).

The respondent's three convictions are ones which involve moral turpitude. The conviction that he suffered for robbery under Section 211 is one for which a sentence of more than one year could have been imposed. The Immigration and Naturalization Service has established by clear and convincing evidence as required that the charge under Section 237(a)(2)(A)(i) of the Act is sustained as it was a conviction suffered within five years of the respondent's admission as a non-immigrant. The Court finds that the Service has carried its burden of proof to establish that charge.

The respondent's main challenge to that charge was the fact that he is seeking several pardons of his convictions with

A 72 779 308                    4                    December 13, 2001

AMM

the governor of the State of California and the former President of the United States. Without citing the statute, it is clear that if the respondent had received a pardon from either the governor of the State of California or the President of the United States, he would not be removable for the pardoned offense. While the former President of the United States did grant many pardons before he left office, he did not see it fit to apparently grant the respondent's plea for such a remedy. As such, the respondent is removable under the lodged charge as no evidence has been presented to show that he has been pardoned for the offense.

In addition, the Service has established evidence showing that the respondent suffered all three convictions. These convictions arose not out of a single scheme of criminal misconduct, but on different days and different times and different places. The respondent did admit to factual allegation 10. He did not receive a pardon for any of these offenses. The Court concludes that the Service has established by clear and convincing evidence that the respondent is removable under the original charge as well.

The other contest that the respondent brings to the charges of removability invite this Court to go behind the records of conviction to reassess his guilt or innocence or to find some defenses which, if they existed, would have been within the sole purview of the criminal court. It is well-settled that

A 72 779 308                     5.                     December 13, 2001

*14*

AMM

an immigration judge cannot go behind the records of conviction to assess or reassess guilt or innocence or address any other defenses that would have existed or could have existed under State law.  The Court finds that the respondent is removable as charged and will focus its attention on relief.

## II.  Asylum, withholding of removal, benefits under the United Nations Torture Convention.

To be eligible for withholding of removal under Section 241(b)(3)(A) of the Act, a respondent's facts must show a clear probability of persecution in the country designated for removal on account of race, religion, nationality, membership in a particular social group, or political opinion.  See INS v. Stevic, 467 U.S. 407 (1984).  This means that the respondent's facts must establish that it is more likely than not that he would be subject to persecution for one of the grounds specified.

To establish eligibility for asylum under Section 208(a) of the Act, the respondent must meet the definition of a "refugee" which requires him to show persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  The burden of proof required to establish withholding of removal is greater than that required for asylum with noted exceptions that have resulted from Congress' amendments to the Act by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) which need not be

A 72 779 308                    6                    December 13, 2001

*15*

AMM

mentioned further in this decision.

An asylum applicant can establish that his fear is "well-founded" if he shows that a reasonable person in his circumstances would fear persecution.  Further, asylum, unlike withholding of removal, may be denied in the exercise of discretion to a respondent who establishes his statutory eligibility for the relief.

An asylum applicant under Section 208(a) of the Act may establish his claim by presenting evidence of past persecution in lieu of evidence of a well-founded fear of persecution.  See Matter of H-, 21 I&N Dec. 337 (BIA 1996); Matter of B-, 21 I&N Dec. 66 (BIA 1995); Matter of D-V-, 21 I&N Dec. 77 (BIA 1993); Matter of Chen, 20 I&N Dec. 16 (BIA 1989).  If the respondent does not show past persecution, he can present evidence of a well-founded fear of persecution in attempting to establish that a reasonable person in his circumstances would fear harm if returned to the country from which he faces return.  There must be a reasonable possibility of actually suffering such persecution.

The asylum applicant must show that his fear of returning is both subjectively genuine and objectively reasonable.  The objective component requires a showing by credible, direct, and specific evidence in the record of facts that support a reasonable fear that the asylum applicant faces persecution.  See Diaz-Escobar v. INS, 782 F.2nd 1488 (9th Cir.

A 72 779 308                    7                    December 13, 2001

*16*

AMM

1986).

As instructed by the Supreme Court and as further expanded upon by the Board of Immigration Appeals, it is incumbent upon an asylum applicant to show that the "fear" of harm is "on account" one of the five statutorily enumerated grounds. See INS v. Elias-Zacarias, 504 U.S. 478 (1992); Matter of H-, supra. The burden of proof to establish eligibility rests squarely with the respondent. He can meet his burden of proof through his own testimony if he provides a plausible, credible, and detailed account for the basis of his fear of returning in light of evidence of country conditions. See Lopez-Reyes v. INS, 79 F.3d 908 (9th Cir. 1996); Matter of M-D-, 21 I&N Dec. 1180 (BIA 1998); Matter of A-S-, 21 I&N Dec. 1106 (BIA 1998).

The initial question for purposes of asylum and all forms of relief is the respondent's credibility. Without going into detail regarding the various precedent decisions within the United States Court of Appeals or the Ninth Circuit, the jurisdiction in which this cases arises, the import of the case suggests that if the Court does not make an adverse credibility finding, then the respondent's evidence is deemed to be credible, that is the events occurred as the respondent said that they had occurred.

There certainly is a basis for questioning the respondent's credibility in this case. The respondent relatively close in time to his arrival here in the United States filed an

A 72 779 308                    8                 December 13, 2001

17

AMM

application for asylum with the Immigration and Naturalization Service (Exhibit 36, at Tab A). The application indicates that the respondent signed it under the penalties of perjury on November 17, 1992. The respondent explains that this application was prepared by friends who asked him questions, completed the application, and asked him to sign where they directed him to sign. The respondent told this Court that he did not understand what was written in the application. He was never called to explain the contents of his application. The application suggests that the basis for the respondent's fear of returning to Russia was on account of his religion.

It would seem that the Court should be able to give weight to portions of the respondent's testimony, give less weight to others, and give weight to other portions as a typical trier of fact might do in a proceeding in which the burden of proof is higher than it would seem to be in removal proceedings. Nevertheless, the Court cannot do so under the prevailing law. It must either accept the respondent's testimony as stated or conclude that none of the testimony should be believed except for perhaps the purposes of benefits under the United Nations Torture Convention.

Following that precedent, the Court concludes that while there are concerns with the respondent's credibility and less weight should be given to certain evidence than other evidence, overall the respondent's account given here in court

A 72 779 308                    9                   December 13, 2001

18

AMM

has been generally credible.

The respondent testified that he left Russia in part because of a threat that occurred to the company at which he was working.  He explained that he was considered a highly educated person who had significant a modicum of wealth for his age in Russia.  He was considered a middle to high-level manager of a factory involved with automobiles.  He explained that one day when he went to work, he was visited by four people.  He believed that these four people wanted to extort money from him in the factory.  These individuals demanded the respondent pay them 40,000 rubles.  He had been working at the factory for five years.  This was apparently the first time that this had occurred.  He told them that he did not have that kind of money with him, and he would not be able to pay the money.  They told him that he did need to have a package with the money for them. If he did not, he would be "playing with fire."

The respondent perceived that statement to be a serious threat.  He feared that these four individuals belonged to an organized criminal element.  He believes that these individuals were the same individuals who appeared later to torch his supervisor's automobile.  His supervisor's automobile was burned. The respondent believes that the automobile was fire-bombed at the facility by the elements of organized crime because of the refusal to pay the 40,000 rubles.

At least four individuals appeared to the respondent's

A 72 779 308                    10.            December 13, 2001



AMM

home.  Two individuals knocked on the front door, and his younger brother answered the door.  These individuals were asking for the respondent.  They asked his brother where the respondent and when he would be coming home.  The brother apparently replied that he didn't know where the respondent.  He believed him to be at work, and he did not know when the respondent would return.  He spoke to these two individuals through a window while apparently two other individuals remained at the door.  These individuals remained outside because his mother saw them parked out front when she returned from work.  The respondent learned of this when he himself returned home.  His mother told him of the events and told him that his brother Sergei was scared.

The respondent seemed inconsistent regarding his explanation as to why he did not go to the police.  When asked, he stated that it never crossed him mind to go to the police. Then later the respondent explained that he could not go to the police unless a crime had been committed.  His attorney clarified and the respondent did understand that it was a serious threat, but he could not take such a threat to the police.

It was these events and the respondent's desire to come to the United States which motivated him to leave.  It was not clear whether he intended to remain in this country.  Once he did arrive here, he sought asylum, but that asylum application according to the respondent today does not contain correct information.  The respondent did make plans to return to Russia

A 72 779 308                    11 . ,           December 13, 2001

*20*

AMM

to visit his mother, but did not follow through with those plans because of the problems that arose after his arrival.

He is afraid to go back to Russia today because he believes that he will be viewed as a common criminal and would be punished because of that. He also does not want to become involved in a society in which extortion is a part of life. He considers himself to be an individual with above average income and in some type of middle lever supervisory capacity in a successful business. He contends that he is a social group, that he would be targeted because he would be considered a member of that social group.

