1  Patricia Lynn Jacks
2  CA State Bar No. 226300
   5790 Friars Road F8
3  San Diego, CA  92110
   Tel. (619) 574-1625
4  Attorney for Petitioner
5  pjacks@san.rr.com



**FILED**

AUG  5 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      AKK        DEPUTY

6

7

8

9

10

11            UNITED STATES DISTRICT COURT

12           SOUTHERN DISTRICT OF CALIFORNIA

13

14  Dmitri Vallerveich TATARINOV,      )   Civil No. 07cv2033-L(NLS)
                                       )
15            Petitioner,              )
                                       )
16        vs.                          )   **NOTICE OF APPEAL**
                                       )
17  Superior Court of the State of California,  )
    County of San Diego; Office of the Chief    )
18  Counsel, Dept. of Homeland Security;  U.S.  )
    Attorney, Southern District;  ICE Detention &  )
19  Removal Unit                       )
                                       )
20            Respondents.             )
                                       )
21
   _____

22

23  Petitioner DMITRI VALLERVEICH TATARINOV hereby appeals from the order filed July 10,

24  2008, by which the United States District Court denied Petitioner's petition for writ of habeas

25  corpus and vacated the order for stay of removal.

26                              Respectfully submitted,

27                              PATRICIA LYNN JACKS
                                Attorney for Petitioner
28                              pjacks@san.rr.com

AO 450 Judgment in a Civil Case

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

Dimitri Vallerveich Tatarinov

V.

Superior Court of the State of California, County of
San Diego, et al.

**JUDGMENT IN A CIVIL CASE**

**CASE NUMBER:**     07-CV-2033-L (NLS)

☐   **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒   **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED: The Petition for Habeas Corpus is **DENIED**. The State's motion to dismiss and Petitioner's motion for release are **DENIED** as moot. Order Granting Petitioner's Motion for Stay of Removal, dated May 9, 2008, is **VACATED**.

| July 11, 2008 | W. Samuel Hamrick, Jr. |
|---|---|
| Date | Clerk |

s/ M. Jenkins

(By) M. Jenkins, Deputy Clerk

ENTERED ON July 11, 2008

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRI VALLERVEICH TATARINOV,<br><br>               Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO, *et al.*<br><br>               Respondents. | Civil No. 07cv2033-L(NLS)<br><br>**ORDER DENYING PETITION FOR HABEAS CORPUS AND VACATING ORDER FOR STAY OF REMOVAL** |

      Petitioner Dimitri Vallerveich Tatarinov, represented by counsel, filed a Consolidated Petition seeking habeas corpus relief under 28 U.S.C. § 2241 ("Petition"). Petitioner is in custody of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") Detention and Removal Center in this District pending his removal to Russia. He filed a motion for stay pending removal. Respondents Superior Court of the State of California, County of San Diego ("State") and Office of the Chief Counsel, Dept. of Homeland Security; U.S. Attorney, Southern District; and ICE Detention and Removal Unit (collectively "Federal Respondents") opposed the motion. The motion for stay pending removal was granted on May 9, 2008.

/ / / / /

1    The parties have fully briefed the Petition and filed supplemental briefing pursuant to the

2    order filed May 22, 2008. The State filed a motion to dismiss, which Petitioner opposed. On

3    June 1, 2008, Petitioner filed a motion for release pending the conclusion of this proceeding,

4    which is opposed by all Respondents.

5    Petitioner challenges two expired state court sentences on which the removal order is

6    based. He is no longer in custody for purposes of the convictions he is challenging. In addition,

7    no exceptions to the rule precluding collateral challenges to state court convictions in

8    immigration proceedings apply in this case. Therefore, despite the unfortunate circumstances

9    which led to Petitioner's current situation, the Petition is **DENIED**. The State's motion to

10    dismiss and Petitioner's motion for release are **DENIED** as moot. The May 9, 2008 order

11    staying removal is **VACATED**.

12    The underlying facts, contained in the Petition, Petitioner's motion to stay, Petitioner's

13    Excerpt of Record ("ER"), Declaration of Samuel W. Bettwy filed in opposition to the Petition

14    ("Bettwy Decl."), and the State's Notice of Lodgment ("Lodgment"), are not disputed.

15    Petitioner, a native of Russia and citizen of the former Soviet Union, came to the United States

16    as a non-immigrant student in May 1992. The same year, he applied for asylum based on the

17    threats he had received in the former Soviet Union. He married a United States citizen in 1994.

18    In 1995, he was granted Conditional Permanent Resident Status based on marriage. In 1996, he

19    filed a petition to remove this status; however, the petition was not adjudicated until June 9,

20    2000. (Bettwy Decl. Ex. at 54.)

21    In August 1995, Petitioner was convicted of misdemeanor petty theft and was sentenced

22    to one year probation. In August 1996, Petitioner was caught taking a jacket from a department

23    store. Because of allegations of use of force against a store security guard, Petitioner was

24    charged with robbery. At trial, he was represented by Vladimir Verhovskoy. Petitioner and his

25    subsequent counsel, Jerome Wallingford, believe Petitioner had a valid defense to the charge of

26    robbery, however, due to Mr. Verhovskoy's negligence, the jury was not instructed on the

27    defense. (Mtn. to Stay Ex. C.) In Mr. Wallingford's opinion, the case was a shoplifting incident

28    and should have been resolved as a misdemeanor. However, Petitioner was found guilty of

1    robbery ("1996 Conviction"). (*Id.*) He was sentenced to 270 days in custody. The custodial
2    sentence was suspended and Petitioner was granted three years of probation.

3       Represented by Mr. Verhovskoy, Petitioner timely appealed the 1996 Conviction.
4    However, Mr. Verhovskoy failed to file the appellant's opening brief and the appeal was
5    dismissed on April 28, 1997. When Petitioner inquired about the status of the appeal, Mr.
6    Verhovskoy did not tell him that the appeal was dismissed, but gave vague and misleading
7    explanations why a decision had not yet been issued. (ER at 130.)

8       On April 13, 1998, Petitioner was apprehended by the Immigration and Naturalization
9    Service ("INS")[1] and placed in removal proceedings. (Bettwy Decl. Ex. at 1, 3-6, 10.) Pending
10    processing of Petitioner's request for a hearing to determine whether he could remain in the
11    United States, Petitioner was released from INS custody on bond.

12       On October 19, 1998, on Mr. Verhovskoy's advice, Petitioner pled guilty to petty theft –
13    another shoplifting charge. Based on the prior robbery conviction, he was convicted of a felony
14    ("1998 Conviction"). He was sentenced to 364 days in custody, but the sentence was suspended
15    and Petitioner was placed on probation. This offense was added to the charges and factual
16    allegations in Petitioner's removal proceedings. (*See* Bettwy Decl. Ex. at 11, 13.) Petitioner
17    successfully completed probation and has no further criminal record.[2]

18       Due to counsel's failure to inform Petitioner that the appeal of the 1996 Conviction was
19    dismissed, Petitioner did not learn of this fact until the summer of 1998, when his wife inquired
20    directly with the court. (ER at 130.) After being confronted in September 1999, Mr.
21    Verhovskoy filed a motion to set aside the dismissal and reopen the appeal as well as a habeas
22    corpus petition.

23       On September 9, 1999, Petitioner filed a habeas corpus petition in this District (case no.
24    99cv1911-IEG(LSP)) pursuant to 28 U.S.C. § 2241, challenging the constitutionality of the use
25

26       [1]    On March 1, 2003, the detention and removal duties of the INS were transferred to the newly-formed ICE. *Resendiz v. Kovensky*, 416 F.3d 952, 954 n.1 (9th Cir. 2005).

27
28       [2]    Starting in 1998, Petitioner began therapy with a psychiatrist to address the shoplifting incidents, which were allegedly not caused by financial need but by psychological problems. (ER at 122; Mtn to Stay Ex. D.)

07cv2033

1   of his underlying criminal judgments as the basis for removal. The petition was dismissed

2   without prejudice as premature. (*See* order filed Jan. 19, 2000 in case no. 99cv1911.) The court

3   held it was premature to consider Petitioner's constitutional challenge before the INS had a

4   chance to finally rule on whether he was removable based on the prior convictions.

5          In the meantime, in state court proceedings, Mr. Verhovskoy filed a motion to reopen the

6   appeal of the 1996 Conviction. The motion included only a vague explanation for failure to file

7   the opening brief ("financial and medical catastrophes") and did not explain the two-year delay

8   between the dismissal and motion to reopen. (ER at 14-22.) It was denied on September 24,

9   1999. (ER at 24.) Mr. Verhovskoy advised Petitioner that nothing could be done to revive the

10  appeal. He advised filing a motion in the Superior Court to expunge the conviction. On April

11  13, 2000, Petitioner's motion to set aside the 1996 Conviction was denied. (ER at 26.) On

12  November 3, 2000, the court denied Petitioner's motion to terminate probation associated with

13  the 1996 Conviction.

14         On December 22, 2000, during the pendency of immigration proceedings, Mr.

15  Verhovskoy informed Petitioner he was withdrawing from representation. (ER at 30.) On

16  January 19, 2001, Petitioner received a copy of the State Bar of California's Stipulation Form -

17  Actual Suspension, indicating Mr. Verhovskoy had been suspended by the State Bar of

18  California in September 2000. (ER at 130.) On January 28, 2001,[3] Petitioner filed a complaint

19  against Mr. Verhovskoy with the State Bar. (ER at 128-30.) Petitioner had been represented by

20  Mr. Verhovskoy since 1996, and had paid him over $20,000 in fees for representation in

21  immigration proceedings and criminal defense. Based on Petitioner's complaint and State Bar

22  investigation, Mr. Verhovskoy admitted to some violations. On February 5, 2003 he was again

23  suspended from the practice of law. (ER at 131-34.) In 2001, following Mr. Verhovskoy's

24  withdrawal, Petitioner retained new criminal defense and immigration counsel. (ER at 115.)

25  / / / / /

26

27      _____

       [3]     The January 28, 2000 date shown on The State Bar of California Complaint Form
28  (ER at 128) appears to be an error, because the complaint refers to events taking place after that
       date. (*Cf.* ER 128 & 130 (referring to events in September 2000 and thereafter.)