The Court concludes that the respondent has not established that he has suffered past persecution or that he has a well-founded fear of persecution on account of any of the enumerated grounds. Because the Court makes that specific conclusion, it does not reach the question of whether the respondent's convictions are particularly serious crimes that would disqualify him from receiving asylum. The Court would simply note that the respondent's pre-hearing statement (Exhibit 69) is a correct statement of the law the Court would have to follow, and according to <u>Matter of Juarez</u>, 19 I&N Dec. 664 (BIA 1982), these convictions would not likely to be considered as particularly serious crimes. Although, as the Court will highlight for discretion, they are considered very serious by this Court in terms of any discretionary analysis.

A 72 779 308                    12 .                    December 13, 2001

21

AMM

The respondent has not established that he has suffered past persecution. During all of his time in Russia, he received one threat. The threat itself was not directed specifically towards the respondent. The threat was a veiled threat and seemed to be made to the company itself and not personally to the respondent. The burning of the car is not an event that took place directly to the respondent, but instead was directed towards Uri who remains in Russia in the same capacity. In addition, the respondent testified that some meeting took place in which the respondent was present for the first 30 minutes but left, and the meeting resulted in the elimination of any future threats. This event as described then by the respondent would not constitute "past persecution" as that term is understood within this circuit. While it is something that is a criminal incident, it is not one which would rise to the level of past persecution.

In addition, the respondent has not established his membership in a particular social group. He contends to the Court that the social group should be defined as "an individual with above average income in a supervisory capacity in a successful business." The Board of Immigration Appeals in <u>Matter of Kasinga</u>, 21 I&N Dec. 357 (BIA 1996) revisited the question of a "particular social group" in trying to determine whether young women of the Chamba-Kunsunta tribe who have not had female genital mutilation practiced upon them by that tribe and who

22

AMM

opposed that practice was a particular social group. Here the respondent's definition of a social group is not defined by a common characteristic that members of the group either cannot change or should not be required to change because such characteristics are fundamental to their individual identities.

The possible social group of individuals with above average income and supervisory capacities in successful businesses could actually be anyone who considers themselves from a middle economic class. It does not fall within the parameters of a characteristic that members of the group cannot change. An individual can change his business. He can change his socio-economic stature. The respondent simply has not shown it is a particular social group.

There's also a sense in which the respondent offers a second social group which is seemingly incongruous to the group defined above. He defines a second social group as a "common criminal who would be deported from the United States to Russia." He believes that he would face harm from the Russian government if he were sent from the United States to Russia because he believes the Russian authorities would find out of his criminal record. It would seem that if they would find out about his criminal record in the United States, then he would not be considered an individual with above average income in a supervisory capacity in a successful business.

Nevertheless, the respondent has stated without any

A 72 779 308                    14 .                    December 13, 2001

23

AMM

support that he believes he lost his Russian citizenship.  The
documents offered suggest otherwise.  Indeed, during argument the
Court agree with his argument that he would still likely be
considered a Russian citizen in the end, but there is no evidence
which would show that the Russian government would learn of his
record here in the United States particularly since he has sought
asylum in this country and that is something which by law cannot
be revealed to the foreign government.  In addition, no evidence
offered shows that he would be punished because of that by the
Russian government.

          To the extent that the respondent contends that he
would suffer future persecution in Russia on account of a
political opinion, and the respondent would compare his situation
to the respondent's situation in <u>Desir v. Ilchert</u>, 840 F.2nd 723
(9th Cir. 1988).  He has not carried his burden of proof to show
that the "cleptocracy" that existed in Haiti is the same that the
respondent faced in Russia or would face if he to go to that
country.  The respondent also has not established that the
Russian government would be unable or unwilling to try to control
the extortion that exists in the country.

          The respondent has provided evidence showing that
extortion does exist in Russia.  However, the United States
Department of State Country Report for the practices for 1998
describes that in 1997, for example, the equivalent of the
Attorney General's office received 27,155 complaints about police

A 72 779 308                    15                December 13, 2001

24

AMM

actions and in 17,850 of the cases, the accusations against the

officers led to convictions or official reprimands.  (Exhibit 32,

at B.6).  The respondent has not shown a fear of harm from a

group that the government of Russia would be unwilling or unable

to control.

The respondent has not carried his burden of proof to

show his eligibility for asylum because he has not established he

suffered past persecution or that he has a well-founded fear of

persecution on any of the five enumerated grounds from a group

that the government would be unwilling or unable to control.

Accordingly, his application for asylum is denied as a matter of

law.

In terms of discretion, the Court does not resolve that

issue today except to highlight that there are serious

discretionary concerns.  The respondent filed an application for

asylum which he admits today does not contain truthful

information.  It is a serious incident.  It is the type of act

which clogs the Immigration Service from prompt adjudications

since so many people file asylum applications.  In addition, the

respondent has suffered three convictions.  The 1996 conviction

involves an altercation.  These are serious concerns.

The respondent does though have a tremendous favorable

factor to consider on his behalf, and that is the loyalty of his

United States citizen spouse who has stood behind the respondent

throughout all of these problems which occurred after their

A 72 779 308                    16 .              December 13, 2001

AMM

marriage. The Court has read carefully the respondent's spouse's letter (Exhibit 27), in which on August 19, 1996 she wrote to J.C. Penney explaining the impact that the respondent's actions have had on her, their marriage, and the respondent's future in this country. It is a moving letter describing her state of mind in 1996 and appears to carry forward to the present as the impact that this is having upon her. The Court needed resolve the question of discretion since it is clear, as stated above, that the respondent has not carried his statutory burden of proof for asylum.

Inasmuch as the respondent has failed to meet the lesser burden of proof required for asylum, it follows that he has not carried the stricter burden of proof for withholding of removal to Russia. His application for withholding of removal to Russia is denied.

Likewise, the respondent has not carried his burden of proof to show that it is more likely than not that he would suffer torture if he has to be removed from the United States to Russia. See Matter of S-V-, Int. Dec. 3430 (BIA 2000). Indeed, the respondent's mother, brother, and former bosses all have remained in Russia without any type of apparent harm that would be considered either persecution or torture. His application for benefits under the United Nations Torture Convention is denied for his failure to carry his burden of proof.

*26*

AMM

### III. Cancellation of removal for certain permanent residents under Section 240(A)(a) and the waiver of inadmissability under former Section 212(c) of the Act.

The respondent seeks cancellation of removal for certain permanent residents under Section 240(A)(a) of the Act. The respondent, however, cannot establish that he has lawfully resided continuously in the United States for seven years immediately preceding the date of the initiation of proceedings to remove him from the United States. The Notice to Appear was served on the respondent on April 13, 1998. It initiated the proceedings against the respondent. While the respondent continues to accrue five years as a permanent resident and will likely meet that requirement early next year. If a timely appeal is taken by either party to the Court's decision, he still would not have the seven years after having been admitted in any status.

Under Section 240(A)(d)(1), certain events terminate the continuity of presence in the United States, including service of the Notice to Appear. In this case, the service of the Notice to Appear at least would be a stop-time event as of April 13, 1992. As the respondent entered on May 23, 1992, he cannot prove that he had lawfully resided continuously for seven years after having been admitted in any status. He cannot show continuous residence from or before April 13, 1991. His application for cancellation of removal for certain permanent

A 72 779 308                    18                    December 13, 2001

*27*

AMM

residents must be denied as a matter of law.  See Section
240(A)(a)(2) of the Act.

The respondent also seeks the former waiver of
inadmissability under Section 212(c) either separate from
cancellation of removal for certain permanent residents and/or in
conjunction with cancellation of removal under Section 240(A)(a)
of the Act.  The respondent pointed to specific cases within the
United States Court of Appeals for the Ninth Circuit, the
jurisdiction in which this case arises.

He also points to the Supreme Court's decision in St.
Cyr v. INS, 121 S.CT 2271 (2001).  There are many reasons why St.
Cyr does not apply in this case, and the Court implores the Board
of Immigration Appeals to examine the record carefully before
considering any type of remand solely for the applicability of
that specific issue.

First, all of the cases that have addressed the impact
of convictions preceding either AEDPA or IIRIRA have been
convictions which the respondent has plead guilty.  In this case,
the respondent's 1996 conviction under penal code Section 211 was
after a trial by jury.  None of the cases cited by the respondent
in the arguments that he has made do not address the situation
where a person is found guilty of an offense which predates
IIRIRA and has said that that should apply.  In fact, all of the
cases seems to stand for a contrary proposition, and that is
where the respondent has plead guilty in part relying on the fact

A 72 779 308                    19                   December 13, 2001

*28*

AMM

that 212(c) would be an available remedy.

Also, it is clear that the respondent has a post-IIRIRA conviction, the conviction in 1998. That alone would again take the case from any St. Cyr type of analysis. In addition, in the respondent's plea of guilty for the first offense and the last offense, he was not and would not be eligible for the waiver of inadmissability under Section 212(c) of the Act even if the law had never changed. As the Court sits here today and if I were to close my eyes and not see any type of IIRIRA, the respondent would not be eligible even for the waiver of inadmissability under Section 212(c) of the Act had there not been any amendments.

In this Court's humble opinion, it would take a very contorted application of the Supreme Court's decision or applications of different provisions of law to construe them in such a way that the respondent could be eligible for the waiver under Section 212(c) of the Act, but then again, certain unpublished decisions have been returned which might perhaps suggest such a reading. On this record though it is clear that the respondent does not qualify for the former waiver of inadmissability under Section 212(c) of the Act as that is construed by the Supreme Court's decision in St. Cyr. Accordingly, his application for this form of relief are denied.