1   In the removal proceedings, the Immigration Judge found Petitioner removable as an alien

2   convicted of crime of moral turpitude within five years of admission and as an alien convicted of

3   two or more crimes involving moral turpitude. Petitioner sought relief, including adjustment of

4   status, asylum and relief under the convention against torture, but he was unsuccessful due to his

5   criminal record. On December 13, 2001 Petitioner was ordered deported to Russia. (ER at 116;

6   Bettwy Decl. Ex. at 9-34.) On January 14, 2003, the removal order was affirmed by the Board

7   of Immigration Appeals ("BIA"). (Bettwy Decl. Ex. at 35-36.) Challenging the Immigration

8   Judge's decision to deny asylum and adjust his status, Petitioner appealed to the Ninth Circuit.

9   The Ninth Circuit construed the appeal as a petition for a writ of habeas corpus pursuant to 28

10  U.S.C. § 2241, and transferred the case to this District (case no. 04cv2595-W(BLM)). The

11  petition was denied on May 2, 2005. (Bettwy Decl. Ex. at 53 *et seq.*) On February 9, 2007, the

12  Ninth Circuit denied review. Petitioner has been in ICE custody since June 28, 2007.

13  In state court proceedings, on August 30, 2001, Petitioner filed a motion to reinstate the

14  appeal of his 1996 Conviction with the California Court of Appeal. The motion was denied (ER

15  at 34) and the California Supreme Court denied review (ER at 36). On February 15, 2002,

16  Petitioner filed a habeas corpus petition with the California Court of Appeal, which was denied.

17  (ER at 38.) Again, the California Supreme Court denied review. (ER at 40.)

18  On October 11, 2002, Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C.

19  § 2254 in this District (case no. 02cv2029-W(BEN)) based on ineffective assistance of counsel

20  on appeal of the 1996 Conviction. The petition was dismissed based on the statute of

21  limitations. (ER at 76-86.) On February 9, 2007, the dismissal was affirmed by the Ninth

22  Circuit (ER at 96-98) and petition for a rehearing was denied on September 28, 2004 (ER at

23  106).

24  On September 25, 2006, Petitioner filed in the San Diego County Superior Court motions

25  for new trial[4] of the 1996 and 1998 Convictions based on ineffective assistance of counsel.

26  _____

27      [4]   Although the motions were styled as "Nonstatutory Motion to Vacate a Judgment
    Entered After Court Trial on Grounds of Ineffective Assistance of Counsel" and "Nonstatutory
28  Motion to Vacate a Plea Entered on Grounds of Ineffective Assistance of Counsel" (Lodgment
    Ex. 1 at 17 *et seq.* & 78 *et seq.*), the only relief requested was a new trial (*id.* at 23 & 83).

1  (Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*)  The motions were denied (Lodgment Ex. 1 at 57,

2  117) and the appeal to the California Court of Appeal was unsuccessful (ER at 136).  On

3  September 12, 2007, the California Supreme Court denied petition for review.  (ER at 137.)

4         On October 19, 2007, Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241.

5  Although Petition states that Petitioner "moves that the court grant his U.S.C. § 2241 writ and

6  vacate the judgments based upon the violation of his constitutional rights" (Pet. at 2), it also

7  suggests that it is not directed toward the state court judgments but rather the state court's order

8  denying his motions for new trial, and that Petitioner's purpose is to avoid removal from the

9  United States – the only remaining consequence of the state court criminal judgments.  The

10 Petition could therefore be viewed as a challenge to the state court convictions, state court's

11 denial of his motions, or the present confinement by the immigration authorities.  Petitioner was

12 ordered to clarify this ambiguity.  (*See* order filed May 22, 2008 at 1-2.)  According to his

13 supplemental briefing, he "is not directly challenging his criminal convictions, [but] is

14 challenging the State's dismissal of his non-statutory motions in violation of the Due Process

15 Clause . . .."  (Pet'r's Supp. Brief filed Jun. 8, 2008 at 4.)

16        Federal Respondents contend that district court jurisdiction is foreclosed by 8 U.S.C.

17 § 1252, as amended by the REAL ID Act, Pub. L. No. 109-13, Stat. 231, Div. B (May 11, 2005).

18 The Act "eliminated district court habeas corpus jurisdiction over orders of removal and vested

19 jurisdiction to review such orders exclusively in the courts of appeals." *Puri v. Gonzalez*, 464

20 F.3d 1038, 1041 (9th Cir. 2006).

21        Petitioner has unequivocally stated he is not challenging his final order of removal.

22 (Pet'r's Traverse filed Jan. 3, 2008 at 2-4.)  However, Federal Respondents argue that his only

23 real purpose is to indirectly challenge that order.  (Resp. Supp. Brief filed Jun. 3, 2008 at 1, 2.)

24 "Post-REAL ID Act cases considering the applicability of § 1252 have . . . distinguished

25 between challenges to orders of removal and challenges that arise independently." *Singh v.*

26 *Gonzalez*, 499 F.3d 969, 978 (9th Cir. 2007).  The jurisdictional bar of the REAL ID Act does

27 not apply to indirect challenges to orders of removal.  *Id.*, citing *Puri*, 464 F.3d at 1041.  For

28 example, the Ninth Circuit held in *Singh v. Gonzalez* that the REAL ID Act did not bar district

1  court review under § 2241 of an ineffective assistance claim arising out of the immigration

2  counsel's failure to timely appeal the BIA decision affirming the order of removal.  499 F.3d

3  969.  Because Petitioner's ineffective assistance claims in this case arise from state court

4  proceedings, which are even less related to the order of removal than the claims made in *Singh*,

5  the REAL ID Act does not bar habeas review in this case.[5]

6          Finding that 8 U.S.C. § 1252 does not preclude district court jurisdiction in this case, the

7  court considers Petitioner's claims.  Petitioner maintains that the state court's denial in 2006 of

8  his motions for new trial triggered a right to pursue habeas relief in federal court.  In 2006,

9  Petitioner filed in state court motions styled as "Nonstatutory Motion to Vacate a Judgment

10  Entered After Court Trial on Grounds of Ineffective Assistance of Counsel" and "Nonstatutory

11  Motion to Vacate a Plea Entered on Grounds of Ineffective Assistance of Counsel" respectively.

12  (Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*)  The only relief requested in each motion was a new

13  trial pursuant to California Penal Code § 1181.  (*Id.* at 23 & 83.)  The motions were denied

14  because they were filed after the judgment in each case had been entered.  (*Id.* at 57 & 117;

15  Lodgment Ex. 2 at 5-10.)  The court reasoned that it lacked jurisdiction under California law to

16  grant a motion for new trial brought after the entry of judgment.  (Lodgment Ex. 2 at 5-10, citing

17  Cal. Penal Code §§ 1181,1182 & *People v. Smyers*, 2 Cal. App. 3d 666 (1969).)

18          Petitioner has not cited any authority to show that the state court's denial of his motions

19  violated his constitutional rights.  "[F]ederal habeas corpus relief does not lie for errors of state

20  law. . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations

21  / / / / /

22

23  ⁵      Federal Respondents also argue that the REAL ID Act, 8 U.S.C. § 1252(g), strips

24  this court of jurisdiction to issue an order to stay Petitioner's removal. (Resp. Supp. Brief filed
Jun. 3, 2008 at 1, 3.)  This argument is contradicted by *Ali v. Gonzalez*, 421 F.3d 795 (9th Cir.

25  2005) ("*Ali II*").  It held that the REAL ID Act did not apply to a habeas petition claiming that
the petitioners should not be removed to a country without a functioning government, "because

26  petitioners d[id] not challenge or seek review of any removal order." *Ali II*, 421 F.3d at 797 n.1
(order denying reh'g) (for factual background see *Ali v. Gonzalez*, 346 F.3d 873 (2003) ("*Ali*

27  *I*")).  The court also affirmed a district court order temporarily releasing the petitioners from
immigration custody. *Ali II*, 421 F.3d at 797; *see also Ali I*, 346 F.3d at 875-76, 891-92. Federal

28  Respondents' argument therefore appears without merit.  However, because the order staying
Petitioner's removal is vacated on other grounds, the court need not resolve this issue here.

07cv2033

1   of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Accordingly, the denial of

2   Petitioner's motions does not provide a basis for habeas relief.

3         What remains of the Petition are the underlying constitutional claims of ineffective

4   assistance of counsel arising from representation related to the 1996 and 1998 Convictions.

5   Petitioner's theory of ineffective assistance as to the 1996 Conviction is that Mr. Verhovskoy

6   failed to file the opening brief on appeal and misled Petitioner about the status of his appeal, thus

7   depriving him of his first appeal as of right. (Pet. at 9-12.) The theory as to the 1998 Conviction

8   is that Mr. Verhovskoy represented Petitioner notwithstanding a conflict of interest. (*Id.* at 12-

9   15.) Petitioner argues that the conflict arose from Mr. Verhovskoy's previous representation

10   which resulted in the 1996 Conviction. "In criminal cases, an attorney's representation of a

11   former client may preclude renewed representation of that client in a new matter if the prior

12   representation resulted in a client's conviction[, because] the client may want to attack the prior

13   conviction on the ground of incompetent representation." Paul W. Vapnek *et al.*, Cal. Practice

14   Guide: Professional Responsibility (2008) (citing *People v. Bailey*, 9 Cal. App. 4th 1252, 1254-

15   55 (1992) & San Diego County Bar Association Ethics Opinion 1995-1), *cited* in Pet. at 13.

16         The State argues that the court lacks jurisdiction to consider these claims because

17   Petitioner is not in custody.[6] (State Resp's Response filed Jun. 4, 2008 at 4-5.) The state court

18   sentences imposed for the convictions Petitioner is attacking have expired. The "in custody"

19   element requires "that the habeas petitioner be 'in custody' under the conviction or sentence

20   under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).

21   "[O]nce the sentence imposed for a conviction has completely expired, the collateral

22   consequences of that conviction are not themselves sufficient to render an individual 'in

23   custody' for the purposes of a habeas attack upon it." *Id.* at 492. Immigration consequences, the

24

25        [6]     Petitioner requested the court to disregard this argument, contending that the State

26   had waived it by not raising it in its motion to dismiss. (Pet'r's Supp. Brief filed Jun. 8, 2008 at
3-4.) The State raised this issue in opposition to Petitioner's motion for stay of removal. (*See*

27   Opp'n to Mtn for Stay of Removal filed Dec. 3, 2007 at 2.) The issue of Petitioner's custody
and exceptions to this requirement were addressed in the Order Granting Petitioner's Motion for

28   Stay of Removal because they are relevant to the resolution of this case. Petitioner's request to
disregard the State's argument is therefore denied.

               07cv2033

1  only consequences of the 1996 and 1998 Convictions remaining in this case, are considered

2  collateral, and therefore insufficient, for purposes of the "in custody" requirement. *See Resendiz*

3  *v. Kovensky*, 416 F.3d 952, 956 (9th Cir. 2005).