IV. Section 245(a) in conjunction with Section 212(h) of the Act.

The respondent also seeks adjustment of status in

29

AMM

conjunction with a 212(h) waiver.  The respondent would seemingly be eligible but for the waiver under Section 212(h) of the Act, but he is ineligible for this waiver because he has not lawfully resided continuously in the United States for seven years immediately preceding the date of the initiation of the proceedings to remove him from the United States.  He acknowledges that provision of law, but argues that it violates notions of equal protection, and he should be afforded the opportunity to pursue the waiver.

This Court is without any jurisdiction whatsoever to pass on the constitutionality of the Act and law that it is required to administer.  It must follow the statute as the statute is written.  As the statute is written, the respondent simply would not qualify.  The Court also points out that the United States Court of Appeals recently had addressed the equal protection arguments which are raised here and decided against the respondent.  See Finau v. INS, 270 F.3d 859 (9th Cir. 2001); see also Moore v. INS, 251 F.3d 919 (11th Cir. 2001).  The respondent's applications for adjustment of status in conjunction with the 212(h) waiver are denied.

V. Voluntary departure at the conclusion of proceedings under Section 240(B)(b) of the Act.

The respondent seeks at the conclusion of the proceedings voluntary departure under Section 240(B)(b)(1) of the Act.  The respondent can meet three components of post-conclusion

A 72 779 308                    21                December 13, 2001

AMM

voluntary departure.  He can established that he is not
disqualified outright under one of the grounds which are
enumerated under subsection (C) of Section 240(B)(b)(1).  Also he
can establish his physical presence and that he would depart the
United States.

The respondent as of today's date cannot establish that
he has been a person of good moral character for the five years
immediately preceding his application for voluntary departure.
His 1998 conviction coupled with the prior convictions
demonstrate that the respondent falls within the individuals
listed under Section 101(f)(3) and therefore cannot establish the
requisite good moral character.  The Court is aware with the
passage of time that the respondent could at some future point
show the requisite moral character.

If that should become the case and if it were to come
down to a question of discretion for voluntary departure, the
Court would be inclined to grant him the minimal form of relief
of voluntary departure with a significant bond greater than the
minimum $500 amount with the maximum period as a matter of
discretion.  While the respondent's convictions are serious and
are not to be diminished, the respondent's spouse who has stood
by him throughout these travails would merit that the respondent
be given this minimal form of relief to preserve any future
opportunities that her spouse, the respondent, might have to be
reunited with her without having to face the stigma of the formal

A 72 779 308                    22                 December 13, 2001

AMM

order of removal.  This Court is very mindful that the Board of Immigration Appeals has de novo review, and if the Board of Immigration Appeals is faced with the situation where the respondent can show good moral character given the passage of time that might occur through any type of appellate review, it certainly can exercise such power in making its independent determination regarding the question of post-conclusion voluntary departure.

At this juncture though the respondent simply cannot show his statutory eligibility for the minimal relief, and therefore, this Court must deny it.

*32*

AMM

<u>ORDERS</u>

IT IS HEREBY ORDERED that the respondent's applications for asylum, withholding of removal, benefits under the United Nations Torture Convention, cancellation of removal for certain permanent residents, waiver of inadmissability under former Section 212(c) of the Act, adjustment of status in conjunction with the waiver under Section 212(h) of the Act, and voluntary departure at the conclusion of the removal proceeding be in and are hereby denied.

IT IS FURTHER ORDERED that the respondent be removed from the United States to Russia based upon the original and the lodged charge brought against him.


RICO J. BARTOLOMEI
United States Immigration Judge

A 72 779 308                    24                    December 13, 2001

<u>CERTIFICATE PAGE</u>

I hereby certify that the attached proceeding before RICO J.

BARTOLOMEI, in the matter of:

DIMITRI VALEREVEICH TATARINOV

A 72 779 308

San Diego, California

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.


*Amanda M. Malek*
Amanda M. Malek, Transcriber


Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland  20852
(301) 881-3344


May 5, 2002
       (Completion Date)

34



**U.S. Department of Ju**

Executive Office for In      ration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Patterson, James R., Esq.
110 West C Street
Suite 905
San Diego,  CA  92101

Office of the District Counsel/SN
880 Front St., Room 1234
San Diego, CA  92101-8834

**Name: TATARINOV-DIMITRI, VALEREVEICH**          A72-779-308

<u>Date</u> of this notice: 01/14/2003

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
        VILLAGELIU, GUS

DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW
JAN 1 6 2003
IMMIGRATION COURT
SAN DIEGO, CA

*35*

000001

U.S. Department of Justice                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A72-779-308 - San Diego                         Date: JAN 14 2003

In re:  TATARINOV-DIMITRI, VALEREVEICH

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Patterson, James R., Esq.

ON BEHALF OF SERVICE:  Janet Muller, Assistant District Counsel

ORDER:

   PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The
decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 3.1(e)(4).

_____
FOR THE BOARD

*36*

000002

FILED

03 APR -2 PM 1:58

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRI V. TATARINOV, | Civil No. 02cv2029-W (BEN) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| SUPERIOR COURT OF THE STATE OF | **RE: GRANTING MOTION TO** |
| CALIFORNIA, COUNTY OF SAN | **DISMISS PETITION FOR WRIT OF** |
| DIEGO, | **HABEAS CORPUS** |
| Respondent. | |

## I.  INTRODUCTION

Petitioner, Dimitri V. Tatarinov, was tried by a jury in August, 1996 and convicted of second degree robbery. He was sentenced to probation which terminated on October 18, 2002, after the filing of his habeas petition.

Although never incarcerated for the crime, Tatarinov now seeks federal habeas corpus relief from the lingering effects of his conviction pursuant to 28 U.S.C. § 2254. He alleges a single ground for relief.  Specifically, he alleges the trial court committed reversible error in giving a jury instruction on self-defense which could have been remedied on appeal.  However, he received ineffective assistance of appellate counsel when his retained counsel failed to file an opening brief and his direct appeal was dismissed.

1    The trial finished on August 12, 1996 and the appeal was dismissed on April 28,

2    1997 (with the Remittitur issued on July 1, 1997). The instant Petition was filed on

3    October 11, 2002. The Respondent now moves to dismiss arguing that the Petition is

4    barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d).

5    After considering all of the pleadings and relevant lodgements, and for the reasons

6    set forth below, it is recommended that the Motion to Dismiss the Petition for Writ of

7    Habeas Corpus be GRANTED.

8    ## II.  THE STATUTE OF LIMITATIONS

9    ## A. THE AEDPA ONE-YEAR STATUTE OF LIMITATIONS

10    Respondent contends that the Petition is time barred by the Antiterrorism and

11    Effective Death Penalty Act ("AEDPA").[1]  AEDPA amended 28 U.S.C. § 2244 by adding

12    subdivision (d), which provides for the one-year limitation period for state prisoners to file

13    habeas corpus petitions in federal court.  Section 2244(d) states, in pertinent part:

14    (d)(1) A 1-year period of limitation shall apply to an application for a writ of
    habeas corpus by a person in custody pursuant to the judgment of a State
15    court. The limitation period shall run from the latest of :

16    (A)    the date on which the judgment became final by the conclusion of
        direct review or the expiration of the time for seeking such review;
17
    (B)    the date on which the impediment to filing an application created by
18        State action in violation of the Constitution or laws of the United
        States is removed, if the applicant was prevented from filing by such
19        State action;

20    (C)    the date on which the constitutional right asserted was initially
        recognized by the Supreme Court, if the right has been newly
21        recognized by the Supreme Court and made retroactively applicable
        to cases on collateral review; or
22
    (D)    the date on which the factual predicate of the claim or claims
23        presented could have been discovered through the exercise of due
        diligence.
24
    (2)    The time during which a properly filed application for State post-conviction
25        or other collateral review with respect to the pertinent judgment or claim is
        pending shall not be counted toward any period of limitation under this
26

27    _____

    [1] AEDPA applies to Petitioner's case as he filed his Petition in 2002.  *Lindh v. Murphy*, 521
28    U.S. 320 (1997) (AEDPA applies to petitions for writs of habeas corpus filed in federal court after its
    effective date of April 24, 1996).  Prior to AEDPA, there was no statute of limitations for federal
    habeas relief.

1  subsection.

2  28 U.S.C.A. § 2244(d) (West Supp. 2002).

3  Petitioner does not fall within the statutory tolling provisions of § 2244(d)(1)(B) or

4  (C) as he does not: (a) show any impediment to filing an application by State action in

5  violation of the United States Constitution; or (b) rely on a constitutional right newly

6  recognized by the United States Supreme Court.  Instead, this Court must determine

7  whether §2244(d)(1)(A) or (D) applies and the date from which (under either section) the

8  one-year period began to run.  To complicate the matter, Petitioner's counsel deceived him

9  by telling him an appeal was being pursued when in reality, it had been abandoned and

10  eventually dismissed.