4      Petitioner admits that he is no longer in state custody. (Pet'r's Reply re: Stay of Removal

5  filed Dec. 10, 2007 at 2.)  He argues that his immigration custody is sufficient for the habeas

6  relief he seeks.  The Petition, however, is expressly not challenging the immigration custody or

7  the underlying order of removal.  It is challenging the 1996 and 1998 Convictions.  The validity

8  of these convictions "can only be tested in an action against the state, which has the greatest

9  interest in preserving its judgment[s] and the best ability to either correct or defend [them]. "

10  *Contreras v. Schlitgen*, 122 F.3d 30, 33 (9th Cir. 1997), *aff'd on add'l grounds in Contreras v.*

11  *Schlitgen*, 151 F.3d 906 (9th Cir. 1998) ("*Contreras II*").  In the absence of an applicable

12  exception, federal habeas relief against the State is foreclosed because Petitioner is no longer in

13  custody under the convictions he is challenging.

14      "The Supreme Court has identified two possible exceptions to the 'in custody'

15  requirement . . ..  The first is a *Gideon*[7] violation, or a complete failure of counsel. . . .  The

16  second . . . is a possible 'rare' exception, not yet defined, where 'no channel of review was

17  actually available to a defendant with respect to a prior conviction.'" *Resendiz*, 416 F.3d at 959

18  (internal citations omitted).

19      The *Gideon* exception was established in *Custis v. United States*, 511 U.S. 485 (1994).  It

20  held that a federal defendant could not at the sentencing stage attack a prior conviction used to

21  enhance the federal sentence.  *Id.* at 487.  The only exception was the right to appointment of

22  counsel recognized in *Gideon*.  *Id.* at 496.  The defendant in *Custis*, who claimed that his

23  underlying convictions were obtained in violation of his right to effective assistance of counsel,

24  sought to extend his right to collaterally attack a prior conviction beyond the right to

25  appointment of counsel to ineffective assistance claims.  *Custis*, 511 U.S. at 496.  The court held

26  _____

27      [7]    *Gideon v. Wainwright*, 372 U.S. 335 (1963).  [*Gideon* held that a defendant's Sixth
    Amendment right to counsel applied to the states through the Fourteenth Amendment.  The court
28  reversed a denial of a habeas petition brought by an indigent criminal defendant where the state
    court denied his motion for appointment of counsel at trial.]

1  that the *Gideon* exception did not apply to ineffective assistance claims and drew a line between

2  ineffective assistance and failure to appoint counsel. *Id.* The *Gideon* exception and the rationale

3  of *Custis* were adopted in the habeas context by *Daniels v. United States*, 532 U.S. 374 (2001)

4  (§2255) and *Lackawanna County Dist. Atty v. Coss*, 532 U.S. 394 (2001) (§ 2254).

5       Petitioner argues that the *Gideon* exception applies in this case because his counsel's

6  failure to perfect the appeal denied him the opportunity to present the merits of his appeal, which

7  was more than a mere attorney error. (Pet'r's Resp. filed May 28, 2008 at 10.) He relies on

8  *Evitts v. Lucey*, 469 U.S. 387 (1985), and *Anders v. California*, 386 U.S. 738 (1967), which were

9  decided before *Custis*.

10      *Evitts* addressed facts similar to Petitioner's appeal of his 1996 Conviction. The

11  petitioner was convicted in state court after a jury trial. *Evitts*, 469 U.S. at 389. Although his

12  retained counsel filed a timely notice of appeal, he failed to perfect it and the appeal was

13  dismissed. *Id.* at 389-90. The subsequent efforts to reinstate the appeal and vacate the

14  underlying judgment were unsuccessful. *Id.* at 390. The petitioner then sought habeas relief in

15  federal court. *Id.* Unlike Petitioner here, when he filed his habeas petition, the petitioner in

16  *Evitts* was still in custody under the conviction he was challenging. *See id.* at 391 & n.4. The

17  court addressed the issue whether the right to effective assistance of counsel applied on the first

18  appeal as of right, and found that it did. *Id.* at 392, 397. It reasoned that "the promise . . . that a

19  criminal defendant has a right to counsel on appeal – like the promise of *Gideon* that a criminal

20  defendant has a right to counsel at trial – would be a futile gesture unless it comprehended the

21  right to the effective assistance of counsel." *Id.* at 397.

22      Unlike *Custis*, *Evitts* did not consider the distinction between the right to appointment of

23  counsel and the right to effective representation. In discussing the facts of the case, the court

24  commented:

25       Our cases dealing with the right to counsel – whether at trial or on appeal – have
         often focused on the defendant's need for an attorney to meet the adversary
26       presentation of the prosecutor. . . . Such cases emphasize the defendant's need for
         counsel in order to obtain a *favorable* decision. The facts of this case emphasize a
27       different, albeit related, aspect of a counsel's role, that of expert professional
         whose assistance is necessary in a legal system governed by complex rules and
28       procedures for the defendant to obtain a decision at all – much less a favorable

1      decision – on the merits of the case.  In a situation like that here, counsel's failure
       was particularly egregious in that it essentially waived a respondent's opportunity
2      to make a case on the merits; in this sense, it is difficult to distinguish respondent's
       situation from that of someone who had no counsel at all.
3

4    *Evitts*, 469 U.S. at 394 n.6 (internal citations omitted, emphasis in original).  This comment

5    suggests that a counsel's failure to perfect the appeal, depriving the defendant of presenting the

6    merits of his appeal, essentially rises to the level of no representation at all.  Rather than

7    distinguishing between the appointment of counsel and effective representation, *Evitts*

8    highlighted the importance of effective representation by reasoning that "a party whose counsel

9    is unable to provide effective representation is in no better position than one who has no counsel

10   at all."  *Id.* at 396.

11            Extending this reasoning to conclude that a failure to file the first appeal as of right

12   amounts to a *Gideon* violation would collapse the distinction between appointment of counsel

13   and counsel's effectiveness which was drawn in *Custis*.  In carving out the *Gideon* exception,

14   *Custis* noted that a *Gideon* violation was unique.  *Custis*, 511 U.S. at 494 ("historical basis in our

15   jurisprudence of collateral attacks for treating the right to have counsel appointed as unique");

16   496 ("failure to appoint counsel for an indigent defendant was a unique constitutional defect").

17   It was not merely a constitutional violation but a jurisdictional defect.  *Id.* at 494 ("jurisdictional

18   significance to the failure to appoint counsel); *see also Lackawanna*, 532 U.S. at 404 ("failure to

19   appoint counsel for an indigent is a unique constitutional defect rising to the level of a

20   jurisdictional defect, which therefore warrants special treatment among alleged constitutional

21   violations").  The court was careful to distinguish the *Gideon* exception from ineffective

22   assistance and narrowly defined it as a violation of an indigent defendant's right to appointment

23   of counsel:

24            [T]here has been a theme [in the Supreme Court case law] that failure to appoint
              counsel for an indigent defendant was a unique constitutional defect.  [Defendant]
25            attacks his previous convictions claiming the denial of the effective assistance of
              counsel, that his guilty plea was not knowing and intelligent, and that he had not
26            been adequately advised of his rights in opting for a "stipulated facts" trial.  None
              of these alleged constitutional violations rises to the level of a jurisdictional defect
27            resulting from the failure to appoint counsel at all.

28   *Custis*, 511 U.S. at 496 (citation omitted).  Accordingly, an ineffective assistance claim does not

                                                    11                                          07cv2033

1  constitute a *Gideon* violation. *Evitts*, which addressed ineffective assistance on appeal, does not

2  support Petitioner's argument that his counsel's failure to perfect the appeal amounted to a

3  *Gideon* violation.

4       Petitioner also relies on *Anders*, which involved an appointed counsel who failed to file a

5  brief on first appeal as of right because he did not believe the appeal had any merit. *Id.* at 739.

6  The counsel so informed the court, which then denied the defendant's motion for appointment of

7  new counsel and affirmed the conviction. *Id.* at 739-40. The California Supreme Court's denial

8  of the defendant's habeas petition was reversed. *Id.* at 740-41. *Anders* has been characterized as

9  finding that the defendant was deprived of his right to appointed counsel guaranteed by *Gideon*.

10 *Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007) (discussing *Anders*). Like *Evitts*,

11 *Anders* suggests that failure to perfect the first appeal as of right amounts to more than

12 ineffective assistance. However, like *Evitts*, *Anders* did not consider the distinction between

13 failure to appoint counsel and ineffective assistance of counsel, which was subsequently

14 delineated in *Custis*. *Anders* therefore does not support Petitioner's argument any more than

15 *Evitts* does.

16      Notwithstanding the egregiousness of Mr. Verhovskoy's error in failing to perfect the

17 appeal and concealing the fact from Petitioner, Petitioner states an ineffective assistance claim

18 rather than a *Gideon* claim.[8] *Custis* holds that the *Gideon* exception does not apply to ineffective

19 assistance claims but only to violations of an indigent defendant's right to appointment counsel.

20 *Custis*, 511 U.S. at 496. Petitioner's attack on the 1996 Conviction therefore does not warrant

21 the *Gideon* exception.

22      The same reasons apply to Petitioner's attack on the 1998 Conviction. He argues that his

23 1998 Conviction was unconstitutional because it was obtained in violation of his right to

24 effective assistance of counsel when Mr. Verhovskoy represented him notwithstanding a conflict

25

26

27   _____

     [8]     Petitioner himself characterized his claim as ineffective assistance. (*See* Pet. at 9-
28 12; *see also id.* at 16 ("Verhovskoy's failure to submit a brief for the direct appeal constitutes
     ineffective assistance of counsel.").)

1    of interest.[9] Relying on *Jamison v. Lockhart*, 975 F.2d 1377 (8th Cir. 1992), Petitioner argues

2    that the conflict of interest amounted to a *Gideon* violation. (Pet'r's Resp. filed May 28, 2008 at

3    13.) The trial counsel in *Jamison* represented the defendant despite a conflict of interest.

4    *Jamison*, 975 F.2d at 1379. After the defendant was convicted, he requested the counsel to file

5    an appeal. The counsel agreed, but then took no steps to file it. *Id.* The defendant subsequently

6    filed a federal habeas petition, claiming ineffective assistance of counsel based on a conflict of

7    interest.[10] *Id.* at 1378. The court noted, in the context of deciding whether the petitioner should

8    be excused from procedural default, that sufficient cause could potentially "exist when the error

9    of the attorney was so bad that the lawyer ceases to be an agent of the petitioner." *Id.* at 1380

10   (internal quotation marks and citations omitted). *Jamison* does not support the proposition that a

11   conflict of interest amounts to a *Gideon* exception. Under *Custis*, the *Gideon* exception does not

12   include ineffective assistance claims and is limited to the failure to appoint counsel.