11  **1.  Applying §2244(d)(1)(A)**

12  Under § 2244(d)(1)(A) the one-year limitation period begins to run on the date the

13  judgment becomes final either by the conclusion of direct review or the expiration of the

14  time for seeking such review.[2]  Petitioner was sentenced on September 10, 1996.  He timely

15  filed a notice of appeal on October 25, 1996.  Then his attorney failed to file an appeal

16  brief.  Because no brief was filed, the appeal was dismissed on April 28, 1997.  Thus, thirty

17  days later (*i.e.*, May 28, 1997) becomes the first critical date for purposes of identifying the

18  start of the one-year time clock.  This is because under California law, a judgment becomes

19  "final" 30 days after the Court of Appeal orders an appeal dismissed.  Rule 24 of the

20  California Rules of Court states, "A decision of a Court of Appeal becomes final as to that

21  court 30 days after filing....An order dismissing an appeal involuntarily is a decision for

22  purposes of the preceding sentence."  Consequently, under 2244(d)(1)(A), the decision

23  became final on May 28, 1997 and the one-year limitation period expired on May 28, 1998.

24  Under this scenario, there would be no statutory tolling under 2244(d)(2) because there

25  was no pursuit of state collateral review during this period, and his federal petition would

26  be four years too late.

27

28

---

[2] A time line of significant events is attached for the reader's convenience.  See Appendix.

3

*39*

1    **2. Applying § 2244(d)(1)(D)**

2    There is, however, a second scenario which points to a later starting date. Under

3    § 2244(d)(1)(D), the clock begins ticking on the day "the factual predicate of the

4    claim...could have been discovered through the exercise of due diligence." Here, the claim

5    centers on the loss of Petitioner's appeal rights by the failure of his counsel to do anything

6    beyond filing a notice of appeal. The question thus becomes, "when could petitioner have

7    discovered his appeal had been dismissed had he exercised due diligence?"

8    In this case, his retained counsel, Mr. Vladimir Verhovsky, Esq., was less than

9    candid and misrepresented the status of the appeal on several occasions. For example,

10    Petitioner's wife declared, "[f]rom late fall of 1996 through the summer of 1998, I

11    continually asked Mr. Verhovsky how the robbery appeal was going." Declaration of

12    Patricia Lynn Jacks-Tatarinov, Petition for Writ of Habeas Corpus, Exhibit "A," at 2. She

13    continues, Verhovsky "gave responses such as, 'appeals take several months,' 'appeals can

14    take years,' 'the appeals court must believe we have some merit to the case as they have not

15    responded'...and 'the court is still looking into the matter.'" *Id.* Petitioner in his own

16    declaration explains that after he was aware the appeal had been dismissed, "I asked

17    [Verhovsky] several times to do something about it. Each time he said he would. Finally

18    in September 1999 Mr. Verhovsky filed a motion to reinstate the appeal." Petition, Exhibit

19    "B," at 1.

20    *a. Petitioner's Contention: January 2, 2001*

21    Petitioner argues that the statute should run (under 2244(d)(1)(D)) from January 2,

22    2001. Petition, at 17-18. He argues that date because Verhovsky continued to represent

23    him on various matters through December 24, 2000. On December 24th, he received a

24    letter from Verhovsky ending, without explanation, his representation in all matters. *See*

25    Petition, Exhibit "G." Approximately three weeks later, Petitioner received notice from the

26    State Bar that Verhovsky had been suspended from the practice of law. Petitioner defends

27    himself saying, "[p]rior to that time, petitioner was unduly influenced by Verhovsky's legal

28    advice, which made it a practical impossibility for petitioner to discern Verhovsky's

1    incompetent representation." Petition, at 18. He explains further that, the "attorney-client

2    relationship was particularly strong because Verhovsky could communicate with petitioner

3    in Russian, petitioner's first language." *Id.*

4                            **b. Respondent's Contention: Fall 1998**

5                 Not surprisingly, Respondent argues that under this second scenario the statute

6    should run from an earlier date: the fall of 1998. Memorandum in Support of Motion to

7    Dismiss, at 7-8. Respondent argues that "the factual predicate for Petitioner's claim was

8    *discoverable* with the exercise of due diligence well before either December 24, 2000 or

9    January 2, 2001....Petitioner had *actual knowledge* that Verhovskoy failed to file the

10   opening brief and the appeal had been dismissed, no later than Fall 1998." *Id.* (emphasis

11   in original). In support of this position, Respondent points to the declarations of Petitioner

12   and his wife. Specifically, Respondent notes that Petitioner's wife, on her own, called the

13   court during the summer of 1998 and found out "the appeal was not active." *Id.* at 8

14   (quoting Declaration of Patricia Jacks-Tatarinov, Petition, Exhibit "A"). Petitioner's wife

15   then called Verhovsky and Verhovsky "admitted he had not filed the appeal." Respondent

16   continues this line of argument by pointing to Petitioner's own declaration wherein he

17   relates, "[i]n 1998, Mr. Verhovskoy admitted that he had not filed the appeal." *Id.* at 8

18   (quoting Declaration of Dimitri Tatarinov, Petition, Exhibit "B"). Thus, building the

19   argument from Petitioner's own evidence, Respondent argues that Tatarinov was actually

20   aware that the appeal had been dismissed by the fall of 1998. Respondent contends that

21   it is the date of Petitioner's actual knowledge of the dismissed appeal that starts the clock

22   running (as opposed to Petitioner's knowledge of the legal significance of the dismissed

23   appeal.) *Id.* at 9. Respondent concludes that with the clock beginning to tick in the fall of

24   1998, the statute of limitations had certainly run by 2002, the year the federal Petition was

25   filed.

26                    **c. The Due Diligence Date: The Summer of 1998**

27                 In sum, under 2244(d)(1)(D), Petitioner identifies January 2001 as the critical date,

28   while Respondent picks the fall of 1998 as the date the clock began ticking. Respondent's

*41*

1 argument is generous.  It is based upon Petitioner's *actual* knowledge.  Section

2 2244(d)(1)(D), however, starts the clock running on the day "the factual predicate of the

3 claim...*could have been discovered* through the exercise of due diligence." (Emphasis

4 added.)  In other words, the day Petitioner could have discovered that the appeal had been

5 lost, had he exercised appropriate diligence.

6     If one in Petitioner's place was extremely diligent, one could call the court of appeals

7 every week checking on the status of the appeal.  Such a person would have discovered the

8 truth in early May 1997.  If one checked every quarter, one would have discovered the

9 dismissal no later than the fall of 1997.  If one checked only once a year, a more reasonable

10 approach, the dismissal would still have been discovered in the fall of 1997. It took almost

11 two years before Petitioner's wife inquired of the court.  Even if that were deemed to be

12 within the outer boundaries of "due diligence," the statute of limitations would have begun

13 to run in the summer of 1998.  Certainly, the fact that Petitioner's wife actually called the

14 court, strongly suggests Petitioner could have exercised the same diligence.

15     This Court finds that had Petitioner exercised due diligence, notwithstanding his

16 attorney's misrepresentations, Petitioner could have discovered the fate of his appeal in the

17 summer of 1998.  As a result, the statute of limitations expired one year later in the

18 summer of 1999 – approximately three years prior to the filing of the instant Petition.

19 Finally, there would be no entitlement to a statutory tolling of the clock because nothing

20 was done to reinstate the appeal or collaterally attack the conviction between the summer

21 of 1998 and the summer of 1999 when Petitioner's time ran out.

22       *d.  An Aside: "Retriggering" the Statute*

23     As an aside, though neither party addresses it, one could argue that an ineffective

24 assistance of appellate counsel claim is *sui generis* for purposes of the statute of limitations.

25 This is because all other types of claims revolve around the time of trial.  In contrast, an

26 appellate counselor's failure does not occur or become evident until long after the trial.  In

27 the context of Petitioner's case, one might argue that Petitioner could not have known

28 whether his appellate attorney had injured his appeal until December 12, 2001.  That is

6

02cv2029

42

1   because up until 2001, his appeal might have been reinstated by the various corrective

2   motions actually brought. When it was filed in September 1999, the motion to set aside

3   the dismissal *might* have been successful. Likewise, when the second motion to vacate the

4   dismissal was filed in August 2001, the court of appeal *might* have granted relief. Finally,

5   when the unsuccessful motion to reinstate the appeal was itself appealed to the California

6   Supreme Court, the Supreme Court *might* have granted relief and reinstated Petitioner's

7   appeal. That, outcome *would* have eviscerated the foundation of his ineffective assistance

8   claim. He would have finally been able to present his meritorious arguments on appeal.

9   Consequently, one might argue, it was not until December 12, 2001, when the California

10   Supreme Court denied the appeal of the appeals court decision to refuse to reinstate the

11   appeal, that the federal claim of ineffective assistance of appellate counsel became ripe.

12       The problem with this theory is that it lacks finality and encourages repetitive

13   frivolous motion practice as a means for extending the running of the statute of limitations.

14   Under this theory, one could wait years before filing a motion to reinstate an appeal, or file

15   successive motions in the vain hope that one sympathetic ear would reinstate the

16   previously lost appeal rights. Under this theory, a federal habeas petition claiming

17   ineffective appellate assistance could always be made timely and the statute of limitations

18   would be reduced to a curiosity.