13   Accordingly, the *Gideon* exception does not apply in this case.

14        The second exception to the custody requirement was recognized in *Daniels*. 532 U.S. at

15   383-84; *see also Lackawanna*, 532 U.S. at 405-06. This exception may apply "in rare cases in

16   which no channel of review was actually available to a defendant with respect to a prior

17   conviction, due to no fault of his own." *Daniels*, 532 U.S. at 383. "For example, a state court

18   may, without justification, refuse to rule on a constitutional claim that has been properly

19   presented to it. Alternatively, after the time for direct or collateral review has expired, a

20   defendant may obtain compelling evidence that he is actually innocent of the crime of which he

21   was convicted, and which he could not have uncovered in a timely manner." *Lackawanna*, 532

22   U.S. at 405. This exception is extremely narrow because "a defendant properly bears the

23   consequences of either foregoing otherwise available review of a conviction or failing to

24

25        [9]    *See* Pet. at 12-15; *see also id.* at 16 ("Verhovskoy's conflict of interest constitutes
26   a claim of ineffective assistance of counsel . . . .").

27        [10]    Unlike in Petitioner's case, the alleged conflict in *Jamison* preceded and possibly
     motivated the counsel's failure to file the appeal. In addition, unlike Petitioner, at the time of
28   filing his petition, the petitioner in *Jamison* was apparently still in custody under the conviction
     he was challenging. *See Jamison*, 975 F.2d at 1378 (thirty year prison sentence).

07cv2033

1    successfully demonstrate the constitutional error." *Lackawanna*, 532 U.S. at 405. Petitioner

2    argues that the exception applies in his case because his constitutional claims were not heard on

3    the merits.

4          Petitioner cites *Jamison*, where an ineffective assistance claim was procedurally barred

5    because the petitioner had not raised it in state court and the time to do so had expired by the

6    time he filed a federal habeas petition. *Jamison*, 975 F.2d at 1378. The petitioner argued that

7    "his continued reliance on counsel whose loyalty was tainted by conflict of interest prevented

8    him from discovering the conflict of interest problem until it was too late to pursue an appeal in

9    state courts." *Id.* at 1379. The court remanded the case for development of the record and

10   consideration whether the delay in presenting the claim was attributable to the petitioner or to

11   the counsel's divided loyalties. *Id.* at 1380.

12         Unlike the petitioner in *Jamison*, Petitioner here pursued post-conviction relief in state

13   and federal court after the dismissal of his appeal of the 1996 Conviction. In 1999, he filed a

14   motion to reopen the appeal (ER at 24); in 2000, he filed a motion to expunge the underlying

15   conviction (ER at 26); in 2001, he filed a motion to reinstate the appeal (*id.* at 34); in February

16   2002, he filed a habeas petition in the California Court of Appeal (*id.* at 38); in October 2002, he

17   filed a § 2254 habeas petition in this District (*id.* at 76-86); and in 2006, he filed a motion for

18   new trial in state court (Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*). All of these efforts and

19   related appeals were unsuccessful.

20         Petitioner's failure to secure timely review of the 1996 Conviction could initially be

21   blamed on Mr. Verhovskoy's anemic efforts to reopen the appeal and expunge the conviction.

22   However, this can not be said for Petitioner's subsequent efforts. His § 2254 petition was time

23   barred. The court considered Petitioner's arguments for equitable tolling, which were based on

24   the same facts as his present challenge to the 1996 Conviction. He argued then, as he does now,

25   that Mr. Verhovskoy's failure to file the appellate brief and subsequent concealment of the

26   dismissal caused the delay which robbed him of the opportunity to present the merits of his

27   claim. Upon consideration of these arguments, the court found that equitable tolling did not save

28   his § 2254 petition. (Lodgment Ex. 9 at 8-10.) Specifically, after Petitioner discovered in 1998

1  that his appeal had been dismissed, after his motion to reinstate the appeal had been denied and

2  the denial affirmed in the fall of 1999, and after he had learned in December 2000 of Mr.

3  Verhovskoy's withdrawal, Petitioner still waited an unreasonably long time to protect his federal

4  habeas rights. (*Id.* at 9.) The court's finding that the petition was barred by the statute of

5  limitations and could not be saved by equitable tolling was affirmed by the Ninth Circuit in

6  August 2004. (Lodgment Ex. 10.) Petitioner waited for another two years, until September

7  2006, to file his motion for new trial and raise his ineffective assistance claims.

8      Accordingly, channels of review were available to Petitioner and he pursued them but

9  was unsuccessful. To the extent Petitioner was unsuccessful because he was untimely, the

10  untimeliness was not entirely due to his counsel's incompetence or disloyalty. After discovering

11  the facts underlying his ineffective assistance claim, Petitioner waited an unreasonably long time

12  to protect or pursue his rights to review. In *Resendiz v. Kovensky*, the court declined to apply

13  this exception because, like in this case, "channels for review not only existed, but also were

14  pursued." 416 F.3d at 959.

15      As to the 1998 Conviction, Petitioner did not pursue any channels of review until 2006.

16  He neither appealed nor petitioned for habeas relief. (*See* Pet. at 6-7.) His first attempt at

17  collateral review was his motion for new trial in 2006. (*Id.*) Petitioner has presented no

18  evidence or argument why the failure to pursue the available channels of review of this

19  conviction is not attributable to him. In cases such as this, the second exception has been held

20  inapplicable. *See Daniels*, 532 U.S. at 384.

21      Based on the foregoing, neither exception to the "in custody" requirement applies in this

22  case. Therefore, to the extent the Petition is asserted against the State, it is precluded.

23      In the alternative and notwithstanding the "in custody" requirement, the same exceptions

24  apply to the rule precluding collateral attacks in federal proceedings on the validity of an

25  underlying state court conviction. *See Custis*, 511 U.S. at 497 (denying challenge to state

26  convictions used to enhance a subsequent federal sentence when the petitioner "was still 'in

27  custody' for purposes of his state convictions at the time of his federal sentencing");

28  *Lackawanna*, 532 U.S. at 401-02 (denying § 2254 challenge to a prior state sentence used to

15

1 enhance a subsequent state sentence when the petitioner "satisfie[d] § 2254 'in custody'

2 requirement"). Specifically, "when a habeas petition attacks the use of a prior conviction as a

3 basis for INS custody, . . . there can be no collateral review of the validity of the underlying

4 conviction except for *Gideon* claims." *Contreras II*, 151 F.3d at 908.[11] The second exception

5 was subsequently recognized in *Daniels*. If the court were to construe the Petition, contrary to

6 Petitioner's own characterization, as a challenge to his immigration custody,[12] the Petition would

7 nevertheless be denied because, as discussed above, neither exception applies in this case.

8      Although the court is sympathetic to Petitioner's unfortunate situation, it is without

9 authority to grant relief. Accordingly, the Petition is **DENIED**. The State's motion to dismiss

10 and Petitioner's motion for release are **DENIED** as moot. Order Granting Petitioner's Motion

11 for Stay of Removal, dated May 9, 2008, is **VACATED**.

12      **IT IS SO ORDERED.**

13

14 DATED: July 10, 2008

15 

16                          M. James Lorenz
                         United States District Court Judge

17 COPY TO:

18 HON. NITA L. STORMES
UNITED STATES MAGISTRATE JUDGE

19 
ALL PARTIES/COUNSEL

20

21 _____

22     [11]     Federal Respondents assert that the REAL ID Act overruled *Contreras*, including

23 its application of the *Gideon* exception. (Resp. Supp. Brief filed Jun. 3, 2008 at 2.) They cite no authority in support of this proposition and the court is aware of none. Based on the discussion above regarding this court's jurisdiction in light of the REAL ID Act, it appears that *Contreras*

24 remained intact. Furthermore, the position that *Contreras* was overruled is contrary to the position previously taken by Federal Respondents in this case. (*See* Return in Opp'n to Pet. filed

25 Dec. 21, 2007 at 4 -5 (relying on *Contreras*); Resp. in Opp'n to Request for Stay of Removal filed Dec. 3, 2007 at 2 (relying on *Contreras*).) However, because the court finds that the

26 *Gideon* exception is not applicable for other reasons, it need not resolve this issue here.

27     [12]     *See* Pet'r's Resp. filed May 28, 2008 at 4 ("This habeas challenge is not attacking the use of a prior conviction as a basis for INS custody . . . ."). The court notes, however, that

28 Petitioner's assertions that he is not challenging his immigration custody appears inconsistent with his motions for stay of removal and release pending the outcome of this Petition.

               07cv2033

AO 450 Judgment in a Civil Case

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

Dimitri Vallerveich Tatarinov

v.

Superior Court of the State of California, County of
San Diego, et al.

**JUDGMENT IN A CIVIL CASE**

**CASE NUMBER:**    07-CV-2033-L (NLS)

[ ]   **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[X]   **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED: The Petition for Habeas Corpus is **DENIED**. The State's motion to dismiss and Petitioner's motion for release are **DENIED** as moot. Order Granting Petitioner's Motion for Stay of Removal, dated May 9, 2008, is **VACATED**.

| July 11, 2008 | W. Samuel Hamrick, Jr. |
|---|---|
| Date | Clerk |

s/ M. Jenkins

(By) M. Jenkins, Deputy Clerk

ENTERED ON July 11, 2008

1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   DIMITRI VALLERVEICH            )   Civil No. 07cv2033-L(NLS)
     TATARINOV,                     )
12                                  )   **ORDER DENYING PETITION FOR**
                     Petitioner,    )   **HABEAS CORPUS AND VACATING**
13                                  )   **ORDER FOR STAY OF REMOVAL**
                                    )
14   v.                             )
                                    )
15   SUPERIOR COURT OF THE STATE OF )
     CALIFORNIA, COUNTY OF SAN      )
16   DIEGO, *et al.*                )
                                    )
17                   Respondents.   )
                                    )
18   _____ )

19        Petitioner Dimitri Vallerveich Tatarinov, represented by counsel, filed a Consolidated

20   Petition seeking habeas corpus relief under 28 U.S.C. § 2241 ("Petition"). Petitioner is in

21   custody of the Department of Homeland Security, Immigration and Customs Enforcement

22   ("ICE") Detention and Removal Center in this District pending his removal to Russia. He filed a

23   motion for stay pending removal. Respondents Superior Court of the State of California, County

24   of San Diego ("State") and Office of the Chief Counsel, Dept. of Homeland Security; U.S.

25   Attorney, Southern District; and ICE Detention and Removal Unit (collectively "Federal

26   Respondents") opposed the motion. The motion for stay pending removal was granted on May

27   9, 2008.