19       Two other courts have rejected similar arguments. In those cases, petitioners had

20   failed to take direct appeals from their convictions. While they did not argue ineffective

21   assistance of appellate counsel, they did eventually file motions seeking permission for a

22   late or delayed appeal. Once in federal court, the petitioners argued that the habeas statute

23   of limitations should not run until after their motions to pursue late appeals were denied.

24   The courts decided that AEDPA's one-year limitations clock could not be "retriggered" in

25   this fashion and that to allow a retriggering by this route would emasculate the statute.

26   *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001); *Raynor v. Dufrain*, 28 F.Supp. 2d 896 (S.D.

27   N.Y. 1998). The reasoning of the *Raynor* decision is compelling:

28
      This is a position that we cannot endorse, because it would effectively
      eviscerate the AEDPA's statute of limitations. Leave to file a late notice of

*43*

1  appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application

2  for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice

3  of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be

4  effectively eliminated, a clearly unacceptable result.

5  28 F.Supp.2d at 898 (*quoted in Searcy*, 246 F.3d at 519). For similar reasons, this Court

6  finds that once an order dismissing an appeal becomes "final," AEDPA's statute of

7  limitations clock is triggered. The clock cannot be "retriggered" by thereafter filing a later

8  motion to vacate the dismissal or reinstate the appeal.

9       In the case at bar, the order dismissing Tatarinov's appeal became final under

10  California law in 1997. The clock was not retriggered by the motions to reinstate his

11  appeal filed later in 1999 and 2001. The statute of limitations ran out at the latest in 1999

12  under any viable theory, and the instant Petition is too late – unless Petitioner is entitled

13  to the benefit of tolling.

14  **B. AEDPA's STATUTORY TOLLING PROVISION**

15       In order for AEDPA's statutory tolling provision to apply there must be a "properly

16  filed application for post-conviction or other collateral review...pending" in state court. 28

17  U.S.C.A. § 2244(d) (2). Petitioner did not have any collateral review "pending" until he

18  filed his state petition for habeas relief in February 2002. By that time the statute of

19  limitations clock had run down.

20       *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied*, 529 U.S. 1104

21  (2000), held that the AEDPA statute of limitations is tolled for "all of the time during which

22  a state prisoner is attempting, through proper use of state court procedures, to exhaust state

23  court remedies with regard to a particular post-conviction application." This holding

24  contemplates that the state inmate first files a petition in the state's superior court, then

25  proceeds to the California Court of Appeal, and concludes state review in the California

26  Supreme Court. *Lewis v. Mitchell*, 173 F. Supp.2d 1057 (C.D. Cal. 2001) ( *citing Nino* at

27

28

8

44

1  1006 n.2 & n.3).[3] Applying *Nino* to Petitioner's case, the tolling provisions of the AEDPA

2  do not save his Petition from being dismissed.

3        Here, Petitioner had no state habeas petition "pending" within the statutory period.

4  *Nino*, 183 F.3d at 1005 (statutory tolling is available for periods when the petitions

5  comprise "one complete round of the State's established appellate review process.").

6  Statutory tolling does not apply to periods between petitions that do not form part of a

7  progressive series from the superior court, to the court of appeal, to the California Supreme

8  Court. *Id*. Thus, the statute of limitations ran long before 2002 when Petitioner filed his

9  first petition for habeas relief in the California Court of Appeal. Because there was no state

10  habeas petition "pending" within the statutory period of 28 U.S.C. §2244(d)(2), the

11  AEDPA's statutory tolling provisions do not apply and the Petition remains untimely.

12  **C. AEDPA's EQUITABLE TOLLING PROVISION**

13        Having determined that statutory tolling does not apply, this Court must next

14  determine whether equitable tolling will excuse the delay.

15        **1. Applicable Law**

16        AEDPA's one-year statute of limitations is subject to equitable tolling. *Calderon v.*

17  *United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on*

18  *other grounds by Calderon v. United States District Court (Kelly)*, 163 F.3d 530 (9th Cir. 1997)

19  (en banc), *cert. denied*, 526 U.S. 1060 (1999). *Beeler* held that the time bar of 28 U.S.C. §

20  2244 (d)(1) can be tolled if "extraordinary circumstances beyond a prisoner's control make

21  it impossible to file a petition on time." 128 F.3d at 1288-89 (citing *Alvarez-Machain v.*

22  *United States*, 107 F.3d 696, 701 (9th Cir. 1997)). However, *Beeler* admonishes judges to

23  "take seriously Congress' desire to accelerate the federal habeas process" and "only

24  authorize extensions when the high hurdle is surmounted." *Id*. at 1289.

25        In *Allen v. Lewis*, 255 F.3d 798, 799 (9th Cir. 2001), the Ninth Circuit established the

26

27      [3] In California, the supreme court, intermediate courts of appeal, and superior courts all have original habeas corpus jurisdiction. *See* Cal. Const. art. VI, §10. The state prisoner may first present

28  his habeas petition to the superior court. *See* Cal. R. Ct. 260. Although a superior court order denying habeas corpus relief is non-appealable, *see People v. Griggs*, 67 Cal. 2d 314 (1967), a state prisoner may file a new habeas corpus petition in the court of appeals, *see In re Reed*, 33 Cal. 3d 914 (1983).



1 | showing a prisoner must make in order to demonstrate that "extraordinary circumstances"

2 | made it "impossible to file a petition on time." *Allen* held that the prisoner, at the very

3 | least, must show that the "extraordinary circumstances" were the proximate cause of his

4 | untimeliness. *Id.*

5 | **a. Petitioner's Argument**

6 | Petitioner argues the statute of limitations should be equitably tolled because of

7 | Verhovsky's misrepresentations and that because of Verhovsky's ability to communicate

8 | to Petitioner in Petitioner's native Russian language, Petitioner trusted and believed his

9 | attorney was effectively representing him. This unique attorney-client relationship

10 | coupled with the attorney's prevarications presents the rare case for equitable tolling,

11 | according to Petitioner. Specifically, he asserts,

12 | After petitioner learned that the appeal had been dismissed, Verhovsky
13 | continued to practice deception by misleading petitioner concerning
     | procedures available to reinstate the appeal. Verhovskoy engaged in this
     | ongoing pattern of lies, deception and misinformation to hide from petitioner
14 | the fact that Verhovsky had acted incompetently, first by causing the direct
     | appeal to be dismissed, and then by failing to get it reinstated.

15 | 

16 | Opposition to Motion to Dismiss, at 3. Continuing on, petitioner contends,

17 | ...petitioner placed more than the usual amount of reliance on Verhovskoy
     | as his attorney, and Verhovskoy repeatedly violated that trust by practicing
     | deception to hide his own incompetence. This case presents the type of "rare
18 | and exceptional circumstances" that justify the use of equitable tolling.

19 | *Id.* (citations omitted). Petitioner explains that even after he learned from his attorney that

20 | the appeal had been dismissed, Verhovsky told him that he was working on a solution, but

21 | "that it takes time to reinstate the appeal." *Id.* at 5. Petitioner explains, "[e]ventually

22 | Verhovsky filed a motion to reinstate the appeal, which the court eventually denied.

23 | Thereafter, Attorney Verhovsky continued to lie, telling petitioner and his wife that

24 | nothing further could be done to revive the appeal." *Id.* "Eventually," writes petitioner,

25 | he "became hopelessly lost in the web of deceit that his lawyer spun." *Id.* at 6.

26 | **b. Respondent's Argument**

27 | Respondent argues that a petitioner must establish that the extraordinary

28 | circumstances actually caused the delay and that "even giving Petitioner's Russian

02cv2029

*46*

1   background and English language skills appropriate consideration, his inability to file a

2   timely petition must be attributable to his personal failure to exercise due diligence, not

3   some external force." Memorandum of Points and Authorities at 11. Respondent continues

4   his argument pointing to Petitioner's awareness by the fall of 1998 that Verhovsky had let

5   the appeal flounder and that he had been lying about its progress. *Id.* at 12. Respondent

6   also points out that: (1) Verhovsky made no representations or misrepresentations

7   regarding the filing of a federal habeas petition; (2) Petitioner was not confined to prison

8   and could have retained other counsel; and (3) Petitioner could have learned about and

9   filed a federal habeas petition on his own. *Id.* at 12-13.

10   **2. Extraordinary Circumstances Were Not the Cause of Petitioner's Untimeliness**

11   As explained above, Petitioner had one year from either May 28, 1997 (under §

12   2244(d)(1)(A)), or summer 1998 (under § 2244(D)(1)(D)) to file his federal habeas petition.

13   He missed both deadlines. He suggests that the continuing lies and deceit of Verhovsky

14   together with the unique Russian connection comprise the "rare and exceptional

15   circumstances" entitling him to equitable tolling. However, the Ninth Circuit has

16   explained, "[i]f the person seeking equitable tolling has not exercised reasonable diligence

17   in attempting to file, after the extraordinary circumstances began, the link of causation

18   between the extraordinary circumstances and the failure to file is broken." *Allen*, 255 F.3d

19   at 800-01.