28   / / / / /

1    The parties have fully briefed the Petition and filed supplemental briefing pursuant to the

2    order filed May 22, 2008. The State filed a motion to dismiss, which Petitioner opposed. On

3    June 1, 2008, Petitioner filed a motion for release pending the conclusion of this proceeding,

4    which is opposed by all Respondents.

5    Petitioner challenges two expired state court sentences on which the removal order is

6    based. He is no longer in custody for purposes of the convictions he is challenging. In addition,

7    no exceptions to the rule precluding collateral challenges to state court convictions in

8    immigration proceedings apply in this case. Therefore, despite the unfortunate circumstances

9    which led to Petitioner's current situation, the Petition is **DENIED**. The State's motion to

10   dismiss and Petitioner's motion for release are **DENIED** as moot. The May 9, 2008 order

11   staying removal is **VACATED**.

12   The underlying facts, contained in the Petition, Petitioner's motion to stay, Petitioner's

13   Excerpt of Record ("ER"), Declaration of Samuel W. Bettwy filed in opposition to the Petition

14   ("Bettwy Decl."), and the State's Notice of Lodgment ("Lodgment"), are not disputed.

15   Petitioner, a native of Russia and citizen of the former Soviet Union, came to the United States

16   as a non-immigrant student in May 1992. The same year, he applied for asylum based on the

17   threats he had received in the former Soviet Union. He married a United States citizen in 1994.

18   In 1995, he was granted Conditional Permanent Resident Status based on marriage. In 1996, he

19   filed a petition to remove this status; however, the petition was not adjudicated until June 9,

20   2000. (Bettwy Decl. Ex. at 54.)

21   In August 1995, Petitioner was convicted of misdemeanor petty theft and was sentenced

22   to one year probation. In August 1996, Petitioner was caught taking a jacket from a department

23   store. Because of allegations of use of force against a store security guard, Petitioner was

24   charged with robbery. At trial, he was represented by Vladimir Verhovskoy. Petitioner and his

25   subsequent counsel, Jerome Wallingford, believe Petitioner had a valid defense to the charge of

26   robbery, however, due to Mr. Verhovskoy's negligence, the jury was not instructed on the

27   defense. (Mtn. to Stay Ex. C.) In Mr. Wallingford's opinion, the case was a shoplifting incident

28   and should have been resolved as a misdemeanor. However, Petitioner was found guilty of

1   robbery ("1996 Conviction"). (*Id.*) He was sentenced to 270 days in custody. The custodial

2   sentence was suspended and Petitioner was granted three years of probation.

3        Represented by Mr. Verhovskoy, Petitioner timely appealed the 1996 Conviction.

4   However, Mr. Verhovskoy failed to file the appellant's opening brief and the appeal was

5   dismissed on April 28, 1997. When Petitioner inquired about the status of the appeal, Mr.

6   Verhovskoy did not tell him that the appeal was dismissed, but gave vague and misleading

7   explanations why a decision had not yet been issued. (ER at 130.)

8        On April 13, 1998, Petitioner was apprehended by the Immigration and Naturalization

9   Service ("INS")[1] and placed in removal proceedings. (Bettwy Decl. Ex. at 1, 3-6, 10.) Pending

10  processing of Petitioner's request for a hearing to determine whether he could remain in the

11  United States, Petitioner was released from INS custody on bond.

12       On October 19, 1998, on Mr. Verhovskoy's advice, Petitioner pled guilty to petty theft –

13  another shoplifting charge. Based on the prior robbery conviction, he was convicted of a felony

14  ("1998 Conviction"). He was sentenced to 364 days in custody, but the sentence was suspended

15  and Petitioner was placed on probation. This offense was added to the charges and factual

16  allegations in Petitioner's removal proceedings. (*See* Bettwy Decl. Ex. at 11, 13.) Petitioner

17  successfully completed probation and has no further criminal record.[2]

18       Due to counsel's failure to inform Petitioner that the appeal of the 1996 Conviction was

19  dismissed, Petitioner did not learn of this fact until the summer of 1998, when his wife inquired

20  directly with the court. (ER at 130.) After being confronted in September 1999, Mr.

21  Verhovskoy filed a motion to set aside the dismissal and reopen the appeal as well as a habeas

22  corpus petition.

23       On September 9, 1999, Petitioner filed a habeas corpus petition in this District (case no.

24  99cv1911-IEG(LSP)) pursuant to 28 U.S.C. § 2241, challenging the constitutionality of the use

25  _____

26      [1]      On March 1, 2003, the detention and removal duties of the INS were transferred to
    the newly-formed ICE. *Resendiz v. Kovensky*, 416 F.3d 952, 954 n.1 (9th Cir. 2005).

27      [2]      Starting in 1998, Petitioner began therapy with a psychiatrist to address the
28  shoplifting incidents, which were allegedly not caused by financial need but by psychological
    problems. (ER at 122; Mtn to Stay Ex. D.)

                                    3                                    07cv2033

1  of his underlying criminal judgments as the basis for removal. The petition was dismissed

2  without prejudice as premature. (*See* order filed Jan. 19, 2000 in case no. 99cv1911.) The court

3  held it was premature to consider Petitioner's constitutional challenge before the INS had a

4  chance to finally rule on whether he was removable based on the prior convictions.

5       In the meantime, in state court proceedings, Mr. Verhovskoy filed a motion to reopen the

6  appeal of the 1996 Conviction. The motion included only a vague explanation for failure to file

7  the opening brief ("financial and medical catastrophes") and did not explain the two-year delay

8  between the dismissal and motion to reopen. (ER at 14-22.) It was denied on September 24,

9  1999. (ER at 24.) Mr. Verhovskoy advised Petitioner that nothing could be done to revive the

10 appeal. He advised filing a motion in the Superior Court to expunge the conviction. On April

11 13, 2000, Petitioner's motion to set aside the 1996 Conviction was denied. (ER at 26.) On

12 November 3, 2000, the court denied Petitioner's motion to terminate probation associated with

13 the 1996 Conviction.

14      On December 22, 2000, during the pendency of immigration proceedings, Mr.

15 Verhovskoy informed Petitioner he was withdrawing from representation. (ER at 30.) On

16 January 19, 2001, Petitioner received a copy of the State Bar of California's Stipulation Form -

17 Actual Suspension, indicating Mr. Verhovskoy had been suspended by the State Bar of

18 California in September 2000. (ER at 130.) On January 28, 2001,[3] Petitioner filed a complaint

19 against Mr. Verhovskoy with the State Bar. (ER at 128-30.) Petitioner had been represented by

20 Mr. Verhovskoy since 1996, and had paid him over $20,000 in fees for representation in

21 immigration proceedings and criminal defense. Based on Petitioner's complaint and State Bar

22 investigation, Mr. Verhovskoy admitted to some violations. On February 5, 2003 he was again

23 suspended from the practice of law. (ER at 131-34.) In 2001, following Mr. Verhovskoy's

24 withdrawal, Petitioner retained new criminal defense and immigration counsel. (ER at 115.)

25 / / / / /

26

27      [3]      The January 28, 2000 date shown on The State Bar of California Complaint Form
28 (ER at 128) appears to be an error, because the complaint refers to events taking place after that
   date. (*Cf.* ER 128 & 130 (referring to events in September 2000 and thereafter.)

1    In the removal proceedings, the Immigration Judge found Petitioner removable as an alien

2  convicted of crime of moral turpitude within five years of admission and as an alien convicted of

3  two or more crimes involving moral turpitude.  Petitioner sought relief, including adjustment of

4  status, asylum and relief under the convention against torture, but he was unsuccessful due to his

5  criminal record.  On December 13, 2001 Petitioner was ordered deported to Russia.  (ER at 116;

6  Bettwy Decl. Ex. at 9-34.)  On January 14, 2003, the removal order was affirmed by the Board

7  of Immigration Appeals ("BIA").  (Bettwy Decl. Ex. at 35-36.)  Challenging the Immigration

8  Judge's decision to deny asylum and adjust his status, Petitioner appealed to the Ninth Circuit.

9  The Ninth Circuit construed the appeal as a petition for a writ of habeas corpus pursuant to 28

10  U.S.C. § 2241, and transferred the case to this District (case no. 04cv2595-W(BLM)).  The

11  petition was denied on May 2, 2005.  (Bettwy Decl. Ex. at 53 et seq.)  On February 9, 2007, the

12  Ninth Circuit denied review.  Petitioner has been in ICE custody since June 28, 2007.

13    In state court proceedings, on August 30, 2001, Petitioner filed a motion to reinstate the

14  appeal of his 1996 Conviction with the California Court of Appeal.  The motion was denied (ER

15  at 34) and the California Supreme Court denied review (ER at 36).  On February 15, 2002,

16  Petitioner filed a habeas corpus petition with the California Court of Appeal, which was denied.

17  (ER at 38.)  Again, the California Supreme Court denied review.  (ER at 40.)

18    On October 11, 2002, Petitioner filed a petition for habeas corpus pursuant to 28 U.S.C.

19  § 2254 in this District (case no. 02cv2029-W(BEN)) based on ineffective assistance of counsel

20  on appeal of the 1996 Conviction.  The petition was dismissed based on the statute of

21  limitations.  (ER at 76-86.)  On February 9, 2007, the dismissal was affirmed by the Ninth

22  Circuit (ER at 96-98) and petition for a rehearing was denied on September 28, 2004 (ER at

23  106).

24    On September 25, 2006, Petitioner filed in the San Diego County Superior Court motions

25  for new trial[4] of the 1996 and 1998 Convictions based on ineffective assistance of counsel.

26  _____

27    [4]    Although the motions were styled as "Nonstatutory Motion to Vacate a Judgment
Entered After Court Trial on Grounds of Ineffective Assistance of Counsel" and "Nonstatutory
28  Motion to Vacate a Plea Entered on Grounds of Ineffective Assistance of Counsel" (Lodgment
Ex. 1 at 17 et seq. & 78 et seq.), the only relief requested was a new trial (id. at 23 & 83).