20   *a. The 1st Wake-up Call*

21   In this case, despite the "web of deceit his lawyer had spun," Petitioner did finally

22   discover that Verhovsky had been lying to him and that the direct appeal had been

23   dismissed. This was sometime in the fall of 1998. It was at this time that Petitioner should

24   have done something to prepare to seek collateral relief. If Petitioner had (as he asserts)

25   become "hopelessly lost in the web of deceit" spun by his lawyer, the fall of 1998 should

26   have been a wake-up call. He should have taken steps to protect his habeas rights on his

27   own. He did not. Instead, he decided that he would proceed with Verhovsky's plan to file

28   a motion to reinstate the appeal. Meanwhile, time passed.

11

*47*

### b.  The 2nd Wake-up Call

Approximately one year passed before Verhovsky filed the discussed motion to reinstate the appeal on September 10, 1999.  The California Court of Appeal rejected the request two weeks later on September 24, 1999.  This was another wake-up call.  Again, Petitioner should have taken steps to protect his habeas rights.  The appeal was over.  He understood this much.  In his declaration he states, "[f]inally in September 1999 Mr. Verhovsky filed a motion to reinstate the appeal....Later he told me the motion was denied....I believed the appeal was over and nothing more could be done about it." Petition, Exhibit "B," at 2.

### c.  The 3rd Wake-up Call

Another 15 months passed before Petitioner received his third wake-up call, *i.e.*, the letter from Verhovsky terminating his representation in all matters and the letter from the State Bar advising that Verhovsky had been suspended from practice.  Even then, petitioner waited another six months before he hired new counsel in the summer of 2001.  His new counsel has diligently pursued collateral relief and federal habeas relief, but the effort comes too late.

### d.  Petitioner's Own Obligation to Exercise Reasonable Diligence

The Supreme Court has emphasized that "the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation" because "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991), *r'hng denied*, 501 U.S. 1277 (1991).  In order to minimize that risk, habeas petitioners must exercise reasonable diligence in overseeing the actions of their attorneys. *See Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001), *cert. denied*, 535 U.S. 937 (2001) ("clients, whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands"); *see also Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000) (AEDPA statute of limitations not equitably tolled by lawyer's mistake resulting in missed deadline, because such mistake is not an extraordinary circumstance); *Taliani v. Chrans*,

02cv2029

48

1    189 F.3d 597, 598 (7th Cir. 1999) (concluding that, to the extent equitable tolling is available

2    for AEDPA, no tolling occurred because of a lawyer's mistake resulting in a missed

3    deadline).

4      Petitioner has not identified any circumstances beyond his control that made it

5    impossible for him to file a timely federal habeas petition. His decision to wait 12 months

6    and follow Verhovsky's suggestion and pursue reinstating his direct appeal before filing

7    a federal habeas petition within AEDPA's one-year window was not a circumstance beyond

8    his control. Likewise, his decision to do nothing for another 15 months after the motion

9    to reinstate the appeal failed was not a circumstance beyond his control. Moreover, his

10    decision to delay another six months after learning that Verhovsky would no longer be

11    representing him was another circumstance not beyond his control. These decisions were

12    entirely Petitioner's. With 20/20 hindsight, Petitioner may have exercised poor judgment,

13    but the repeated making of unwise choices does not rise to the level of "extraordinary

14    circumstances" such that AEDPA's statute of limitations should be tolled. *Cf. Frye v.*

15    *Hickman*, 273 F.3d 1144 (9th Cir. 2001), *cert. denied*, 535 U.S. 1055 (2002) (holding that the

16    miscalculation of the AEDPA limitations period by counsel and counsel's negligence in

17    general *did not* constitute extraordinary circumstances sufficient to warrant equitable

18    tolling); *accord Smaldone v. Senkowski*, No. 00-2519, 2001 WL 1453925, at 4 (2nd Cir. Nov.

19    16, 2001); *Fahy v. Horn*, 240 F.3d 239, 244 (3rd Cir. 2001), *cert. denied*, 534 U.S. 944 (2001);

20    *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000); *Kreutzer v. Bowersox*, 231 F.3d

21    460, 463 (8th Cir. 2000), *cert. denied*, 534 U.S. 863 (2001); *Ellis v. Martin*, No. 98-6450, 1999

22    WL 1101241, at 2 (10th Cir. Dec. 6, 1999) (unpublished opinion); *Sandvik v. United States*,

23    177 F.3d 1269, 1272 (11th Cir. 1999), *r'hng denied*, 207 F.3d 666 (11th Cir. 2001).

24      Further, although Petitioner does not allege it, even if Petitioner had difficulty in

25    understanding the procedures for filing his petitions for collateral relief or understanding

26    his rights because he is not a lawyer and the legal issues are complex, the circumstances

27    would not compel equitable tolling. *See Hebner v. MaGrath*, 2001 WL 764474 (N.D. Cal

28    2001) (holding that being a layman in the law and that the issues are complex are not

02cv2029

1  sufficient basis for equitable tolling); *Ross v. R. Q. Hickman*, 2001 WL 940911 (N.D. Cal.

2  2001) (same).  Certainly, Petitioner's difficulty with English does not warrant equitable

3  tolling.  *Nguyen v. Mervau*, 1998 U.S. Dist. LEXIS 13547 (N.D. Cal. 1998) (lack of fluency

4  in English is not an extraordinary circumstance); *Cf. Hughes v. Idaho State Bd. of*

5  *Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (illiteracy of pro se petitioner not sufficient

6  cause to avoid procedural bar).

7                        **e. Policy Considerations**

8         Finally, the instant case raises policy considerations, which counsel against a

9  finding of equitable tolling.  Petitioner's claim under §2254 is subject to a congressionally

10  imposed limitations period as prescribed by the AEDPA.  As the United States Supreme

11  Court stated in *Mohasco Corp v. Silver*, 447 U.S. 807, 826 (1980), "in the long run,

12  experience teaches that strict adherence to the procedural requirements specified by the

13  legislature is the best guarantee of evenhanded administration of the law."  To allow

14  Petitioner's reliance on an attorney who had dropped his appeal and lied to cover it and

15  Petitioner's own inaction for another two and one-half years after discovering his attorney's

16  duplicity to constitute grounds for equitable tolling, would essentially allow Plaintiff more

17  than thrice the amount of time specified by Congress for the filing of a writ of habeas

18  corpus under the AEDPA.  Given the strict procedural requirement imposed by the

19  legislature and the general deference of the Supreme Court, this Court declines to

20  recommend a result that would distort the limitations period.  *See e.g. Baldwin County*

21  *Welcome Center v. Brown*, 466 U.S. 147, 152 (1984), *r'hng denied*, 437 U.S. 1261 (1984)

22  ("Procedural requirements established by Congress for gaining access to the federal courts

23  are not to be disregarded by courts out of a vague sympathy for particular litigants.").

24                          **III.  CONCLUSION**

25         This Court finds that exceptional circumstances did not exist to warrant the

26  equitable tolling of the AEDPA one-year statute of limitations.  The Petition for Writ of

27  Habeas Corpus filed on October 11, 2002 is time barred.

28         For the reasons set forth above, this Court recommends that Respondent's Motion

50

1  to Dismiss the Petition for Writ of Habeas Corpus be **GRANTED**. This Report and

2  Recommendation is submitted to the United States District Judge assigned to this case,

3  pursuant to the provisions of 28 U.S.C. § 636 (b)(1).

4        **IT IS ORDERED** that no later than <u>April 30, 2003</u>, any party to this action may file

5  written objections with the Court and serve a copy on all parties. The document should

6  be captioned "Objections to Report and Recommendation."

7        **IT IS FURTHER ORDERED** that any reply to the objections should be filed with the

8  Court and served on all parties no later than <u>May 14, 2003.</u> The parties are advised that

9  failure to file objections within the specified time may waive the right to raise those

10  objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.

11  1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

12  Dated: _4/1/03_

13

14                                         ROGER T. BENITEZ
                                           United States Magistrate Judge

15

16  cc: U.S. District Judge Thomas J. Whelan

17

18

19

20

21

22

23

24

25

26

27

28

15

02cv2029



## APPENDIX

| Pet'r's Jury Trial August 1996 | Appeal Dismissed For Failure to File Brief 4/28/97 | Pet'r's Wife Discovers Appeal is Dismissed Summer 1998 | Pet'r Discovers Appeal is Dismissed Fall 1998 | Motion to Reinstate Appeal 9/10/99 | Motion is Denied 9/24/99 | Letter from Attorney Withdraw'g From Pet'r Cases 12/24/00 | Letter from State Bar Re: Suspension of Atty 1/19/01 | New Atty Files Second Motion to Reinstate Appeal 8/30/01 | Motion is Denied; Appeal to Cal. Sup.Ct. Denied Fall 2001 | Pet'r Exhausts State Remedies With State Habeas Petition Spring &/Summer 2002 | Federal Petition for Writ of Habeas Corpus Filed 10/11/02 |
|---|---|---|---|---|---|---|---|---|---|---|---|

02cv2029

52

FILED

05 MAY -2 AM 8:22

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DIMITRI TATARINOV
VALEREVEICH,

Petitioner,

v.

JOHN ASHCROFT, Attorney
General,

Respondent.