1    (Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*)  The motions were denied (Lodgment Ex. 1 at 57,

2    117) and the appeal to the California Court of Appeal was unsuccessful (ER at 136).  On

3    September 12, 2007, the California Supreme Court denied petition for review.  (ER at 137.)

4        On October 19, 2007, Petitioner filed the instant Petition pursuant to 28 U.S.C. § 2241.

5    Although Petition states that Petitioner "moves that the court grant his U.S.C. § 2241 writ and

6    vacate the judgments based upon the violation of his constitutional rights" (Pet. at 2), it also

7    suggests that it is not directed toward the state court judgments but rather the state court's order

8    denying his motions for new trial, and that Petitioner's purpose is to avoid removal from the

9    United States – the only remaining consequence of the state court criminal judgments.  The

10   Petition could therefore be viewed as a challenge to the state court convictions, state court's

11   denial of his motions, or the present confinement by the immigration authorities.  Petitioner was

12   ordered to clarify this ambiguity.  (*See* order filed May 22, 2008 at 1-2.)  According to his

13   supplemental briefing, he "is not directly challenging his criminal convictions, [but] is

14   challenging the State's dismissal of his non-statutory motions in violation of the Due Process

15   Clause . . .."  (Pet'r's Supp. Brief filed Jun. 8, 2008 at 4.)

16       Federal Respondents contend that district court jurisdiction is foreclosed by 8 U.S.C.

17   § 1252, as amended by the REAL ID Act, Pub. L. No. 109-13, Stat. 231, Div. B (May 11, 2005).

18   The Act "eliminated district court habeas corpus jurisdiction over orders of removal and vested

19   jurisdiction to review such orders exclusively in the courts of appeals."  *Puri v. Gonzalez*, 464

20   F.3d 1038, 1041 (9th Cir. 2006).

21       Petitioner has unequivocally stated he is not challenging his final order of removal.

22   (Pet'r's Traverse filed Jan. 3, 2008 at 2-4.)  However, Federal Respondents argue that his only

23   real purpose is to indirectly challenge that order.  (Resp. Supp. Brief filed Jun. 3, 2008 at 1, 2.)

24   "Post-REAL ID Act cases considering the applicability of § 1252 have . . . distinguished

25   between challenges to orders of removal and challenges that arise independently."  *Singh v.*

26   *Gonzalez*, 499 F.3d 969, 978 (9th Cir. 2007).  The jurisdictional bar of the REAL ID Act does

27   not apply to indirect challenges to orders of removal.  *Id.*, citing *Puri*, 464 F.3d at 1041.  For

28   example, the Ninth Circuit held in *Singh v. Gonzalez* that the REAL ID Act did not bar district

6

1 court review under § 2241 of an ineffective assistance claim arising out of the immigration

2 counsel's failure to timely appeal the BIA decision affirming the order of removal. 499 F.3d

3 969. Because Petitioner's ineffective assistance claims in this case arise from state court

4 proceedings, which are even less related to the order of removal than the claims made in *Singh*,

5 the REAL ID Act does not bar habeas review in this case.[5]

6      Finding that 8 U.S.C. § 1252 does not preclude district court jurisdiction in this case, the

7 court considers Petitioner's claims. Petitioner maintains that the state court's denial in 2006 of

8 his motions for new trial triggered a right to pursue habeas relief in federal court. In 2006,

9 Petitioner filed in state court motions styled as "Nonstatutory Motion to Vacate a Judgment

10 Entered After Court Trial on Grounds of Ineffective Assistance of Counsel" and "Nonstatutory

11 Motion to Vacate a Plea Entered on Grounds of Ineffective Assistance of Counsel" respectively.

12 (Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*) The only relief requested in each motion was a new

13 trial pursuant to California Penal Code § 1181. (*Id.* at 23 & 83.) The motions were denied

14 because they were filed after the judgment in each case had been entered. (*Id.* at 57 & 117;

15 Lodgment Ex. 2 at 5-10.) The court reasoned that it lacked jurisdiction under California law to

16 grant a motion for new trial brought after the entry of judgment. (Lodgment Ex. 2 at 5-10, citing

17 Cal. Penal Code §§ 1181,1182 & *People v. Smyers*, 2 Cal. App. 3d 666 (1969).)

18      Petitioner has not cited any authority to show that the state court's denial of his motions

19 violated his constitutional rights. "[F]ederal habeas corpus relief does not lie for errors of state

20 law. . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations

21 / / / / /

22

23       [5]    Federal Respondents also argue that the REAL ID Act, 8 U.S.C. § 1252(g), strips
24 this court of jurisdiction to issue an order to stay Petitioner's removal. (Resp. Supp. Brief filed
Jun. 3, 2008 at 1, 3.) This argument is contradicted by *Ali v. Gonzales*, 421 F.3d 795 (9th Cir.
25 2005) ("*Ali II*"). It held that the REAL ID Act did not apply to a habeas petition claiming that
the petitioners should not be removed to a country without a functioning government, "because
26 petitioners d[id] not challenge or seek review of any removal order." *Ali II*, 421 F.3d at 797 n.1
(order denying reh'g) (for factual background see *Ali v. Gonzales*, 346 F.3d 873 (2003) ("*Ali
27 I*")). The court also affirmed a district court order temporarily releasing the petitioners from
immigration custody. *Ali II*, 421 F.3d at 797; *see also Ali I*, 346 F.3d at 875-76, 891-92. Federal
28 Respondents' argument therefore appears without merit. However, because the order staying
Petitioner's removal is vacated on other grounds, the court need not resolve this issue here.

1  of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Accordingly, the denial of

2  Petitioner's motions does not provide a basis for habeas relief.

3        What remains of the Petition are the underlying constitutional claims of ineffective

4  assistance of counsel arising from representation related to the 1996 and 1998 Convictions.

5  Petitioner's theory of ineffective assistance as to the 1996 Conviction is that Mr. Verhovskoy

6  failed to file the opening brief on appeal and misled Petitioner about the status of his appeal, thus

7  depriving him of his first appeal as of right. (Pet. at 9-12.) The theory as to the 1998 Conviction

8  is that Mr. Verhovskoy represented Petitioner notwithstanding a conflict of interest. (*Id.* at 12-

9  15.) Petitioner argues that the conflict arose from Mr. Verhovskoy's previous representation

10 which resulted in the 1996 Conviction. "In criminal cases, an attorney's representation of a

11 former client may preclude renewed representation of that client in a new matter if the prior

12 representation resulted in a client's conviction[, because] the client may want to attack the prior

13 conviction on the ground of incompetent representation." Paul W. Vapnek *et al.*, Cal. Practice

14 Guide: Professional Responsibility (2008) (citing *People v. Bailey*, 9 Cal. App. 4th 1252, 1254-

15 55 (1992) & San Diego County Bar Association Ethics Opinion 1995-1), *cited* in Pet. at 13.

16       The State argues that the court lacks jurisdiction to consider these claims because

17 Petitioner is not in custody.[6] (State Resp's Response filed Jun. 4, 2008 at 4-5.) The state court

18 sentences imposed for the convictions Petitioner is attacking have expired. The "in custody"

19 element requires "that the habeas petitioner be 'in custody' under the conviction or sentence

20 under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).

21 "[O]nce the sentence imposed for a conviction has completely expired, the collateral

22 consequences of that conviction are not themselves sufficient to render an individual 'in

23 custody' for the purposes of a habeas attack upon it." *Id.* at 492. Immigration consequences, the

24

25      [6]      Petitioner requested the court to disregard this argument, contending that the State
26 had waived it by not raising it in its motion to dismiss. (Pet'r's Supp. Brief filed Jun. 8, 2008 at
   3-4.) The State raised this issue in opposition to Petitioner's motion for stay of removal. (*See*
27 Opp'n to Mtn for Stay of Removal filed Dec. 3, 2007 at 2.) The issue of Petitioner's custody
   and exceptions to this requirement were addressed in the Order Granting Petitioner's Motion for
28 Stay of Removal because they are relevant to the resolution of this case. Petitioner's request to
   disregard the State's argument is therefore denied.

1  only consequences of the 1996 and 1998 Convictions remaining in this case, are considered

2  collateral, and therefore insufficient, for purposes of the "in custody" requirement. *See Resendiz*

3  *v. Kovensky*, 416 F.3d 952, 956 (9th Cir. 2005).

4      Petitioner admits that he is no longer in state custody. (Pet'r's Reply re: Stay of Removal

5  filed Dec. 10, 2007 at 2.)   He argues that his immigration custody is sufficient for the habeas

6  relief he seeks. The Petition, however, is expressly not challenging the immigration custody or

7  the underlying order of removal.  It is challenging the 1996 and 1998 Convictions.  The validity

8  of these convictions "can only be tested in an action against the state, which has the greatest

9  interest in preserving its judgment[s] and the best ability to either correct or defend [them]. "

10  *Contreras v. Schlitgen*, 122 F.3d 30, 33 (9th Cir. 1997), *aff'd on add'l grounds in Contreras v.*

11  *Schlitgen*, 151 F.3d 906 (9th Cir. 1998) ("*Contreras II*").  In the absence of an applicable

12  exception, federal habeas relief against the State is foreclosed because Petitioner is no longer in

13  custody under the convictions he is challenging.

14      "The Supreme Court has identified two possible exceptions to the 'in custody'

15  requirement . . . .. The first is a *Gideon*[7] violation, or a complete failure of counsel. . . . The

16  second . . . is a possible 'rare' exception, not yet defined, where 'no channel of review was

17  actually available to a defendant with respect to a prior conviction.'" *Resendiz*, 416 F.3d at 959

18  (internal citations omitted).

19      The *Gideon* exception was established in *Custis v. United States*, 511 U.S. 485 (1994).  It

20  held that a federal defendant could not at the sentencing stage attack a prior conviction used to

21  enhance the federal sentence. *Id.* at 487.  The only exception was the right to appointment of

22  counsel recognized in *Gideon*. *Id.* at 496.  The defendant in *Custis*, who claimed that his

23  underlying convictions were obtained in violation of his right to effective assistance of counsel,

24  sought to extend his right to collaterally attack a prior conviction beyond the right to

25  appointment of counsel to ineffective assistance claims. *Custis*, 511 U.S. at 496.  The court held

26  _____

27      [7]    *Gideon v. Wainwright*, 372 U.S. 335 (1963). [*Gideon* held that a defendant's Sixth
Amendment right to counsel applied to the states through the Fourteenth Amendment.  The court
28  reversed a denial of a habeas petition brought by an indigent criminal defendant where the state
court denied his motion for appointment of counsel at trial.]

1   that the *Gideon* exception did not apply to ineffective assistance claims and drew a line between

2   ineffective assistance and failure to appoint counsel. *Id.* The *Gideon* exception and the rationale

3   of *Custis* were adopted in the habeas context by *Daniels v. United States*, 532 U.S. 374 (2001)

4   (§2255) and *Lackawanna County Dist. Atty v. Coss*, 532 U.S. 394 (2001) (§ 2254).

5          Petitioner argues that the *Gideon* exception applies in this case because his counsel's

6   failure to perfect the appeal denied him the opportunity to present the merits of his appeal, which

7   was more than a mere attorney error. (Pet'r's Resp. filed May 28, 2008 at 10.) He relies on

8   *Evitts v. Lucey*, 469 U.S. 387 (1985), and *Anders v. California*, 386 U.S. 738 (1967), which were

9   decided before *Custis*.