CASE NO:  04-CV-2595 W (BLM)

**ORDER DENYING WRIT OF
HABEAS CORPUS**

28 U.S.C. § 2241

    On December 30, 2004 the Court received this 28 U.S.C. § 2241 habeas petition from the Ninth Circuit after that court concluded that it did not have jurisdiction to hear Petitioner Dimitri Tatarinov Valereveich's ("Petitioner") appeal from the Board of Immigration Appeals' January 14, 2003 final removal order.  Instead, the Ninth Circuit treated Petitioner's appeal as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and transferred the case to the Southern District of California.

- 1 -

04cv2595w



1    After reviewing the parties' appellate briefs, this Court ordered the parties to
2  submit additional briefs specifically discussing the merits of Petitioner's claims.  Both
3  Petitioner and Respondent have submitted their additional briefs.  Petitioner claims he
4  is entitled to habeas relief because the Immigration Judge ("IJ") erred in denying (1) his
5  application for asylum and (2) his request for an adjustment of status and waiver
6  pursuant to section 212(h) of the Immigration and Nationality Act ("INA").
7  Respondent opposes.  The Court decides the matter on the papers submitted and
8  without oral argument.  See Civil Local Rule 7.1(d)(1).  For the following reasons, the
9  Court **DENIES** Petitioner's habeas petition.

10  I.    **BACKGROUND**[1]

11    Petitioner is a native and citizen of Russia.  He came to the United States as a
12  visitor in May of 1992.  In 1993 he met his wife, a U.S. citizen by birth and they were
13  married in 1994.

14    On January 6, 1995 Petitioner was granted Conditional Permanent Resident
15  Status based on his marriage to a United States citizen.  Approximately two years later,
16  he filed an application to remove the conditional status.  On June 9, 2000 the
17  Immigration and Naturalization Service ("INS") granted Petitioner's request and
18  removed the condition from his status.

19    In 1995 Petitioner was convicted of misdemeanor petty theft for shoplifting.  In
20  1996 Petitioner was again caught shoplifting but this time he was convicted of robbery
21  because he became engaged in an altercation with a store security guard.  Petitioner was
22  caught shoplifting for the third time in 1998 and he was convicted of felony theft due
23  to his prior convictions.

24    In June of 1998 the INS placed Petitioner in removal proceedings based on these
25  convictions.  The IJ concluded that Petitioner was a removable alien convicted of a
26  crime involving moral turpitude within five years of his admission as well as an alien
27  convicted of two or more crimes involving moral turpitude.  The IJ denied Petitioner's

28

[1]The facts in this case are not in dispute.  See (*Respondent's Return* at 2).

1  request for asylum, found that he was statutorily ineligible for adjustment of status with

2  a section 212(h) waiver and ordered him removed.

3  **II.    LEGAL STANDARD**

4      Federal law vests district courts with jurisdiction to hear habeas corpus petitions.

5  See 28 U.S.C. § 2241. Thus, jurisdiction extends to "prisoner[s] ... in custody in

6  violation of the Constitution or laws or treaties of the United States ... " 28 U.S.C. §

7  2241(c)(3).  While district courts will not exercise habeas jurisdiction to review INS

8  discretionary decisions, habeas review is available for petitions that allege constitutional

9  or statutory error in the removal process. Gutierrez-Chavez v. INS, 298 F.3d 824, 830

10  (9th Cir. 2002).  Habeas jurisdiction also extends to claims regarding the application

11  of legal principles to undisputed facts.  Singh v. Ashcroft, 351 F.3d 435, 441-41 (9th

12  Cir. 2003) (habeas review "extend[s] to claims of erroneous *application* or interpretation

13  of statutes") (emphasis in original).

14  **III.    DISCUSSION**

15      **A.    PETITIONER FAILED TO DEMONSTRATE ELIGIBILITY FOR ASYLUM**

16      Petitioner contends that the IJ erred in denying his asylum application.

17  Petitioner does not contest the IJ's factual conclusions. Instead, Petitioner argues that

18  the IJ erred when applying the relevant legal principles to the facts of his case.  In

19  essence, Petitioner claims that based on the facts he presented he was entitled to

20  asylum. The Court respectfully disagrees.[2]

21

22      [2]Respondent's opposition to this section of the Petition focused solely on the standard

23  of review applicable to IJ and Board of Immigration Appeals factual determinations. However,
the facts of this case are not in dispute. Petitioner's claim is simply that the IJ erred in applying

24  the statutory legal principles governing asylum claims to the facts of his case.  At best, this is
a mixed question of law and fact, although such claims begin to look more like purely legal

25  questions when facts are not in dispute. See e.g. Lazo-Majano v. I.N.S., 813 F.2d 1432, 1434

26  (9th Cir.1987), overruled on other grounds 79 F.3d 955 (holding that where facts are
undisputed and the only issue is proper application of the law to the facts legal questions are

27  presented). Either way, this Court's review is *de novo*. Barapind v. Enomoto, 400 F.3d 744, 748

28  (9th Cir. 2005) (en banc) (habeas review of mixed questions of law and fact is conducted *de
novo*).

04cv2595w

1

2    As succinctly stated by the Ninth Circuit:

3    Section 208(a) of the Immigration and Nationality Act ("INA") gives
     the Attorney General discretion[3] to grant political asylum to any alien
4    deemed to be a "refugee" within the meaning of § 101(a)(42)(A) of the
     INA, 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1). "A refugee is
5    defined as an alien unwilling to return to his or her country of origin
6    'because of persecution or a well-founded fear of persecution on account
     of race, religion, nationality, membership in a particular social group, or
7    political opinion.'" Fisher v. INS, 79 F.3d 955, 960 (9th Cir. 1996) (en
8    banc) (quoting 8 U.S.C. § 1101(a)(42)(A)). Thus, to be eligible for
     asylum, an applicant must establish "either past persecution or a
9    well-founded fear of present persecution on account of [a protected
10   ground]." Mejia-Paiz v. INS, 111 F.3d 720, 723 (9th Cir.1997) (internal
     quotation marks omitted).
11

12   Singh v. Ashcroft, 362 F.3d 1164, 1170 (9th Cir. 2004).

13   Here, the IJ concluded that Petitioner did not meet the statutory requirements

14   for asylum because he failed to demonstrate that he had been persecuted or that he was

15   a member of any particular social group. (Respondent's Return, Ex. at 12-14). The IJ

16   also concluded that Petitioner had not established any threat of future persecution.

17   Having reviewed the undisputed facts and the applicable law, the Court concludes that

18   the IJ did not err in denying Petitioner asylum as a matter of law.

19   //

20   //

21

22

23

24

25   ───────────────
         [3]Although the statute provides the Attorney General with discretion to grant asylum,
26   the IJ in this case explicitly noted that he was not denying asylum on a discretionary basis.
     Rather, the IJ made clear that he was denying Petitioner's asylum application because he failed
27   to meet the legal requirements as a matter of law. (Respondent's Return, Ex. at 16). The
     normal deference given to the Attorney General's discretionary decisions is therefore
28   inapplicable in this case.

                                        - 4 -                              04cv2595w

1       As the IJ correctly concluded, Petitioner provided no evidence of past

2   persecution as that term is understood in this Circuit.[4] Petitioner identified only one

3   incident where he was personally threatened and extorted by what he believed were

4   members of a criminal organization.  While working as a supervisor in a body shop,

5   several men that Petitioner believed were organized crime members approached

6   Petitioner and asked him to begin paying protection money.  They told Petitioner that

7   when they returned he should have a package for them and that he was "play[ing] with

8   fire." (*Petition* at 7-8).  These men also apparently visited Petitioner's family on one

9   occasion and spoke with his brother but Petitioner does not claim that they threatened

10  his brother or any other member of his family.  Id.  Although this attempted extortion

11  is certainly a criminal incident, it is not one that rises to the level of "persecution."

12  Gormley v. Ashcroft, 364 F.3d 1172, 1176 (9th Cir. 2004) ("persecution is an extreme

13  concept that does not include every sort of treatment that our society regards as

14  offensive"); Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995) (holding that the

15  petitioner's detention for four to six hours and the accompanying physical abuse he

16  endured was insufficient to compel a finding of past persecution).

17      Nor has Petitioner demonstrated that this past "persecution" was due to his

18  membership in a particular social group, as that term is understood in immigration law,

19  or that his fear of future persecution is due to such membership.  Petitioner has directed

20

21      [4]The Court notes that the Ninth Circuit generally reviews IJ determinations regarding

22  past persecution for substantial evidence, suggesting that such determinations constitute

23  factual findings.  See e.g. Prasad v. INS, 47 F.3d 336, 340 (9th Cir.1995) (in denying petition
    for review, the court held that "Although a reasonable factfinder could have found [the]

24  incident sufficient to establish past persecution, we do not believe that a factfinder would be
    compelled to do so.").  However, where the facts are not in dispute, the Ninth Circuit's review

25  begins to more closely resemble *de novo* review.  See Navas v. I.N.S., 217 F.3d 646, 657 (9th

26  Cir. 2000) (holding that where it was undisputed that alien had received death threat, Ninth
    Circuit precedent "dictated" a conclusion that the alien has established persecution).

27  Regardless, the Court need not resolve the issue since even under the more lenient *de novo*

28  standard, the Court concludes Petitioner has failed to show persecution.