10         *Evitts* addressed facts similar to Petitioner's appeal of his 1996 Conviction. The

11  petitioner was convicted in state court after a jury trial. *Evitts*, 469 U.S. at 389. Although his

12  retained counsel filed a timely notice of appeal, he failed to perfect it and the appeal was

13  dismissed. *Id.* at 389-90. The subsequent efforts to reinstate the appeal and vacate the

14  underlying judgment were unsuccessful. *Id.* at 390. The petitioner then sought habeas relief in

15  federal court. *Id.* Unlike Petitioner here, when he filed his habeas petition, the petitioner in

16  *Evitts* was still in custody under the conviction he was challenging. *See id.* at 391 & n.4. The

17  court addressed the issue whether the right to effective assistance of counsel applied on the first

18  appeal as of right, and found that it did. *Id.* at 392, 397. It reasoned that "the promise . . . that a

19  criminal defendant has a right to counsel on appeal – like the promise of *Gideon* that a criminal

20  defendant has a right to counsel at trial – would be a futile gesture unless it comprehended the

21  right to the effective assistance of counsel." *Id.* at 397.

22         Unlike *Custis*, *Evitts* did not consider the distinction between the right to appointment of

23  counsel and the right to effective representation. In discussing the facts of the case, the court

24  commented:

25         Our cases dealing with the right to counsel – whether at trial or on appeal – have
           often focused on the defendant's need for an attorney to meet the adversary
26         presentation of the prosecutor. . . . Such cases emphasize the defendant's need for
           counsel in order to obtain a *favorable* decision. The facts of this case emphasize a
27         different, albeit related, aspect of a counsel's role, that of expert professional
           whose assistance is necessary in a legal system governed by complex rules and
28         procedures for the defendant to obtain a decision at all – much less a favorable

                                                      10                                      07cv2033

1
2
3

> decision – on the merits of the case. In a situation like that here, counsel's failure
> was particularly egregious in that it essentially waived a respondent's opportunity
> to make a case on the merits; in this sense, it is difficult to distinguish respondent's
> situation from that of someone who had no counsel at all.

4    *Evitts*, 469 U.S. at 394 n.6 (internal citations omitted, emphasis in original). This comment

5 suggests that a counsel's failure to perfect the appeal, depriving the defendant of presenting the

6 merits of his appeal, essentially rises to the level of no representation at all. Rather than

7 distinguishing between the appointment of counsel and effective representation, *Evitts*

8 highlighted the importance of effective representation by reasoning that "a party whose counsel

9 is unable to provide effective representation is in no better position than one who has no counsel

10 at all." *Id.* at 396.

11       Extending this reasoning to conclude that a failure to file the first appeal as of right

12 amounts to a *Gideon* violation would collapse the distinction between appointment of counsel

13 and counsel's effectiveness which was drawn in *Custis*. In carving out the *Gideon* exception,

14 *Custis* noted that a *Gideon* violation was unique. *Custis*, 511 U.S. at 494 ("historical basis in our

15 jurisprudence of collateral attacks for treating the right to have counsel appointed as unique");

16 496 ("failure to appoint counsel for an indigent defendant was a unique constitutional defect").

17 It was not merely a constitutional violation but a jurisdictional defect. *Id.* at 494 ("jurisdictional

18 significance to the failure to appoint counsel); *see also Lackawanna*, 532 U.S. at 404 ("failure to

19 appoint counsel for an indigent is a unique constitutional defect rising to the level of a

20 jurisdictional defect, which therefore warrants special treatment among alleged constitutional

21 violations"). The court was careful to distinguish the *Gideon* exception from ineffective

22 assistance and narrowly defined it as a violation of an indigent defendant's right to appointment

23 of counsel:

24
25
26
27

> [T]here has been a theme [in the Supreme Court case law] that failure to appoint
> counsel for an indigent defendant was a unique constitutional defect. [Defendant]
> attacks his previous convictions claiming the denial of the effective assistance of
> counsel, that his guilty plea was not knowing and intelligent, and that he had not
> been adequately advised of his rights in opting for a "stipulated facts" trial. None
> of these alleged constitutional violations rises to the level of a jurisdictional defect
> resulting from the failure to appoint counsel at all.

28 *Custis*, 511 U.S. at 496 (citation omitted). Accordingly, an ineffective assistance claim does not

11

1    constitute a *Gideon* violation. *Evitts*, which addressed ineffective assistance on appeal, does not

2    support Petitioner's argument that his counsel's failure to perfect the appeal amounted to a

3    *Gideon* violation.

4         Petitioner also relies on *Anders*, which involved an appointed counsel who failed to file a

5    brief on first appeal as of right because he did not believe the appeal had any merit. *Id.* at 739.

6    The counsel so informed the court, which then denied the defendant's motion for appointment of

7    new counsel and affirmed the conviction. *Id.* at 739-40. The California Supreme Court's denial

8    of the defendant's habeas petition was reversed. *Id.* at 740-41. *Anders* has been characterized as

9    finding that the defendant was deprived of his right to appointed counsel guaranteed by *Gideon*.

10   *Foote v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007) (discussing *Anders*). Like *Evitts*,

11   *Anders* suggests that failure to perfect the first appeal as of right amounts to more than

12   ineffective assistance. However, like *Evitts*, *Anders* did not consider the distinction between

13   failure to appoint counsel and ineffective assistance of counsel, which was subsequently

14   delineated in *Custis*. *Anders* therefore does not support Petitioner's argument any more than

15   *Evitts* does.

16        Notwithstanding the egregiousness of Mr. Verhovskoy's error in failing to perfect the

17   appeal and concealing the fact from Petitioner, Petitioner states an ineffective assistance claim

18   rather than a *Gideon* claim.[8] *Custis* holds that the *Gideon* exception does not apply to ineffective

19   assistance claims but only to violations of an indigent defendant's right to appointment counsel.

20   *Custis*, 511 U.S. at 496. Petitioner's attack on the 1996 Conviction therefore does not warrant

21   the *Gideon* exception.

22        The same reasons apply to Petitioner's attack on the 1998 Conviction. He argues that his

23   1998 Conviction was unconstitutional because it was obtained in violation of his right to

24   effective assistance of counsel when Mr. Verhovskoy represented him notwithstanding a conflict

25

26

27        [8]    Petitioner himself characterized his claim as ineffective assistance. (*See* Pet. at 9-

28   12; *see also id.* at 16 ("Verhovskoy's failure to submit a brief for the direct appeal constitutes
     ineffective assistance of counsel.").)

1  of interest.[9]  Relying on *Jamison v. Lockhart*, 975 F.2d 1377 (8th Cir. 1992), Petitioner argues
2  that the conflict of interest amounted to a *Gideon* violation.  (Pet'r's Resp. filed May 28, 2008 at
3  13.)  The trial counsel in *Jamison* represented the defendant despite a conflict of interest.
4  *Jamison*, 975 F.2d at 1379.  After the defendant was convicted, he requested the counsel to file
5  an appeal.  The counsel agreed, but then took no steps to file it.  *Id.*  The defendant subsequently
6  filed a federal habeas petition, claiming ineffective assistance of counsel based on a conflict of
7  interest.[10]  *Id.* at 1378.  The court noted, in the context of deciding whether the petitioner should
8  be excused from procedural default, that sufficient cause could potentially "exist when the error
9  of the attorney was so bad that the lawyer ceases to be an agent of the petitioner."  *Id.* at 1380
10 (internal quotation marks and citations omitted).  *Jamison* does not support the proposition that a
11 conflict of interest amounts to a *Gideon* exception.  Under *Custis*, the *Gideon* exception does not
12 include ineffective assistance claims and is limited to the failure to appoint counsel.
13 Accordingly, the *Gideon* exception does not apply in this case.

14     The second exception to the custody requirement was recognized in *Daniels*.  532 U.S. at
15 383-84; *see also Lackawanna*, 532 U.S. at 405-06.  This exception may apply "in rare cases in
16 which no channel of review was actually available to a defendant with respect to a prior
17 conviction, due to no fault of his own."  *Daniels*, 532 U.S. at 383.  "For example, a state court
18 may, without justification, refuse to rule on a constitutional claim that has been properly
19 presented to it.  Alternatively, after the time for direct or collateral review has expired, a
20 defendant may obtain compelling evidence that he is actually innocent of the crime of which he
21 was convicted, and which he could not have uncovered in a timely manner."  *Lackawanna*, 532
22 U.S. at 405.  This exception is extremely narrow because "a defendant properly bears the
23 consequences of either foregoing otherwise available review of a conviction or failing to

24

25     [9]     *See* Pet. at 12-15; *see also id.* at 16 ("Verhovskoy's conflict of interest constitutes
26 a claim of ineffective assistance of counsel . . . .").

27     [10]    Unlike in Petitioner's case, the alleged conflict in *Jamison* preceded and possibly
   motivated the counsel's failure to file the appeal.  In addition, unlike Petitioner, at the time of
28 filing his petition, the petitioner in *Jamison* was apparently still in custody under the conviction
   he was challenging.  *See Jamison*, 975 F.2d at 1378 (thirty year prison sentence).

1  successfully demonstrate the constitutional error." *Lackawanna*, 532 U.S. at 405.  Petitioner

2  argues that the exception applies in his case because his constitutional claims were not heard on

3  the merits.

4      Petitioner cites *Jamison*, where an ineffective assistance claim was procedurally barred

5  because the petitioner had not raised it in state court and the time to do so had expired by the

6  time he filed a federal habeas petition. *Jamison*, 975 F.2d at 1378.  The petitioner argued that

7  "his continued reliance on counsel whose loyalty was tainted  by conflict of interest prevented

8  him from discovering the conflict of interest problem until it was too late to pursue an appeal in

9  state courts." *Id.* at 1379.  The court remanded the case for development of the record and

10  consideration whether the delay in presenting the claim was attributable to the petitioner or to

11  the counsel's divided loyalties. *Id.* at 1380.

12      Unlike the petitioner in *Jamison*, Petitioner here pursued post-conviction relief in state

13  and federal court after the dismissal of his appeal of the 1996 Conviction.  In 1999, he filed a

14  motion to reopen the appeal (ER at 24); in 2000, he filed a motion to expunge the underlying

15  conviction (ER at 26); in 2001, he filed a motion to reinstate the appeal (*id.* at 34); in February

16  2002, he filed a habeas petition in the California Court of Appeal (*id.* at 38); in October 2002, he

17  filed a § 2254 habeas petition in this District (*id.* at 76-86); and in 2006, he filed a motion for

18  new trial in state court (Lodgment Ex. 1 at 17 *et seq.* & 78 *et seq.*).  All of these efforts and

19  related appeals were unsuccessful.