*57*

1   this Court to no authority in this Circuit or elsewhere, and the Court's research has

2   revealed none, holding that membership in the class of "educated, upper-income

3   supervisors of business," which essentially amounts to being middle class, constitutes

4   membership in a particular social group for asylum purposes.[5] Cognizable social groups

5   do "not encompass every broadly defined segment of a population, even if a certain

6   demographic division does have some statistical relevance." Sanchez-Trujillo v. I.N.S.,

7   801 F.2d 1571, 1576-77 (9th Cir. 1986). Indeed, "such an all-encompassing grouping

8   as [Petitioner has] identif[ied] simply is not that type of cohesive, homogeneous group

9   to which . . . the term 'particular social group' was intended to apply." Id. at 1577

10  (holding that membership in the class of young, working class, urban males did not

11  constitute a particular social group for asylum purposes).    The Court therefore

12  concludes that Petitioner's membership in the "class of educated, upper-income

13  supervisors of business" is not a protected social group for purposes of asylum. (Petition

14  at 8).  Accordingly, asylum is statutorily unavailable to Petitioner on this basis alone.

15      Petitioner also claims that "he will face persecution at the hands of the Russian

16  government" as a deported criminal. (Petition at 8).  Petitioner's claim that deported

17  criminals, a group that is obviously far from cohesive or homogenous, constitutes a

18  particular social group protected for purposes of asylum law strains credulity.  See

19  Sanchez-Trujillo, 801 F.3d at 1577.  Such a holding would allow all criminal aliens in

20  deportation proceedings to claim asylum based on their criminal status - the very reason

21  they are being deported.  The IJ also properly denied Petitioner's asylum claim on this

22  ground as well.

23      Accordingly, Petitioner cannot meet the statutory eligibility requirements for

24  asylum.  It follows that he cannot meet the more stringent standards for withholding

25  of removal.  Fisher v. I.N.S., 79 F.3d 955, 964 (9th Cir. 1996).  Petitioner's first claim

26

27      [5]This is clearly a legal question which this court reviews de novo.  Tchoukhrova v.
    Gonzales, --- F.3d ----, 2005 WL 913449, *5 (9th Cir. 2005) ("Whether a category constitutes
28  a particular social group for the purposes of asylum and withholding of removal is a legal
    question we review de novo.").

1  for habeas relief is therefore **DENIED**.

2  **B.    THE IJ DID NOT ERR IN DENYING PETITIONER'S REQUEST FOR**
   **ADJUSTMENT OF STATUS AND WAIVER UNDER INA SECTION 212(H).**

3  Petitioner next contends that the IJ improperly denied his request for a section

4  212(h) waiver and adjustment of status.  Section 212(h) waivers are available to non-

5  lawful permanent residents ("non-LPR") without restriction but only to lawful

6  permanent residents ("LPR") if they have (1) not been convicted of an aggravated

7  felony and (2) have resided in the United States for at least seven years.  8 U.S.C. §

8  1182(h).  Petitioner argues that this distinction between LPRs and non-LPRs violates

9  his equal protection rights.  Alternatively, Petitioner argues that he was not an LPR

10 within the meaning of section 212(h) when the INS commenced deportation

11 proceedings against him.  Respondent counters that Petitioner's claim is foreclosed by

12 the Ninth Circuit's decision in Taniguchi v. Shultz,303 F.3d 950 (9th Cir. 2002) in

13 which that court held that there was a rational basis for precluding LPRs convicted of

14 aggravated felonies from seeking 212(h) relief while allowing non-LPRs who had

15 committed similar crimes to qualify.

16     Petitioner has not committed any crimes that constitute aggravated felonies.

17 Instead, the IJ concluded that Petitioner was ineligible for a section 212(h) waiver

18 because he was an LPR who had not resided in the United States for at least seven

19 years.  (*Respondent's Return*, Ex. at 21); 8 U.S.C. § 1182(h).  Petitioner contends the

20 Taniguchi decision does not apply to this case because (1) he was deemed ineligible due

21 to his length of residency not an aggravated felony and (2) he was only a "conditional"

22 LPR when the INS initiated removal proceedings.  The Court disagrees.

23     To win his equal protection challenge, Petitioner must show that the challenged

24 classification is "wholly irrational."  Sudomir v. McMahon, 767 F.2d 1456, 1464 (9th

25 Cir. 1985).  "'Line-drawing' decisions made by Congress or the President in the context

26 of immigration and naturalization must be upheld if they are rationally related to a

27 legitimate government purpose."  Ram v. INS, 243 F.3d 510, 517 (9th Cir. 2001).

28 Petitioner has the burden to negate "every conceivable basis which might support [the

- 7 -

04cv2595w  59

1  challenged classification] ... whether or not the basis has a foundation in the record."
2  *Heller v. Doe*, 509 U.S. 312, 320-21 (1993) (internal citation omitted).

3      Here, Petitioner has argued only that section 212(h)'s distinction between LPRs
4  and non-LPRs is irrational because Congress created a distinction that treats LPRs
5  worse than undocumented immigrants. However, simply disadvantaging legal aliens in
6  favor of undocumented aliens does not mean that the legal alien's equal protection
7  rights have been violated. *Taniguchi*, 303 F.3d at 958 (holding that there is a rational
8  basis for treating LPR aggravated felons more harshly than non-LPR aggravated felons).
9  Although the *Taniguchi* court's rational basis analysis focused on the permissibility of
10 treating LPRs who had committed aggravated felonies differently than non-LPRs who
11 had committed similar crimes, some of the Court's reasoning applies with equal force
12 to LPR's denied section 212(h) waivers based on the length of time they have resided
13 in the United States.

14      As noted in *Taniguchi*, one of Congress's goals in limiting section 212(h) waivers
15 was to expedite the removal of criminal aliens. *Taniguchi*, 303 F.3d at 958. However,
16 Congress' overarching goal was to expedite the removal of *all* "excludable and
17 deportable aliens" with a special emphasis on criminal aliens. *See* S. REP. NO. 104-249,
18 at 2. Restricting section 212(h) waivers to LPRs who have continuously resided in the
19 United States for at least *seven* years furthers this goal by limiting the number of
20 deportable or excludable aliens eligible for the waiver. The fact that Congress has not
21 placed similar conditions on non-LPR's eligibility for section 212(h) waivers is not fatal
22 to the statute despite the fact that "it might have been wiser, fairer, and more
23 efficacious" to bar section 212(h) relief to all aliens residing in the United States for less
24 than seven years. *Taniguchi*, 303 F.3d at 958; *see also Butler v. Apfel*, 144 F.3d 622,
25 625 (9th Cir. 1998) ("Reform may take one step at a time, addressing itself to the phase
26 *of the problem which seems most acute to the legislative mind.*"). Petitioner's equal
27 protection challenged is therefore without merit and his habeas claim on that ground
28 is **DENIED.**

1       Petitioner's claim that he was not a lawful permanent resident within section

2  212(h)'s meaning because his status was "conditional" is also without merit. This

3  argument is foreclosed by Petitioner's failure to raise it before the IJ and his admission

4  in that proceeding that he was an LPR. (*Respondent's Return*, Ex. at 2). Even if

5  Petitioner could raise this argument, it is unavailing because his legal status as an LPR

6  was not diminished by its conditional nature. See <u>Kalal v. Gonzales</u>, -- F.3d --, 2005

7  WL 712481 (9th Cir. 2005) ("the alien shall be considered, at the time of obtaining the

8  status of an alien lawfully admitted for permanent residence, to have obtained such

9  status on a conditional basis"); 8 C.F.R. § 216.1 ("A conditional permanent resident is

10  an alien who has been lawfully admitted to permanent residence within the meaning

11  of section 101(a)(20) of the Act . . . [and] [u]nless otherwise specified, the rights,

12  privileges, responsibilities and duties which apply to all other lawful permanent residents

13  apply equally to conditional permanent residents[.]"). Moreover, by operation of law

14  Petitioner's conditional status was removed as of January 6, 1997, well before removal

15  proceedings commenced, even though the IRS did not decide his petition for removal

16  of the condition until 2000. See 8 U.S.C. § 1186a(a)(3)(B) (if the Attorney General

17  grants the petition, the Attorney General "shall remove the conditional basis of the

18  parties effective as of the second anniversary of the alien's obtaining the status of lawful

19  admission for permanent residence.").[6]  Petitioner's claim for habeas relief on this

20  ground must therefore be **DENIED**.

21  //

22  //

23

24

25

26

27      [6]Petitioner obtained lawful permanent resident status on a conditional basis on January

28  6, 1995 and the INS commenced removal proceedings against him on June 24, 1998. (*Petition* at 5-6).

04cv2595w



IV.   <u>CONCLUSION AND ORDER</u>

In light of the foregoing, the Court **DENIES** Petitioner's § 2241 writ of habeas corpus. (*Doc. No.* 1). The clerk of the court shall close the district court case file.

**IT IS SO ORDERED.**

DATE: April 29, 2005

HON. THOMAS J. WHELAN
United States District Court
Southern District of California

CC:   ALL PARTIES AND COUNSEL OF RECORD

- 10 -

04cv2595w