20      Petitioner's failure to secure timely review of the 1996 Conviction could initially be

21  blamed on Mr. Verhovskoy's anemic efforts to reopen the appeal and expunge the conviction.

22  However, this can not be said for Petitioner's subsequent efforts.  His § 2254 petition was time

23  barred.  The court considered Petitioner's arguments for equitable tolling, which were based on

24  the same facts as his present challenge to the 1996 Conviction.  He argued then, as he does now,

25  that Mr. Verhovskoy's failure to file the appellate brief and subsequent concealment of the

26  dismissal caused the delay which robbed him of the opportunity to present the merits of his

27  claim.  Upon consideration of these arguments, the court found that equitable tolling did not save

28  his § 2254 petition. (Lodgment Ex. 9 at 8-10.)  Specifically, after Petitioner discovered in 1998

1   that his appeal had been dismissed, after his motion to reinstate the appeal had been denied and

2   the denial affirmed in the fall of 1999, and after he had learned in December 2000 of Mr.

3   Verhovskoy's withdrawal, Petitioner still waited an unreasonably long time to protect his federal

4   habeas rights. (*Id.* at 9.) The court's finding that the petition was barred by the statute of

5   limitations and could not be saved by equitable tolling was affirmed by the Ninth Circuit in

6   August 2004. (Lodgment Ex. 10.) Petitioner waited for another two years, until September

7   2006, to file his motion for new trial and raise his ineffective assistance claims.

8        Accordingly, channels of review were available to Petitioner and he pursued them but

9   was unsuccessful. To the extent Petitioner was unsuccessful because he was untimely, the

10  untimeliness was not entirely due to his counsel's incompetence or disloyalty. After discovering

11  the facts underlying his ineffective assistance claim, Petitioner waited an unreasonably long time

12  to protect or pursue his rights to review. In *Resendiz v. Kovensky*, the court declined to apply

13  this exception because, like in this case, "channels for review not only existed, but also were

14  pursued." 416 F.3d at 959.

15       As to the 1998 Conviction, Petitioner did not pursue any channels of review until 2006.

16  He neither appealed nor petitioned for habeas relief. (*See* Pet. at 6-7.) His first attempt at

17  collateral review was his motion for new trial in 2006. (*Id.*) Petitioner has presented no

18  evidence or argument why the failure to pursue the available channels of review of this

19  conviction is not attributable to him. In cases such as this, the second exception has been held

20  inapplicable. *See Daniels*, 532 U.S. at 384.

21       Based on the foregoing, neither exception to the "in custody" requirement applies in this

22  case. Therefore, to the extent the Petition is asserted against the State, it is precluded.

23       In the alternative and notwithstanding the "in custody" requirement, the same exceptions

24  apply to the rule precluding collateral attacks in federal proceedings on the validity of an

25  underlying state court conviction. *See Custis*, 511 U.S. at 497 (denying challenge to state

26  convictions used to enhance a subsequent federal sentence when the petitioner "was still 'in

27  custody' for purposes of his state convictions at the time of his federal sentencing");

28  *Lackawanna*, 532 U.S. at 401-02 (denying § 2254 challenge to a prior state sentence used to

1  enhance a subsequent state sentence when the petitioner "satisfie[d] § 2254 'in custody'

2  requirement"). Specifically, "when a habeas petition attacks the use of a prior conviction as a

3  basis for INS custody, . . . there can be no collateral review of the validity of the underlying

4  conviction except for *Gideon* claims." *Contreras II*, 151 F.3d at 908.[11] The second exception

5  was subsequently recognized in *Daniels*. If the court were to construe the Petition, contrary to

6  Petitioner's own characterization, as a challenge to his immigration custody,[12] the Petition would

7  nevertheless be denied because, as discussed above, neither exception applies in this case.

8       Although the court is sympathetic to Petitioner's unfortunate situation, it is without

9  authority to grant relief. Accordingly, the Petition is **DENIED**. The State's motion to dismiss

10  and Petitioner's motion for release are **DENIED** as moot. Order Granting Petitioner's Motion

11  for Stay of Removal, dated May 9, 2008, is **VACATED**.

12       **IT IS SO ORDERED.**

13

14  DATED:  July 10, 2008

15

16                                    M. James Lorenz
                                      United States District Court Judge

17  COPY TO:

18  HON. NITA L. STORMES
    UNITED STATES MAGISTRATE JUDGE

19
    ALL PARTIES/COUNSEL
20

21  _____

22  [11]    Federal Respondents assert that the REAL ID Act overruled *Contreras*, including
    its application of the *Gideon* exception. (Resp. Supp. Brief filed Jun. 3, 2008 at 2.) They cite no
23  authority in support of this proposition and the court is aware of none. Based on the discussion
    above regarding this court's jurisdiction in light of the REAL ID Act, it appears that *Contreras*
24  remained intact. Furthermore, the position that *Contreras* was overruled is contrary to the
    position previously taken by Federal Respondents in this case. (*See* Return in Opp'n to Pet. filed
25  Dec. 21, 2007 at 4 -5 (relying on *Contreras*); Resp. in Opp'n to Request for Stay of Removal
    filed Dec. 3, 2007 at 2 (relying on *Contreras*).) However, because the court finds that the
26  *Gideon* exception is not applicable for other reasons, it need not resolve this issue here.

27  [12]    *See* Pet'r's Resp. filed May 28, 2008 at 4 ("This habeas challenge is not attacking
    the use of a prior conviction as a basis for INS custody . . ..").  The court notes, however, that
28  Petitioner's assertions that he is not challenging his immigration custody appears inconsistent
    with his motions for stay of removal and release pending the outcome of this Petition.

07cv2033

# Notice of Appeal Notification Form

**To:**    Clerk, U.S. Court of Appeals                    **Date:** 08/05/08
**From:** U.S. District Court, Southern District of California
**Subject:** New Appeals Case Information & Docket Fee Notification

## Case Information

Case Title:    Dmitri Vallerveich Tatarinov v. Superior Court of the State of California, County of San Diego; Office of the Chief Counsel, Dept. of Homeland Security; U.S. Attorney, Southern District; ICE Detention & Removal Unit

U.S.D.C. No.:    07cv2033 L (NLS)                U.S.D.C. Judge:    M. James Lorenz

Complaint/Indictment/Petition Filed:    Petition

Appealed Order Entered:    7/11/08

Notice of Appeal Filed:    08/05/08

Court Reporter:    n/a

COA Status:    ☐ Granted in full/part (appeal only)        ☐ Denied (send clerk's file)

## Docket Fee Notification
Docket Fee:    ☐ Paid        [x] Not Paid        ☐ No Fee Required

USA/GOVT. APPEAL:    ☐ Yes    [x] No

Date F/P granted (Show Date and Attach Copy of Order): _____

Was F/P Status Revoked?    ☐ Yes        ☐ No

Companion Case(s): (Please list consolidated cases, if applicable)    07cv2034 L (NLS) (consolidated)

## Counsel Information
**Appellant Counsel:**                    **Appellee Counsel:**

Patricia Lynn Jacks                    Kevin R Vienna

5790 Friars Road                    Office of the Attorney General
F8                            110 West A Street
San Diego, CA 92110                Suite 1100
(619)574-1625                    San Diego, CA 92101
                            (619)645-2198

                            Samuel William Bettwy
                            U.S. Attorney's Office Southern District of California
                            Civil Division
                            880 Front Street
                            Room 6293
                            San Diego, CA 92101-8893
                            (619) 557-7119

Counsel Status: [x] Retained      ☐ Appointed      ☐ Pro Se

Appointed by: _____

(Attach copy of order/minutes)

## Defendant Information

Prisoner ID Number: _____

Bail: _____

Custody:    x  (of Dept of Homeland Security - Immigration and Customs Enforcement)

## SERVICE LIST

**Counsel for Appellant(s) and Appellee(s), as listed on the previous page, have been sent copies of the following items:**

| | |
|---|---|
| x | Transmittal of U.S.C.A. (Appellant and Appellee) |
| x | Case Information/Docketing Fee Notification Form. (Appellant Only) |
| x | Notice of Appeal. (Appellant, Appellee, U.S. District Judge, USPO, and Court Reporter) |
| x | Docket Entries (Appellant and Appellee) |
| x | Designation of Reporter's Transcript and Ordering Form. (Appellant Only, mailed separately) |
| | Order for Time Schedule.  (Criminal Only) (Appellant, Appellee, and Court Reporter) |
| | Magistrate Judge's Report and Recommendation |
| | COA Order |
| | F/P Order |
| | Minute Order |
| x | Other: Judgment in a Civil Case, entered 07/11/08; Order Denying Petition for Habeas Corpus and Vacating Order for Stay of Removal, entered 07/11/08 |

Form Completed And Documents Served By U.S. District Court Deputy Clerk:

Angela Rowland
_____

Deputy's Name

*A Rowland*
_____

Deputy's Signature

# UNITED STATES DISTRICT COURT
Southern District Of California
Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101-8900
Phone: (619) 557-5600
Fax: (619) 702-9900

W. Samuel Hamrick, Jr.
Clerk of Court

To:    Clerk, U.S. Court of Appeals
P.O. Box 193939
San Francisco, CA 94119-3939

Re:    **USCA No:**
**USDC No:**    **07cv2033 L (NLS)**
**Tatarinov v. Superior Court of the State of California, County of San Diego et al**

Clerk, U.S. Court of Appeals, enclosed herewith you will please find:

| | | | | |
|---|---|---|---|---|
| x | Copy of the Notice of Appeal | x | | Docket Entries |
| x | Case Information/Docket Fee Payment Notification Form | | | |
| | Order for Time Schedule (Criminal) | | | |
| | Original Clerk's Record in | set(s) of | | volume(s). |
| | Reporter's transcript's transcripts in | set(s) of | | volume(s). |
| | Exhibits in | envelope(s) | box(es) | folders(s) |
| x | Judgement Order | | | F/P Order |
| | CJA Form 20 | | | Minute Order |
| | Certificate of Record | | | Mandate Return |
| | Magistrate Judge's Report and Recommendation | | | |
| | COA Order | | | |
| | Amended docket fee notification form | | | |
| | Order Appointing Counsel for Appeal | | | |
| x | Order Denying Petition for Habeas Corpus and Vacating Order for Stay of Removal, entered 07/11/08 | | | |
| x | Please acknowledge on the enclosed copy of this transmittal | | | |

Sincerely yours,

W. Samuel Hamrick, Jr.
Clerk of Court

By: _A Rowland_
Angela Rowland, **Deputy**

Date: 08/05/08